**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, National Council of HUD Locals Council 222, AFL-CIO, 451 7th St. SW, Washington D.C. 20410; <br>          Plaintiff, <br> v. <br> FEDERAL SERVICE IMPASSES PANEL, 1400 K St. NW, Washington, D.C. 20424; <br>          and <br> MARK ANTHONY CARTER, In his official capacity as Chairman of the Federal Service Impasses Panel, 1400 K St. NW, Washington, D.C. 20424; <br>          and <br> FEDERAL LABOR RELATIONS AUTHORITY, 1400 K St., NW, Washington, D.C. 20424; <br>          Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. 1:19-cv-01934(RJL) |
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, 80 F St. NW, Washington D.C. 20001; <br>          Plaintiff, <br> v. <br> FEDERAL SERVICE IMPASSES PANEL, 1400 K St. NW, Washington, D.C. 20424; <br>          and <br> MARK ANTHONY CARTER, In his official capacity as Chairman of the Federal Service Impasses Panel, 1400 K St. NW, Washington, D.C. 20424; <br>          and <br> FEDERAL LABOR RELATIONS AUTHORITY, 1400 K St., NW, Washington, D.C. 20424; <br>          Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. 1:19-cv-01976(RJL) |

**STATEMENT OF POINTS OF LAW AND AUTHORITIES**
**IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

NOAH PETERS
Solicitor
REBECCA J. OSBORNE
Deputy Solicitor

Federal Labor Relations Authority
1400 K Street, N.W.
Washington, D.C. 20424
(202) 218-7999

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ..................................................................................................... i

**TABLE OF AUTHORITIES** ........................................................................................... iii

**PRELIMINARY STATEMENT** ...................................................................................... 1

**BACKGROUND** ............................................................................................................... 4

I.      STATUTORY BACKGROUND ................................................................................4

II.     STATEMENT OF THE FACTS .............................................................................6

      A.  Composition of the Panel.................................................................................6

      B.  AFGE-HUD (Case No. 19-1934) .....................................................................7

      C.  AFGE-SSA (Case No. 19-1976).......................................................................9

**ARGUMENT**.................................................................................................................... 12

I.      STANDARD OF REVIEW ....................................................................................12

II.     THIS COURT LACKS JURISDICTION BECAUSE PANEL DECISIONS ARE
          NOT SUBJECT TO FEDERAL COURT REVIEW ..........................................12

      A.  Congress intended to bar judicial review of Panel decisions.......................13

      B.  The Unions' claims are of the type that Congress intended to be reviewed
           within the statutory scheme .........................................................................15

           1.  A finding of preclusion would not foreclose meaningful review .........16

           2.  The Unions' claims are within the Authority's expertise .....................18

           3.  The Unions' claims are not collateral to the review structure Congress
              created in the Statute..............................................................................21

      C.  The Unions Cannot Satisfy the Requirements for *Leedom* Jurisdiction.....................23

           1.  The Panel did not act in excess of its statutory power when it defined a
              Panel quorum as a majority of its members............................................24

            2.  The Panel's *SSA and AFGE* decision is consistent with the Statute.....................26

D.  The APA Does Not Provide a Basis for Jurisdiction ................................................... 28

**CONCLUSION** ........................................................................................................... **29**

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Am.Fed'n of Gov't Emps., AFL-CIO v. FLRA*,
   778 F.2d 850 (D.C. Cir. 1985) ............................................................ 2, 4, 5, 6, 14, 15, 16, 28

*Am. Fed'n of Gov't Emps. v. Sec'y of Air Force*,
   716 F.3d 633 (D.C. Cir. 2013) .......................................................... 13, 14, 18, 21, 29

*Am. Fed'n of Gov't Emps. v. Trump*,
   929 F.3d 748 (D.C. Cir. 2019) ........................................................................ *passim*

*Am. Fed'n. of Gov't Emps. v. FLRA*,
   691 F.2d 565 (D.C. Cir. 1982) ................................................................................ 5

*Arbaugh v. Y & H Corp.*,
   546 U.S. 500 (2006) ............................................................................................ 12

*Ass'n of Civilian Technicians, Inc. v. FLRA*,
   283 F.3d 339 (D.C. Cir. 2002) ................................................................... 4, 28, 29

*Bd. of Governors of the Fed. Reserve Sys. v. MCorp Fin., Inc.*,
   502 U.S. 32 (1991) .............................................................................................. 28

*Council of Prison Locals v. Brewer*,
   735 F.2d 1497 (D.C. Cir. 1984) ..................................................... 1, 2, 5, 6, 14, 18

*Council of Prison Locals v. Howlett*,
   562 F. Supp. 849 (D.D.C. 1983) ..................................................................... 18, 20

*Dep't of Def. Domestic Dependent Elementary & Secondary Sch. Fort Buchanan, P.R.*,
   71 FLRA 127 (2019)...................................................................................... 16, 23

*Dep't of Treasury v. FLRA*,
   707 F.2d 574 (D.C. Cir. 1983) ............................................................................ 16

*Elgin v. Dep't of Treasury*,
   567 U.S. 1 (2012) ................................................................................................ 21

*Falcon Trading Grp., Ltd. v. S.E.C.*,
   102 F.3d 579 (D.C. Cir. 1996) ....................................................................... 24, 25

*Fla. Health Scis. Ctr., Inc. v. Sec'y of Health & Human Servs.*,
   830 F.3d 515 (D.C. Cir. 2016) ............................................................................ 27

*Jarkesy v. S.E.C.*,
    803 F.3d 9 (D.C. Cir. 2015) ........................................................................... 22

*Kentucky v. Graham*,
    473 U.S. 159 (1985) ......................................................................................... 1

*Leedom v. Kyne*,
    358 U.S. 184 (1958) ........................................................................ 2, 3, 5, 6, 23

*Lewis v. Clarke*,
    137 S. Ct. 1285 (2017) ..................................................................................... 1

*Mass. Lobstermen's Ass'n v. Ross*,
    349 F. Supp. 3d 48 (D.D.C. 2018) ................................................................ 12

*N.Y., Div. of Military & Naval Affairs*,
    2 FLRA 185 (1979) ......................................................................................... 16

*Nat'l Air Traffic Controllers Ass'n AFL-CIO v. FSIP*,
    437 F.3d 1256 (D.C. Cir. 2006) ...................................... 3, 5, 6, 14, 18, 23, 24, 26, 28

*Nat'l Air Traffic Controllers Ass'n v. FSIP*,
    606 F.3d 780 (D.C. Cir. 2010) .................................................... 2, 4, 14, 15

*Nat'l Air Traffic Controllers Ass'n v. FSIP*,
    No. Civ.A. 04–0138(RMC), 2005 WL 418016 (D.D.C. Feb. 22, 2005) ................................ 15

*Nevada National Guard*,
    7 FLRA 245 (1981) ......................................................................................... 20

*New Process Steel, L.P. v. NLRB*,
    560 U.S. 674 (2010) .............................................................................. 3, 24, 26

*NLRB v. United Food & Commercial Workers Union, Local 23, AFL-CIO*,
    484 U.S. 112 (1987) ......................................................................................... 29

*Northwest Airlines, Inc. v. FAA*,
    14 F.3d 64 (D.C. Cir. 1994) ........................................................................... 27

*Nyunt v. Chairman, Broad. Bd. of Governors*,
    589 F.3d 445 (D.C. Cir. 2009) ....................................................................... 23

*Patent Office Prof'l Ass'n v. FLRA*,
    26 F.3d 1148 (D.C. Cir. 1994) ....................................................................... 16

*Spagnola v. Mathis*,
  859 F.2d 223 (D.C. Cir. 1988) ........................................................................ 13

*Sturm, Ruger & Co., Inc. v. Chao*,
  300 F.3d 867 (D.C. Cir. 2002) ........................................................................ 22

*Thunder Basin Coal Co. v. Reich*,
  510 U.S. 200 (1994) ................................................................................. 13, 15

*U.S. Dep't of Def. Educ. Activity, Arlington, Va.*,
  56 FLRA 119 (2000) ...................................................................................... 19

*U.S. Dep't of Health & Human Servs. Gallup Indian Med. Ctr. Navajo Area Indian Health Serv.*,
  60 FLRA 202 (2004) ...................................................................................... 19

*U.S. Dep't of Justice v. FLRA*,
  981 F.2d 1339 (D.C. Cir. 1993) .............................................................. 3, 23, 27

*Veterans Admin. Washington, D.C.*,
  26 FLRA 264 (1987) ............................................................................ 17, 19, 23

## <u>Statutes</u>

5 U.S.C. § 701 .................................................................................... 3, 28, 29

5 U.S.C. § 7104 ........................................................................................... 25

5 U.S.C. § 7105 .................................................................................... 2, 14, 19

5 U.S.C. § 7114 ......................................................................................... 5, 15

5 U.S.C. § 7116 ............................................................................................ 16

5 U.S.C. § 7118 ............................................................................................ 18

5 U.S.C. § 7119 ....................................................................................... *passim*

5 U.S.C. § 7123 ................................................................................ 2, 14, 17, 21

5 U.S.C. § 7131 ........................................................................................... 27

5 U.S.C. § 7134 ........................................................................................... 24

15 U.S.C. § 78w(a)(1) .................................................................................... 25

28 U.S.C. § 1331 .......................................................................................... 12

**Other Authorities**

*FLRA Processing of Cases Final Rules*, 45 Fed. Reg. 3,482 (Jan. 17, 1980)............................... 24

*FSIP*, *Procedures of the Panel*, 48 Fed. Reg. 19,693 (May 2, 1983) ........................................... 24

Marshall J. Breger & Gary J. Edles, *Established by Practice: The Theory and Operation of Independent Federal Agencies*, 52 ADMIN. L. REV. 1111 (2000) ........................................... 25

ROBERT'S RULES OF ORDER § 3 (10th ed. 2001) ........................................................................ 26

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ............................................................................. *passim*

**Regulations**

5 C.F.R. § 2470.2 ............................................................................................................. 3, 6

5 C.F.R. § 2471.6 ................................................................................................................. 5

## PRELIMINARY STATEMENT

In the Federal Service Labor-Management Relations Statute, 5 U.S.C. §§ 7101-7135 (2018) (the "Statute"), Congress precluded judicial review of determinations of the Federal Service Impasses Panel (the "Panel" or "FSIP"). *See Council of Prison Locals v. Brewer*, 735 F.2d 1497, 1499 (D.C. Cir. 1984). Despite this clear statutory bar, the American Federation of Government Employees, National Council of HUD Locals, Council 222, AFL-CIO ("AFGE-HUD") and the American Federation of Government Employees ("AFGE-SSA") (collectively the "Unions") bring suit against the FSIP, the Federal Labor Relations Authority (the "Authority") and Panel Chairman Mark Anthony Carter (collectively the "FLRA" or "Defendants")[1] asking the Court to overturn the Panel's decisions in *U.S. Department of Housing and Urban Development*, 18 FSIP 075 (Feb. 14, 2019) ("*HUD and Council 222*") and *Social Security Administration*, 19 FSIP 019 (May 29, 2019) ("*SSA and AFGE*") (collectively the "Complaints"). The Court should dismiss the Complaints in their entirety because the Court lacks jurisdiction over them.[2]

---

[1] A claim brought against a federal government employee in his or her official capacity "is only nominally against the official and in fact is against the official's office and thus the sovereign itself. . . . The real party in interest is the government entity, not the named official." *Lewis v. Clarke*, 137 S. Ct. 1285, 1291 (2017) (citations omitted). Chairman Carter may therefore assert, in response to the Unions' claims against him in his Official Capacity, the same immunities and defenses that are available to the Panel as a whole. *Id.* (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). The arguments presented in this brief in support of Defendants' Motion to Dismiss thus apply equally to all three Defendants: the Panel, Chairman Carter, and the Authority.

[2] At the same time as this motion, Defendants and the Unions are filing a joint motion to dismiss Civil Action No. 1:19-cv-01976(RJL), the action challenging *SSA and AFGE*. If this Court denies that motion, Defendants respectfully request that the Court dismiss Civil Action No. 1:19-cv-01976(RJL) for the reasons described herein.

1

The Panel is "an entity within" the FLRA whose "function . . . is to provide assistance in resolving negotiation impasses between agencies and exclusive representatives." 5 U.S.C. § 7119(c)(1). It "serves as a forum of last resort in the speedy resolution of disputes between a federal agency and the exclusive representatives of its employees after negotiations have failed." *Nat'l Air Traffic Controllers Ass'n v. FSIP*, 606 F.3d 780, 783 (D.C. Cir. 2010) ("*NATCA 2010*") (internal quotations marks omitted).

Given the need for the prompt, final resolution of bargaining impasses, Congress made clear that decisions of the Panel are not directly reviewable. *Brewer*, 735 F.2d at 1502.[3] While the Statute "specifically provides for judicial review of orders by the *Authority*, there is no provision for such review of *Panel* orders." *Id.* at 1499 (emphasis in original) (citing 5 U.S.C. §§ 7105, 7123). "Accordingly, the [S]tatute gives every reasonable indication that orders by the Impasses Panel are final and nonreviewable." *Id.*; *see also Am. Fed'n of Gov't Emps., AFL-CIO v. FLRA*, 778 F.2d 850, 854 (D.C. Cir. 1985) ("*AFGE 1985*") ("Decisions of the Impasses Panel are not directly reviewable by the courts.").

Seeking to bypass this clear jurisdictional bar, the Unions attempt to shoehorn their claims within the extremely narrow *Leedom v. Kyne*, 358 U.S. 184 (1958) exception. They argue that the Panel exceeded its power under the Statute and otherwise acted *ultra vires* by issuing a decision without a full complement of seven members, and by imposing limitations on Union officials' use of official time and Agency facilities and communication systems that AFGE-SSA

---

[3] Although not directly reviewable, as discussed more fully below, parties may collaterally attack Panel decisions in negotiability and/or unfair labor practice proceedings before the Authority. The Authority's decisions in such matters may then be appealed to appropriate courts of appeals.

believes are not "reasonable, necessary, and in the public interest."[4]  The burden for establishing

*Leedom* jurisdiction is "nearly insurmountable" *U.S. Dep't of Justice v. FLRA*, 981 F.2d 1339,

1343 (D.C. Cir. 1993), and the Unions cannot meet it in this case.  The Statute does not contain

"a specific and unambiguous statutory directive"—or any statutory directive at all—regarding

what constitutes a quorum of the Panel.  *Nat'l Air Traffic Controllers Ass'n AFL-CIO v. FSIP*,

437 F.3d 1256, 1264 (D.C. Cir. 2006) ("*NATCA 2006*") (internal quotation marks omitted).  In

the face of the Statute's silence, the Panel's 36-year-old regulations permit the Panel's powers to

be exercised by "a quorum thereof," defined as "a majority of the members of the Panel."  5

C.F.R. § 2470.2(f), (h).

Thus, this case is not like *New Process Steel, L.P. v. NLRB*, 560 U.S. 674, 681 (2010),

where two members of a five-member board (the National Labor Relations Board, or "NLRB")

attempted to exercise its powers "*ad infinitum*" in defiance of a statutory three-member quorum

requirement.  In stark contrast to the NLRB's attempt to evade its clear statutory quorum

requirements in *New Process Steel*, the Panel's quorum regulations are consistent with the text of

the Statute.

Nor can the Unions meet the second requirement for *Leedom* jurisdiction: "that barring

review by the district court would wholly deprive [the party] of a meaningful and adequate

means of vindicating its statutory rights."  *NATCA 2006*, 437 F.3d at 1263 (internal quotation

---

[4] AFGE-HUD labels Count I of its Second Amended Complaint ("SAC") as an "*Ultra Vires*" claim, while AFGE-SSA labels Count I of its First Amended Complaint ("FAC") as "*Ultra Vires* Panel Composition," Count IV as "*Ultra Vires* Article 30-7131(d)," Count V as "*Ultra Vires* Article 30," and Count VI as "*Ultra Vires* Article 11."  (FAC ¶¶ 130-137, 156-180.)  Regardless of how the Unions describe these causes of action, its claims that "the Panel took an action inconsistent with clear and mandatory requirements set by statute" and acted "in excess of its delegated powers" are quotations from *Leedom v. Kyne*, 358 U.S. 184, 188 (1958) describing the standard for obtaining district court review.

marks omitted).  That is because the Panel's orders are subject to collateral review "by the Authority in an unfair labor practice proceeding and later by the courts in review of any such proceeding."  *AFGE 1985,* 778 F.2d at 856.

Similarly unavailing are the Unions' attempts to secure jurisdiction by styling their claims as arising under the Administrative Procedure Act, 5 U.S.C. §§ 701-706 (2018) ("APA"). The Unions cannot cure jurisdictional defects by relying on the APA because the APA does not provide an independent source of jurisdiction for the Unions' claims.  *See* 5 U.S.C. § 701(a)(1) (APA provisions do not apply where "statutes preclude judicial review"); *accord Ass'n of Civilian Technicians, Inc. v. FLRA*, 283 F.3d 339, 341-42 (D.C. Cir. 2002).

So too, the Unions' claims that Panel members are "principal officers of the United States" whose appointments require Senate confirmation under the Constitution's Appointments Clause are barred by the Statute's prohibition on direct judicial review of Panel awards.  *See Am. Fed'n of Gov't Emps. v. Trump*, 929 F.3d 748, 758–59 (D.C. Cir. 2019) ("*AFGE 2019*").  As in *AFGE 2019*, the Unions' constitutional claims in these cases "fall within the exclusive statutory scheme [of the Statute], which the unions may not bypass by filing suit in the district court."  *Id.* at 761.

Defendants therefore respectfully ask this Court to dismiss the Complaints in these matters under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction.

## **BACKGROUND**

### I.   STATUTORY BACKGROUND

With the Statute, "Congress established a distinct regulatory framework for collective bargaining between federal agencies and their employees."  *NATCA 2010*, 606 F.3d at 783. The Statute "grants federal agency employees the right to organize, provides for collective

bargaining, and defines various unfair labor practices." *Id.*; *see also* 5 U.S.C. §§ 7114(a)(1), 7116.

"The FLRA is primarily responsible for administering the [S]tatute." *NATCA 2006*, 437 F.3d at 1258. The Panel is "an entity within the Authority, the function of which is to provide assistance in resolving negotiation impasses between agencies and exclusive representatives." 5 U.S.C. § 7119(c)(1). It "serves as a forum 'of last resort in the speedy resolution of disputes' between a federal agency and the exclusive representatives of its employees 'after negotiations have failed.'" *NATCA 2006*, 437 F.3d at 1257-58 (quoting *Brewer*, 735 F.2d at 1501).

Pursuant to the Statute, the Panel must "promptly investigate any impasse presented to it," 5 U.S.C. § 7119(c)(5)(A), and then "either (1) [d]ecline to assert jurisdiction in the event that it finds that no impasse exists or that there is other good cause for not asserting jurisdiction" or "(2) [a]ssert jurisdiction," 5 C.F.R. § 2471.6(a). If the Panel asserts jurisdiction, then it may "take whatever action is necessary and not inconsistent with [the Statute] to resolve the impasse," 5 U.S.C. § 7119(c)(5)(B)(iii), "including binding arbitration." *Am. Fed'n. of Gov't Emps. v. FLRA*, 691 F.2d 565, 569 n. 26 (D.C. Cir. 1982) ("*AFGE 1982*"); *see also* 5 C.F.R. § 2471.6(a)(2)(ii).

"Panel impasse-resolving action often takes the form of ordering the parties to adopt particular contract provisions. The FLRA and the courts consider such Panel-imposed terms to be part of the collective bargaining agreement." *AFGE 1985*, 778 F.2d at 863. The Statute provides for collateral review of the Panel's orders in two ways: (1) "by the Authority in an unfair labor practice proceeding and later by the courts in review of any such proceeding," *AFGE 1985*, 778 F.2d at 856; and (2) by the "head of the agency," 5 U.S.C. § 7114(c)(1), whose determination is subject to challenge before the Authority in a negotiability appeal, and,

ultimately, by the courts of appeals in review of the Authority's negotiability decision, *AFGE 1985,* 778 F.2d at 855-61.

However, "decisions of the [Panel] generally are not subject to direct judicial review." *NATCA 2006*, 437 F.3d at 1258 (citing *Brewer*, 735 F.2d at 1498).  "A federal district court may exercise jurisdiction to review a Panel order only 'in exceptional circumstances' as defined by *Leedom v. Kyne*, 358 U.S. 184 (1958), and its progeny." *Id.* (quoting *Brewer*, 735 F.2d at 1500-01).

## II.  STATEMENT OF THE FACTS

### A.  Composition of the Panel

The Statute provides that the Panel is composed of a Chairman and at least six members and a Chair, all of whom are appointed by the President.  5 U.S.C. § 7119(c)(2).  Since enactment of the Statute in 1978, the FLRA has interpreted that provision to define what constitutes a full complement of Panel members—not the number of Panel members necessary to take action.  Thus, since 1983, the Panel's regulations have permitted the Panel's powers to be exercised by "a quorum thereof," defined as "a majority of the members of the Panel."  5 C.F.R. § 2470.2(f) & (h).

In accordance with Section 7119(c)(3) of the Statute, the President discharged the then-serving Panel members on March 18, 2017.  (Case No. 19-1934, Second Amended Complaint ("SAC") ¶ 28.)  On July 26, 2017, the President appointed a new Panel Chairman (Mark Carter) and six new Panel members: Andrea Fisher Newman, David R. Osborne, Karen M. Czarnecki, Donald Todd, Jonathan Riches, and F. Vincent Vernuccio.  (*Id.* ¶ 29.)  The President assigned the newly appointed Panel Chairman and members to the unexpired terms of the Chairman and members who left office on March 18, 2017.

B. <u>AFGE-HUD (Case No. 19-1934)</u>

This suit arises out of negotiations between AFGE-HUD and the U.S. Department of Housing and Urban Development ("HUD") on a new collective bargaining agreement ("CBA"). (SAC ¶¶ 20-33.)  AFGE-HUD and HUD "have a longstanding and continuing collective bargaining relationship that . . . falls under the Statute." (*Id.* ¶ 19.)  The parties' previous CBA expired on July 23, 2018, though its terms remain in effect pursuant to a rollover provision.  (*Id.* ¶ 20.)  On May 21, 2018, HUD notified AFGE-HUD that it wished to negotiate a new CBA.  (*Id.* ¶ 21.)  On June 19, 2018, AFGE-HUD and HUD began bargaining over the "ground rules" that would govern their substantive CBA negotiations.  (*Id.* ¶ 22.)

On July 30, 2018, HUD submitted a request for Panel assistance with the parties' ground rules negotiations, claiming that the parties had reached an impasse.  (*Id.* ¶¶ 23-24.)  On September 28, 2018, AFGE-HUD submitted a nine-page letter to the Panel.  (Ex. A.)  It asserted that the Panel lacked jurisdiction because the parties were not truly at an impasse, and argued that the Panel should not assert jurisdiction because two grievances that it had filed against HUD related to the negotiations remained pending.  *Id.*

Despite AFGE-HUD's objection, the Panel asserted jurisdiction on November 15, 2018. (SAC ¶ 25.)  The Panel initially ordered mediation, which took place from December 10, 2018 until December 14, 2018.  (*Id.* ¶ 26.)  The parties were able to come to agreement on three articles and several proposals in mediation, but remained deadlocked on parts of eight other articles.  Accordingly, on December 14, 2018, the mediator referred the parties to the Panel for resolution of the remaining ground rules issues.  (*Id.* ¶ 27.)  The Panel received written submissions from both AFGE-HUD and HUD in support of their respective positions on the eight articles on which they were deadlocked.

On January 10, 2019, three Panel member appointments (Todd, Riches and Vernuccio) expired, leaving the Panel with a Chairman and three other members.  (*Id*. ¶ 31.)   While AFGE-HUD now claims that the Statute prohibits the Panel from acting without a full complement of seven members, it failed to raise that argument to the Panel.

On February 14, 2019, the Panel issued its decision in *HUD and Council 222*.  In its 16-page decision, the Panel adopted HUD's proposals concerning two articles, a modified version of AFGE-HUD's proposal on one article, and modified versions of HUD's proposal on the remaining five articles.  *See HUD and Council 222*, 18 FSIP 075 (Feb. 14, 2019) (Case No. 19-1934, Doc. 1-1.)

Claiming that it was injured by the Panel's holding that it had to pay the travel costs of its bargaining team members (SAC ¶ 35), AFGE-HUD now attacks the Panel's ruling in this Court. It asserts three causes of action: an "*Ultra Vires*" claim alleging that *HUD and AFGE* is void because it was issued at a time when the Panel was composed of less than seven members; "Violation of the Appointments Clause of the US Constitution," arguing that Panel members are "principal officers of the United States" who must receive Senate confirmation; and "Violation of the Administrative Procedure Act," urging again that the Panel is not authorized to take any action unless it is composed of at least seven members.  (*Id*. ¶¶ 44-67.)  It asks this Court to:

1) "[v]acat[e] the Panel's decision in *HUD and Council 222* in its entirety";

2) "[d]eclar[e] the Panel's decision in *HUD and Council 222* to be *ultra vires* and void, and in violation of the [APA]";

3) "[d]eclar[e] that the Panel may not exercise its powers unless it is composed of a Chairman and at least six other members";

4) "[d]eclar[e] the Panel's assertion of jurisdiction over the matters at issue in *HUD and Council 222* void in violation of the Appointments Clause of the United States Constitution"; and

5) "[d]eclar[e] that the Panel may not exercise its powers absent members who have been appointed 'by and with the Advice and Consent of the Senate'. . . ."

(*Id.* at p. 12.)

C.     AFGE-SSA (Case No. 19-1976)

Like AFGE-HUD and HUD, AFGE-SSA and the Social Security Administration ("SSA") "have a longstanding and continuing collective bargaining relationship that . . . falls under the Statute." (Case No. 19-1976, First Amended Complaint ("FAC") ¶ 72.)  AFGE-SSA and SSA are parties to a CBA "that purportedly expired on March 31, 2018."  (*Id.* ¶ 73.)  On December 7, 2017, SSA notified AFGE-SSA "that is wished to negotiate a new successor term [CBA] to replace the existing agreement."  (*Id.* ¶ 74.)  The parties entered into a "ground rules" agreement on March 19, 2018, and they bargained over a successor CBA between June and December of 2018.  (*Id.* ¶¶ 75-76.)

On January 10, 2019, SSA "filed a request for the Panel's assistance with a purported impasse."  (*Id.* ¶ 77.)  On March 4, 2019, AFGE-SSA filed an 11-page memorandum with the Panel urging that it lacked jurisdiction over the parties' impasse.  (Ex. B). In that filing, AFGE-SSA asserted a bevy of constitutional and statutory arguments against the SSA's proposed CBA terms and the Panel's jurisdiction, but not any of the arguments that it brings in this lawsuit.  *Id.* The SSA filed a response on March 14, 2019, and the Panel asserted jurisdiction over the parties' impasse on March 26, 2019.  (FAC ¶ 78.)

AFGE-SSA now asserts that "the Panel's assertion of jurisdiction . . . was unconstitutional and all further proceedings void." (*Id*. ¶ 79.)  However, it failed to raise this objection with the Panel and participated in proceedings before it.  On April 17, 2019, the parties submitted memoranda to the Panel in support of their respective CBA proposals.  (*Id*. ¶ 84.) Both sides filed rebuttals on May 1, 2019.  (*Id*. ¶ 86.)

On May 29, 2019, the Panel issued its decision, adopting SSA's proposals as to four articles, AFGE-SSA's proposal on one article, a modified version of SSA's proposals as to four articles, and a modified version of AFGE-SSA's proposal on one other article.  *See SSA and AFGE*, 19 FSIP 019 (May 29, 2019) (Case No. 19-1976, Doc. 1-1.)  At the time the Panel issued its decision in *SSA and AFGE*, it was composed of a Chairman and five other members, one member short of the full statutory complement of six.  (FAC ¶¶ 65-67.)

In its lawsuit, AFGE-SSA focuses on two articles in which the Panel rejected its preferred language: Article 11, involving AFGE-SSA's use of the Agency's facilities and communications for union purposes, and Article 30, concerning official time.  (*Id*. ¶¶ 81-83.)  In the FAC, AFGE-SSA repeats at length the arguments it made to the Panel concerning why it should continue to receive dedicated office space and services at SSA's facilities and why it should receive an aggregate of 230,000 hours of official time to engage in representational activities (as opposed to SSA's proposal of 50,000).  (*Id*. ¶¶ 87-107.)  AFGE-SSA alleges that, because of the Panel's decision, it "will no longer be able to use SSA facilities for office space, or have access to basic office supplies at SSA facilities." (*Id*. ¶ 111.)  It contends that "[t]he Panel's decision . . . impermissibly restricts the amount of official time AFGE[-SSA] may bargain for," which will "preclude AFGE[-SSA] representatives from fully representing

bargaining unit members and impair AFGE from presenting and processing grievances." (*Id.* ¶¶ 119, 123.)

AFGE-SSA brings six claims in its suit: "*Ultra Vires* Panel Composition," urging that *SSA and AFGE* be nullified because it was issued at a time when the Panel had a vacancy; "Violation of the Appointments Clause of the US Constitution," arguing that Panel members are "principal officers of the United States" who must receive Senate confirmation; "Violation of the Administrative Procedure Act," urging again that the Panel is not authorized to take any action when it has a vacancy; "*Ultra Vires* Article 30-7131(d)," asserting that the restrictions on official time adopted by the Panel violate the Statute because they are not "reasonable, necessary, and in the public interest"; "*Ultra Vires* Article 30," asserting that the restrictions on official time imposed by the Panel interfere with AFGE-SSA's representational functions; and "*Ultra Vires* Article 11," contending that "[t]he restrictions on the use of SSA's facilities and communications imposed by the Panel's decision in *SSA and AFGE*" would "inhibit" AFGE-SSA "from acting for and representing employees . . . ." (*Id.* ¶¶ 130-180.)

Similar to the relief sought by AFGE-HUD, AFGE-SSA seeks to have this Court:

1) "vacat[e] the Panel's decision in *SSA and AFGE* in its entirety";

2) "[d]eclar[e] the Panel's decision in *SSA and AFGE* to be *ultra vires* and void";

3) "[d]ecalr[e] the Panel's assertion of jurisdiction over the matters at issue in *SSA and AFGE* to be void in violation of the Appointments Clause of the United States Constitution";

4) "[d]eclar[e] the Panel's decision in *SSA and AFGE* to be void in violation of the Appointments Clause of the United States Constitution";

5) "[d]eclar[e] Articles 11 and 30 as imposed by the Panel's decision in *SSA and AFGE* to be inconsistent with the Statute and therefore void";

6) "[d]eclar[e] that the Panel may not exercise its powers unless it is composed of a Chairman and at least six other members"; and

7) "[d]ecla[e] that the Panel may not exercise its powers absent members who have been appointed 'by and with the Advice and Consent of the Senate,' as required by the Appointments Clause of the United States Constitution."

(*Id*. at pp. 23-24.)

## ARGUMENT

I.     STANDARD OF REVIEW

A federal district court must dismiss claims over which it lacks subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).  *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).  Although a defendant is the moving party in a Rule 12(b)(1) motion to dismiss, the plaintiff is the party invoking the court's jurisdiction and bears the burden of proving that the case is properly in federal court.  *Mass. Lobstermen's Ass'n v. Ross*, 349 F. Supp. 3d 48, 54 (D.D.C. 2018).

II.     THIS COURT LACKS JURISDICTION BECAUSE PANEL DECISIONS ARE
        NOT SUBJECT TO FEDERAL COURT REVIEW

"Within constitutional bounds, Congress decides what cases the federal courts have jurisdiction to consider."  *AFGE 2019,* 929 F.3d at 754 (internal quotation marks omitted). "District courts have jurisdiction over civil actions arising under the Constitution and laws of the United States, but Congress may preclude district court jurisdiction by establishing an alternative statutory scheme for administrative and judicial review."  *Id*. (citing 28 U.S.C. § 1331).

12

To determine whether Congress has created an alternative statutory scheme that precludes federal question jurisdiction, federal courts apply the two-part framework set forth in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994).  Under that framework, "Congress intended that a litigant proceed exclusively through a statutory scheme when (i) such intent is 'fairly discernible in the statutory scheme,' and (ii) the litigant's claims are 'of the type Congress intended to be reviewed within [the] statutory structure.'"  *AFGE 2019*, 929 F.3d at 754 (internal formatting omitted) (quoting *Thunder Basin*, 510 U.S. at 207, 212).

The first *Thunder Basin* prong weighs more heavily than the second, as "it is the comprehensiveness of the statutory scheme involved, not the 'adequacy' of specific remedies thereunder, that counsels judicial abstention."  *Spagnola v. Mathis*, 859 F.2d 223, 227 (D.C. Cir. 1988) (en banc) (per curiam).  Indeed, the D.C. Circuit has held that "[t]he Statute can preclude a claim from being brought in a district court even if it forecloses the claim from administrative review and provides no other way to bring the claim." *AFGE 2019*, 929 F.3d at 756 (internal quotation marks omitted).  That is because the Statute's "exclusion of certain parties from judicial review is not an invitation to those parties to sue under other statutes but a manifestation of a considered congressional judgment that they should not have statutory entitlement to review." *Am. Fed'n of Gov't Emps. v. Sec'y of Air Force*, 716 F.3d 633, 638 (D.C. Cir. 2013) ("*AFGE 2013*") (internal formatting omitted).

A.    Congress intended to bar judicial review of Panel decisions

Congress clearly intended to preclude judicial review of Panel decisions.  Courts have held repeatedly that "[t]he [Statute] provides the exclusive procedures by which federal employees and their bargaining representatives may assert federal labor-management relations claims." *Id*.  "With the [Statute] . . . Congress passed an enormously complicated and subtle

13

scheme to govern employee relations in the federal sector." *Id.* at 636 (internal quotation marks omitted). "Thus, we can fairly discern that Congress intended the statutory scheme to be exclusive with respect to claims within its scope." *AFGE 2019*, 929 F.3d at 755.

The Panel is one component of the Statute's comprehensive scheme. The Statute defines the Panel as "an entity within" the FLRA whose "function . . . is to provide assistance in resolving negotiation impasses between agencies and exclusive representatives." 5 U.S.C. § 7119(c)(1). The Panel "serves as a forum of last resort in the speedy resolution of disputes between a federal agency and the exclusive representatives of its employees after negotiations have failed." *NATCA 2010*, 606 F.3d at 783 (internal quotations marks omitted). "The [S]tatute thus commits to the [P]anel broad authority to make swift decisions in order to end disputes in which the negotiation process between a federal agency and its employees has failed." *Brewer*, 735 F.2d at 1499.

Given the need for the prompt, final resolution of impasses, Congress made clear that Panel decisions are not directly reviewable by courts. *Id.* at 1502. While the Statute "specifically provides for judicial review of orders by the *Authority*, there is no provision for such review of *Panel* orders, and Panel orders are not [directly] appealable even to the Authority." *Id.* at 1499 (emphasis in original) (citing 5 U.S.C. §§ 7105, 7123). "Accordingly, the [S]tatute gives every reasonable indication that orders by the Impasses Panel are final" and not directly reviewable. *Id.*; *see AFGE 1985*, 778 F.2d at 854 ("Decisions of the . . . Panel are not directly reviewable by the courts"); *see also NATCA 2006*, 437 F.3d at 1262 (affirming District Court's dismissal on jurisdictional grounds of suit against the Panel) (internal quotation marks omitted). Instead, the Panel's orders are subject only to collateral review "by the Authority in an unfair labor practice proceeding and later by the courts in review of any such

proceeding," and by the "head of the agency," 5 U.S.C. § 7114(c)(1), whose determination is subject to challenge before the Authority in a negotiability appeal, and, ultimately, by the courts of appeals in review of the Authority's negotiability decision.  *AFGE 1985,* 778 F.2d at 855-61.

In these cases, the Unions seek direct judicial review of the Panel's decisions in *HUD and Council 222* and *SSA and AFGE*.  Each Union seeks to have the Court "[v]acat[e] the Panel's decision in . . . its entirety," "[d]eclar[e] the Panel's decision . . . to be *ultra vires* and void," and "[d]eclar[e] the Panel's assertion of jurisdiction over the matters at issue . . . void in violation of the Appointments Clause of the United States Constitution."  (SAC at p. 12; FAC at pp. 23-24.)  AFGE-SSA separately asks this Court to "[d]eclar[e] Articles 11 and 30 as imposed by the Panel's decision in *SSA and AFGE* to be inconsistent with the Statute and therefore void." (FAC at 24.)  The Unions' Complaints, however, must be dismissed because this Court does not have jurisdiction to declare Panel decisions to be "in violation of specific provisions of the Panel's statutory authority." *NATCA 2010*, 606 F.3d at 787 (quoting *Nat'l Air Traffic Controllers Ass'n v. FSIP*, No. Civ. A. 04–0138(RMC), 2005 WL 418016, at *4–5 (D.D.C. Feb. 22, 2005)).

B.  <u>The Unions' claims are of the type that Congress intended to be reviewed within the statutory scheme</u>

The Unions' claims in these suits are "of the type Congress intended to be reviewed" within the structure it created with the Statute.  *Thunder Basin*, 510 U.S. at 212.  "Claims will be found to fall outside of the scope of a special statutory scheme in only limited circumstances, when (1) a finding of preclusion might foreclose all meaningful judicial review; (2) the claim[s] [are] wholly collateral to the statutory review provisions; and (3) the claims are beyond the expertise of the agency." *AFGE 2019*, 929 F.3d at 755 (internal quotation marks omitted).  Each of those factors weigh in Defendants' favor.

15

1. _A finding of preclusion would not foreclose meaningful review_

Requiring the Unions to proceed through the Statute's scheme does not foreclose "all meaningful judicial review." _Id._ (internal quotation marks omitted).  That is because the Panel's orders are subject to review 1) "by the Authority in an unfair labor practice proceeding and later by the courts in review of any such proceeding," and 2) by the agency head, the Authority, and, ultimately, the courts of appeals in negotiability proceedings, _AFGE 1985,_ 778 F.2d at 855-61; _see also Dep't of Treasury v. FLRA_, 707 F.2d 574, 577 n.7 (D.C. Cir. 1983) ("The Panel's decision is reviewable, first before the Authority, then in court, in an unfair labor practice proceeding."); _N.Y., Div. of Military & Naval Affairs_, 2 FLRA 185, 188 (1979) ("Authority review of a final Panel Decision and Order . . . may be sought by the party objecting to the order . . . after the filing of unfair labor practice charges by the other party, based on noncompliance with the Panel's Decision and Order, under section 7118 of the Statute.").

The Authority has excused parties from complying with Panel-imposed contractual provisions that it found the Panel lacked jurisdiction to impose.  _See_, _e.g._, _Dep't of Def. Domestic Dependent Elementary & Secondary Sch. Fort Buchanan, P.R._ 71 FLRA 127, 134 (2019) ("_Fort Buchanan_").  In _Fort Buchanan_, for example, an agency obtained Authority review of Panel-imposed contractual terms by refusing to implement them, triggering an unfair labor practice charge and ultimately a decision from the Authority vacating the Panel-imposed terms.  _Id._ at 129, 134; _see also Patent Office Prof'l Ass'n v. FLRA_, 26 F.3d 1148, 1153 (D.C. Cir. 1994) (rejecting enforcement of contract provisions imposed by an interest arbitrator acting on delegated authority from the Panel, where the arbitrator, and, consequently, the Panel lacked jurisdiction to impose those provisions).

In this case, the Unions have multiple paths to the Authority and judicial review of their claims through processes established by the Statute.  The Unions could, for example, seek to reopen bargaining with HUD and SSA on Panel-imposed contractual language, and, if the agencies refuse to respond, then file unfair labor practice charges with the FLRA's Office of the General Counsel, or allege unfair labor practices as part of grievance arbitrations.  In the ensuing proceedings, the Unions could challenge the jurisdiction of the Panel to impose the contractual language, and raise their Appointment Clause claims.  *Cf. AFGE 2019*, 929 F.3d at 757 ("[I]f an agency refuses to bargain . . . the unions could charge in a negotiability or unfair labor practice dispute that the agency had refused to bargain over mandatory matters in violation of the Statute. . . . These administrative options might enable the unions to obtain from the FLRA much of the review and relief that they sought from the district court.").

In the alternative, the Unions could refuse to comply with the Panel-imposed language, forcing HUD and SSA to either file unfair labor practice charges or allege unfair labor practices as part of grievance arbitrations, which the Authority could then resolve and which could, in turn, lead to a petition to review to the D.C. Circuit.  *See* 5 U.S.C. § 7123 (permitting "[a]ny person aggrieved by any final order of the Authority" to "institute an action for judicial review of the Authority's order . . . ."); *cf. Veterans Admin. Washington, D.C.*, 26 FLRA 264, 269 (1987) ("By not complying with the Panel's decision, the Respondent assumed a risk that if its position did not prevail, it would be found to have committed an unfair labor practice.").  As this Court has previously held,

> Failure to comply with a Panel decision by an agency or a labor organization constitutes an unfair labor practice.  5 U.S.C. §§ 7116(a)(6), (8), (b)(6), (8).  In an unfair labor practice proceeding before the FLRA the charged party may defend such noncompliance on the ground that the Authority should set aside the allegedly illegal Panel decision. 5 U.S.C. § 7118.  A party aggrieved by a final order of the Authority may institute an action in a court of appeals where the

> agency record subject to review will contain both the Panel proceedings and the
> unfair labor practice proceedings.  5 U.S.C. § 7123. . . . In this instance the
> circuitous route to court prescribed by the Statute implements the legislative
> purpose of promoting collective bargaining by requiring quick resolution of
> negotiation impasses.

*Council of Prison Locals v. Howlett*, 562 F. Supp. 849, 851 (D.D.C. 1983), *aff'd sub nom.*

*Brewer*, 735 F.2d 1497.

Or the Unions could have simply refused to participate in the proceedings before the

Panel, which also could have led to unfair labor practice proceedings before the Authority and

subsequent judicial review.  *See NATCA 2006*, 437 F.3d at 1265 ("If the [agency]'s proffered

interpretation of the relevant statutes is wrong, then the agency's declaration that it will not

appear before the [Panel] is undoubtedly an unfair labor practice.").

Finally, even if the paths to judicial review described above were not available to the

Unions, that would not, by itself, provide this Court with jurisdiction.  As the D.C. Circuit

recently held, "[t]he Statute can preclude a claim from being brought in a district court even if it

forecloses the claim from administrative review and provides no other way to bring the claim."

*AFGE 2019*, 929 F.3d at 756 (internal quotation marks omitted).  That is because the Statute's

"exclusion of certain parties from judicial review is not an invitation to those parties to sue under

other statutes but a manifestation of a considered congressional judgment that they should not

have statutory entitlement to review."  *AFGE 2013*, 716 F.3d at 638 (internal formatting

omitted).

2.      The Unions' claims are within the Authority's expertise

None of the Unions' claims are beyond the Authority's expertise.  Even if that were not

the case, the Unions could appeal Authority decisions concerning those matters to the Courts.

The Unions' attempt to circumvent the Statute should therefore be rejected.

As noted above, the Unions claim in this suit that "the Panel took an action inconsistent with clear and mandatory requirements set by the Statute."  (SAC ¶ 48; FAC ¶¶ 135-136, 154, 161, 170, 179.)  But "[t]he FLRA has primary responsibility for administering and interpreting the Statute, and it serves the special function of applying the general provisions of the Statute to the complexities of federal labor relations."  *AFGE 2019*, 929 F.3d at 760 (internal quotation marks and citations omitted).  "In doing so, the FLRA regularly construes the Statute and adjudicates whether governmental actions violate the Statute."  *Id*. (internal quotation marks omitted).  Indeed, the Statute states that "[t]he Authority shall provide leadership in establishing policies and guidance relating to matters under [the Statute], and, except as otherwise provided, shall be responsible for carrying out the purpose of [the Statute]."  5 U.S.C. § 7105(a)(1).

In its role as arbiter of the Statute, the Authority frequently passes upon both constitutional questions and questions regarding the Panel's jurisdiction in unfair labor practice proceedings and review of grievance arbitration awards.  *See Veterans Admin. Washington, D.C.*, 26 FLRA at 268-69 (reviewing Panel decision to determine whether the Panel "exceed[ed] its authority in asserting jurisdiction" and whether its order was "contrary to law"); *U.S. Dep't of Def. Educ. Activity, Arlington, Va.*, 56 FLRA 119, 120, 122 (2000) (sustaining agency's objection "that enforcing the Panel's Order would violate the Appropriations Clause, the doctrine of separation of powers and the doctrine of sovereign immunity contained in the United States Constitution."); *U.S. Dep't of Health & Human Servs. Gallup Indian Med. Ctr. Navajo Area Indian Health Serv.*, 60 FLRA 202, 213 n. 7 (2004) ("[T]he Authority consistently has resolved exceptions to arbitration awards involving constitutional claims. . . . We note, in this connection, that no precedent indicates that we are precluded from resolving constitutional issues.").

The Authority therefore could, as it has in the past, adjudicate the Unions' constitutional and statutory attacks on the Panel's jurisdiction as part of an unfair labor practice proceeding or grievance arbitration.  For example, in *Nevada National Guard*, the Authority considered at length an agency's contention that a Panel order "which has the effect of overriding the military determination concerning technician attire" was consistent with Article I, Section 8, clauses 15 and 16 of the U.S. Constitution.  7 FLRA 245, 259–61 (1981); *see also Howlett*, 562 F. Supp. at 852 n.6 ("The FLRA's opinion in *Nevada National Guard* should allay plaintiffs' doubts about the eventuality of administrative review of the constitutional and statutory validity of a Panel order.").

But "[e]ven in the absence of constitutional expertise, [the Authority's] expertise in other areas may still weigh in favor of administrative review if the agency could obviate the need to address broad constitutional and statutory claims by resolving a case on other grounds or if the agency could alleviate constitutional concerns through its interpretation of its statute." *AFGE 2019*, 929 F.3d at 761.  That is true in this case, as "[t]he FLRA could moot the need to resolve the unions' constitutional claims" by resolving these cases on statutory grounds.  *Id.* (internal quotation marks omitted).  "Also, the FLRA could offer an interpretation of the Statute in the course of the proceeding that might alleviate or shed light on the constitutional concerns," as "there are precious few cases involving interpretation of statutes authorizing agency action in which our review is not aided by the agency's statutory construction." *Id.* (internal formatting omitted).  As in *AFGE 2019*, "[b]ecause the FLRA's expertise can be brought to bear on the unions' claims in these ways, there is no reason to conclude that Congress intended to exempt the claims from the statutory scheme." *Id.*

Moreover, if the Authority did not adequately resolve the claims, "circuit courts could do so on appeal from the FLRA." *Id.* at 758. "The statutory scheme provides that the courts of appeals 'shall have jurisdiction of the [FLRA] proceeding and of the question determined therein' and 'may make and enter a decree affirming and enforcing, modifying and enforcing as so modified, or setting aside in whole or in part the order of the [FLRA].'" *Id.* (quoting 5 U.S.C. § 7123(a), (c)). "Reviewing similar statutory schemes, the Supreme Court has explained that '[i]t is not unusual for an appellate court reviewing the decision of an administrative agency to consider a constitutional challenge to a federal statute that the agency concluded it lacked authority to decide.'" *AFGE 2019*, 929 F.3d at 758 (quoting *Elgin v. Dep't of Treasury*, 567 U.S. 1, 18 n.8 (2012)). Moreover, "it is of no dispositive significance whether the agency has the authority to rule on constitutional claims so long as the claims can eventually reach an Article III court fully competent to adjudicate them." *AFGE 2019*, 929 F.3d at 758 (internal quotation marks omitted). Thus, there is "no reason why the scheme here would prevent [circuit courts] from resolving the unions' constitutional or statutory challenges even if the FLRA could not." *Id.*

Any claim that the Unions would make about the Authority's qualifications to adjudicate these matters are thus without merit.

   3. <u>The Unions' claims are not collateral to the review structure Congress created in the Statute</u>

The Unions' claims in these suits are not "wholly collateral" to the statutory review scheme. On the contrary, they are precisely the sort of claims that Congress intended to channel through the Statute's "enormously complicated and subtle scheme to govern employee relations in the federal sector." *AFGE 2013*, 716 F.3d at 636. By the Unions' own admission, their claims in these suits arise from "longstanding and continuing collective bargaining

relationship[s] that. . . fall[] under the Statute." (SAC ¶ 19; FAC ¶ 72.) In both cases, the agencies "asserted that the parties had reached an impasse in their . . . negotiations" and requested Panel assistance. (SAC ¶¶ 23-24; FAC ¶ 77.) "Despite [the Unions'] objection[s], the Panel asserted jurisdiction over the purported impasse[s]," considered the competing CBA proposals presented by the Unions and the agencies, and then rendered a decision on the disputed articles. (SAC ¶¶ 25-27, 32-33; FAC ¶¶ 78, 80-110.) These actions were part and parcel of the Panel's statutory powers "to provide assistance in resolving negotiation impasses between agencies and exclusive representatives." 5 U.S.C. § 7119(c)(1).

Complaining that the Panel's resolution of the parties' impasse "requires [AFGE-HUD] to pay travel costs for its bargaining team members, contrary to prior negotiations and [AFGE-HUD's] proposals before the Panel" (SAC ¶ 35) and places restrictions on AFGE-SSA's use of official time and agency facilities and communication systems (FAC ¶¶ 111, 118-124, 126), the Unions now "s[eek] to make an end run around" the Statute's impasse-resolution procedures "by going directly to district court." *Jarkesy v. S.E.C.*, 803 F.3d 9, 24 (D.C. Cir. 2015) (internal quotation marks omitted). But the D.C. Circuit "has previously rejected similar attempts by respondents in agency proceedings 'to short-circuit the administrative process through the vehicle of a district court complaint.'" *Id.* (quoting *Sturm, Ruger & Co., Inc. v. Chao*, 300 F.3d 867, 876 (D.C. Cir. 2002)). "Our obligation to respect the review process established by Congress bars us from permitting [the Unions] to make this end run, and requires dismissal of [their] district court complaint[s]." *Id.* (internal formatting omitted).

In these cases, the Unions assert that "the Panel took an action inconsistent with clear and mandatory requirements set by the Statute." (SAC ¶ 48; FAC ¶¶ 135-136, 154, 161, 170, 179.) The Authority regularly adjudicates matters pertaining to the correct interpretation of the Statute,

and whether the Panel acted within its statutory powers. *See*, *e.g.*, *Fort Buchanan*, 71 FLRA at

134; *Veterans Admin. Washington, D.C.*, 26 FLRA at 268-69.  The Unions' claims are therefore

not "wholly collateral" to the scheme established by the Statute.

Thus, each of the *Thunder Basin* considerations "demonstrate[s] that the [U]nions' claims

fall within the exclusive statutory scheme, which the [U]nions may not bypass by filing suit in

the district court."  *Id*.  The Complaint should therefore be dismissed under Rule 12(b)(1), as this

court lacks jurisdiction.  *Id*.

   C.   The Unions Cannot Satisfy the Requirements for *Leedom*
        Jurisdiction

Attempting to bypass the Statute's clear jurisdictional bar on direct judicial review of

Panel orders, the Unions bring claims under *Leedom v. Kyne*, 358 U.S. 184 (1958).  These claims

fail because the Unions cannot meet the high burden necessary to establish *Leedom* jurisdiction.

"*Leedom* provides an extremely limited exception to the nonreviewability of [Panel] orders."

*NATCA 2006*, 437 F.3d at 1258.  The burden for establishing *Leedom* jurisdiction is "nearly

insurmountable."  *U.S. Dep't of Justice v. FLRA*, 981 F.2d 1339, 1343 (D.C. Cir. 1993); *see also*

*Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009) ("[A] *Leedom*

*v. Kyne* claim is essentially a Hail Mary pass" that "rarely succeeds").

"[I]n order to justify the exercise of *Leedom* jurisdiction, a plaintiff must show, first, that

the agency has acted 'in excess of its delegated powers and contrary to a specific prohibition'

which 'is clear and mandatory.'" *NATCA 2006*, 437 F.3d at 1263 (quoting *Leedom*, 358 U.S. at

188).  Second, the plaintiff must show "that barring review by the district court would wholly

deprive the party of a meaningful and adequate means of vindicating its statutory rights."

*NATCA 2006*, 437 F.3d at 1263 (internal quotation marks omitted). The Complaints do not meet

these high bars.

1.    The Panel did not act in excess of its statutory power when it defined a
Panel quorum as a majority of its members

The Statute does not contain "a specific and unambiguous statutory directive"—or any statutory directive at all—regarding what constitutes a quorum of the Panel.  *NATCA 2006*, 437 F.3d at 1264. The Statute requires the Panel to promulgate regulations determining its manner of processing cases.  *See* 5 U.S.C. § 7134 ("[T]he Panel shall . . . prescribe rules and regulations to carry out the provisions of this chapter applicable to [it].").  That statutory instruction necessarily encompasses defining the number of Panel members needed to act on the Panel's behalf.  *See Falcon Trading Grp., Ltd. v. S.E.C.*, 102 F.3d 579, 582 (D.C. Cir. 1996) (congressional grant of power to Securities and Exchange Commission ("SEC") to implement its statute "must be read to include authority to determine how many members constitute a quorum of the [SEC]").

In the face of the Statute's silence, when the Authority promulgated its first regulations concerning the processing of cases for all FLRA components, it defined the Panel as "the Federal Service Impasses Panel or a quorum thereof."  *See FLRA Processing of Cases Final Rules*, 45 Fed. Reg. 3,482, 3,520 (Jan. 17, 1980).   The FLRA further defined a quorum as "three or more members of the Panel."  *Id.*  The Panel, however, determined that the initial definition of quorum was insufficiently clear.  Three years later, after providing an opportunity for public comment and receiving no responses, the Panel redefined quorum to mean "a majority of the members of the Panel."  *See FSIP, Procedures of the Panel*, 48 Fed. Reg. 19,693, 19,693 (May 2, 1983). That definition has remained unchanged for over 35 years.

The Panel's majority-of-members quorum requirement is fully in keeping with quorum requirements generally, which serve to "protect[] against totally unrepresentative action in the name of the body by an unduly small number of persons."  *New Process Steel*, 560 U.S. at  681 (quoting Robert's Rules of Order § 3, p. 20 (10th ed. 2001)).  Indeed, courts have found that,

24

"[i]f not otherwise constrained by statute, an agency sufficiently empowered by its enabling legislation may create its own quorum rule." *Falcon Trading Grp,*, 102 F.3d 579, 582 (D.C. Cir. 1996); *see also* Marshall J. Breger & Gary J. Edles, *Established by Practice: The Theory and Operation of Independent Federal Agencies*, 52 ADMIN. L. REV. 1111, 1183 (2000) ("Absent statutory requirements, a multi-member agency may, within reason, use its other statutory powers to determine how its quorum requirements will be satisfied.").

This case is similar to *Falcon Trading Group*, in which the D.C. Circuit approved a new quorum rule promulgated by the SEC and an SEC opinion issued by a two-member Commission acting pursuant to that rule. 102 F.3d at 582. The Court determined that, just like the Panel here, "Congress ha[d] specifically bestowed on the Commission 'power to make such rules and regulations as may be necessary or appropriate to implement the provisions of this chapter for which they are responsible or for the execution of the functions vested in them by this chapter.'" *Id.* (quoting 15 U.S.C. § 78w(a)(1)). It further determined that, "[t]his broad grant must be read to include authority to determine how many members constitute a quorum of the Commission." *Id.* It therefore concluded, "[b]ecause that authority is not countermanded elsewhere by Congress, as for example in an explicit statutory quorum provision, we conclude that the SEC's quorum rule and the opinion and order issued pursuant to it are lawful." *Id.* So too in this case, while the Statute states that the Commission "shall be composed of a Chairman and at least six other members," 5 U.S.C. § 7119(c)(2), it does not prescribe any quorum requirement for the Panel.[5]

---

[5] The Statute spells out a quorum requirement for the Authority, establishing a two-member quorum requirement by stating that "[a] vacancy in the Authority shall not impair the right of the remaining members to exercise all of the powers of the Authority." 5 U.S.C. § 7104(d). The Statute does not include a similar provision for the Panel. There is, however, good reason for the Statute's silence. The Statute states that the Authority shall be composed of three members.

Thus, this case is not like *New Process Steel,* where two members of the NLRB attempted to exercise its powers "*ad infinitum*" in defiance of a statutory three-member quorum requirement. *New Process Steel*, 560 U.S. 674, 681. In stark contrast to the NLRB's attempt to evade the clear statutory quorum requirement in *New Process Steel*, the Panel's quorum regulations in this case are consistent with the text of the Statute.

This Court should therefore dismiss the Unions' *Leedom* claims based on the composition of the Panel.

2.     The Panel's *SSA and AFGE* decision is consistent with the Statute

Similarly unavailing is AFGE-SSA's claim that *Leedom* jurisdiction is appropriate because the Panel's determinations in *AFGE and SSA* concerning allocation of official time for union activity and use of SSA property violated the Statute.

First, the Statute does not contain "specific and unambiguous statutory directive[s]" regarding the amount of official time or the degree of access to Agency facilities and systems that union officials must be granted. *NATCA 2006*, 437 F.3d at 1264 (internal quotation marks omitted); *compare* SAC ¶ 159 (arguing that the Panel's decision in *SSA and AFGE* was "*ultra vires*" because it allegedly "impos[ed] an amount of official time that was not agreed to be reasonable, necessary, and in the public interest"); ¶ 168 (complaining that *SSA and AFGE* "imposes restrictions on official time that prevents AFGE . . . from acting on behalf of

---

*Id*. § 7104(a). By contrast, it states that the Commission "shall be composed of a Chairman and *at least* six other members." *Id*. § 7119(c)(2) (emphasis added). As the Statute does not fix a definite membership for the Panel, it would be difficult for Congress to state *ex ante* the number of Panel members necessary to participate in its decisions in order to "protect[] against totally unrepresentative action in the name of the [Panel] by an unduly small number of persons." *New Process Steel*, 560 U.S. at 681 (quoting Robert's Rules of Order § 3, p. 20 (10th ed. 2001)).

employees in bargaining units for which it is certified as the exclusive representative"); ¶ 177

(complaining of "[t]he restrictions on the use of SSA's facilities and communications systems

imposed by the Panel's decision in *SSA and AFGE*").  The Statute merely states that they be

provided "official time in any amount the agency and the exclusive representative involved agree

to be reasonable, necessary, and in the public interest." 5 U.S.C. § 7131(d).

As the D.C. Circuit has held, "[w]ithout such specific, clear and mandatory provisions in

the [Statute], we cannot say that the [Panel]'s order was a facial violation or a patent

misconstruction of the Statute."  *U.S. Dep't of Justice*, 981 F.2d at 1343-44; *see also Fla. Health

Scis. Ctr., Inc. v. Sec'y of Health & Human Servs.*, 830 F.3d 515, 522-23 (D.C. Cir. 2016)

(rejecting *ultra vires* challenge to agency action: "We will not permit Tampa General to

'couch[]' this type of reasonableness challenge 'in terms of the agency's exceeding its

statutorily-defined authority.'" (quoting *Northwest Airlines, Inc. v. FAA*, 14 F.3d 64, 73 (D.C.

Cir. 1994)).

While AFGE-SSA may be dissatisfied with the Panel's decision, that dissatisfaction does

not render the decision unlawful—particularly given the paucity of evidence and legal authority

that the Union provided to the Panel.  The Panel found that AFGE-SSA "did not actually offer"

any data showing that it needed 230,000 hours of official time for representational purposes

(despite arguing that this number was based on "historical data"), "nor did it provide qualitative

evidence that could be used to gauge its claim that its requested amount of time is necessary for

representational purposes."  *SSA and AFGE*, Case No. 19 FSIP 019, at p. 21 (No. 19-1976, Doc.

1-1).  "By contrast, the Agency put forward considerable data that official time requires a

significant devotion of time, resources, and taxpayer funding to activities that are not a part of

the Agency's core mission," data that AFGE-SSA did not rebut.  *Id.*  Consequently, the Panel

determined that it could not "conclude that [AFGE-SSA's] proffered amount of official time is reasonable, necessary and in the public interest." *Id*. at p. 22.  In addition, AFGE-SSA "cite[d] no legal authority that requires Management to provide it with a dedicated office space." *Id*. at p. 5.  Thus, far from violating "specific and unambiguous statutory directive[s]," the Panel reasonably rejected arguments that AFGE-SSA failed to substantiate with legal or factual support.  *NATCA 2006*, 437 F.3d at 1264 (internal quotation marks omitted).

Nor can the Unions meet the second requirement for *Leedom* jurisdiction: "that barring review by the district court 'would wholly deprive [the party] of a meaningful and adequate means of vindicating its statutory rights.'" *Id*. at 1263 (quoting *Bd. of Governors of the Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991).)  That is because, as described above, the Panel's orders are subject to collateral review "by the Authority in an unfair labor practice proceeding and later by the courts in review of any such proceeding," , and by the agency head, the Authority, and, ultimately, the courts of appeals in negotiability proceedings.  *AFGE 1985*, 778 F.2d at 855-61.

As the Unions have not met their burden of establishing *Leedom* jurisdiction, their Complaints should be dismissed.

D.        The APA Does Not Provide a Basis for Jurisdiction

The Unions' APA claims should be dismissed because the APA does not provide an independent basis for jurisdiction.  *See Ass'n of Civilian Technicians, Inc. v. FLRA*, 283 F.3d 339, 341(D.C. Cir. 2002) ("*ACT 2002*").  "The APA expressly provides that its general review provisions, pursuant to which the [plaintiff] filed this suit, do not apply where 'statutes preclude judicial review.'" *Id*. (quoting 5 U.S.C. § 701(a)(1)).  The APA's general review provisions also

do not apply where "agency action is committed to agency discretion by law."  5 U.S.C.
§ 701(a).

As the Statute precludes judicial review of Panel decisions, the APA's "general review provisions" do not apply, and this Court lacks jurisdiction over this case.  *See Am. Fed'n of Gov't Emps. v. Sec'y of Air Force*, 716 F.3d 633, 636 (D.C. Cir. 2013) (plaintiffs may not circumvent the Statute by seeking judicial review under the APA); *ACT 2002*, 283 F.3d at 341-42 (APA review is not available for decision falling under Section 7123); *see also NLRB v. United Food & Commercial Workers Union, Local 23, AFL-CIO*, 484 U.S. 112, 130 (1987) (APA review "is unavailable [in] actions specified in 5 U.S.C. § 701(a), that is . . . where 'statutes preclude judicial review'" (quoting 5 U.S.C. § 701(a)).  Dismissal of the Unions' APA claims is therefore appropriate.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to dismiss the Complaints pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction.

Respectfully submitted,

/s/ Noah Peters
NOAH PETERS (#1023748)
Solicitor

REBECCA J. OSBORNE
Deputy Solicitor
Federal Labor Relations Authority
1400 K Street, NW
Washington, D.C. 20424
Telephone: (202) 218-7999
Facsimile: (202) 343-1007
Email: npeters@flra.gov

Dated: October 11, 2019

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of October 2019, I electronically filed the foregoing

with the Clerk of the Court for the United States District Court for the District of Columbia by

using the CM/ECF system.  I also certify that the foregoing document is being served on counsel

of record and that service will be accomplished by the CM/ECF system.


/s/Rebecca J. Osborne
REBECCA J. OSBORNE
Deputy Solicitor
Federal Labor Relations Authority
1400 K Street, NW
Washington, DC  20424
Telephone: (202) 218-7986
Email: rosborne@flra.gov