## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| American Federation of,<br>Government Employees,<br>National Council of HUD Locals<br>Council 222, AFL-CIO,<br><br>     Plaintiff<br>v.<br><br>Federal Service Impasses,<br>Panel, *et al.,*<br><br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 1:19-cv-01934<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Pursuant to Rule 56(e) of the Federal Rules of Civil Procedure and Local Rule 7(h), and based on the accompanying Memorandum of Law, Statement of Material Facts Not In Dispute, and Declaration of Ashaki Robinson-Johns, Plaintiff, American Federation of Government Employees, National Council of HUD Locals, Council 222, AFL-CIO respectfully requests that the Court grant summary judgment in its favor in the above-captioned action and deny Defendants' Motion to Dismiss. A proposed order accompanies this motion. Pursuant to Local Rule 7(f), Plaintiff respectfully requests an oral hearing on this motion and incorporated opposition.

Respectfully Submitted,

Andres M. Grajales
Deputy General Counsel
D.C. Bar No. 476894
Grajaa@afge.org

/s/ Rushab Sanghvi
Rushab Sanghvi

Associate General Counsel
D.C. Bar No. 1012814
Sanghr@afge.org

/s/ Mark L. Vinson
Mark L. Vinson
Assistant General Counsel
D.C. Bar No. 478175
Vinsom@afge.org

American Federation of Government,
Employees, AFL-CIO
Office of General Counsel
80 F Street, NW
Washington, DC 20001
Tel: (202) 639-6424
Fax: (202) 379-2928

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICAN FEDERATION OF | ) | |
| GOVERNMENT EMPLOYEES | ) | |
| NATIONAL COUNCIL OF HUD LOCALS, | ) | |
| COUNCIL 222, AFL-CIO | ) | |
| | ) | |
|     Plaintiff | ) | |
| v. | ) | |
| | ) | |
| FEDERAL SERVICE IMPASSES | ) | Civil Action No. 1:19-cv-01934 |
| PANEL, et al., | ) | |
| | ) | |
| | ) | |
|     Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Andres M. Grajales
Deputy General Counsel
D.C. Bar No. 476894
Grajaa@afge.org

Mark L. Vinson
Assistant General Counsel
D.C. Bar No. 478175
Vinsom@afge.org

Rushab Sanghvi
Associate General Counsel
D.C. Bar No. 1012814
Sanghr@afge.org

American Federation of Government,
Employees, AFL-CIO
Office of General Counsel
80 F Street, NW
Washington DC, 20001
Fax: (202) 379-2928
Tel: (202) 639-6424

# TABLE OF CONTENTS

Table of Contents ................................................................................................................. iii

Table of Authorities ............................................................................................................. v

Introduction ......................................................................................................................... 1

Factual and Procedural Background .................................................................................... 2

   I.     The Panel ............................................................................................................... 2

   II.    HUD and Council 222 ........................................................................................... 3

Argument ............................................................................................................................. 4

   I.     Standard of Review

        a.  Rule 56 .................................................................................................... 4

        b.  Rule 12(b)(1) ........................................................................................... 4

   II.    The Court Has Subject Matter Jurisdiction Over This Action ........................ 5

        A.  Council 222 has standing to bring this action against the Panel ............................. 7

        B.   The Statute does not preclude jurisdiction over challenges to the panel's composition .......................................................................................... 8

            1.  A finding of preclusion would foreclose all meaningful judicial review of Council 222's claims against the Panel ........................................ 10

            2.  Council 222's claims are wholly collateral to the Statute's administrative review provisions ..................................................................... 16

            3.  Council 222's claims are beyond the expertise of the Authority ............... 18

        C.  The Court has subject matter jurisdiction because the Panel violated an express statutory prohibition ....................................................................... 20

            1.  The Statute does not expressly preclude judicial review ................................ 21

            2.  Council 222 has no other meaningful and adequate means of vindicating its statutory rights ......................................................................... 21

    3.   The Panel has violated a clear and mandatory statutory provision..................23

III.    The Court Should Grant Summary Judgment Because the Appointment of the Panel's

Chairman and Members Violates the Appointment's Clause......................................24

    1.   Panel members are officers who exercise significant authority pursuant to the laws of the United States.................................................................................26

    2.   Panel members are principal officers. ...........................................................27

IV.    The Statute Does Not Authorize the Panel to Take a Final Action Without a Properly

Appointed Panel of a Chairman and at Least Six Members ........................................30

    1.   The Statute requires that a Panel be composed of a Chairman and at least six other members; the Panel that *issued HUD and Council 222* did not meet this requirement .....................................................................................................30

    2.   The Statute specifically and unambiguously directs that a Panel shall be composed of at least seven, not four members. .................................................31

    3.   The Panel cannot issue final action without a properly constituted panel of seven members..................................................................................................33

    4.   The Panel's regulations at 5 C.F.R. 2470.2(f) and (h) cannot allow the Panel to act without seven properly appointed members ...........................................35

Conclusion ................................................................................................................................39

# Table of Authorities

Page(s)

Cases

*AFGE Council of Locals 214 v. FLRA,*
  798 F.2d 1525 (DC Cir 1986) ................................................................ 19
*AFGE v. Secretary of the Air Force,*
  716 F.3d 633 (D.C. Cir. 2013) .............................................................. 15
*AID Association  for Lutherans v. U.S. Postal Serv.,*
  321 F.3d 1166 (D.C. Cir. 2003) ......................................................... 24, 37
*Am. Fed'n of Gov't Employees, AFL-CIO v. Trump,*
  929 F.3d 748 (D.C. Cir. 2019) ..................................................... 7, 14, 15
*Am. Fed'n of Gov't Employees, Local 2510 v. FLRA,*
  453 F.3d 500 (D.C. Cir. 2006) ......................................................... 20, 24
*Am. Fed'n of Gov't Emps. v. FLRA,*
  691 F.2d 565 (D.C. Cir. 1982) .............................................................. 33
*Am. Nat'l Ins. Co. v. FDIC,*
  642 F.3d 1137 (D.C. Cir. 2011) ............................................................. 5
*Am. Nat'l Ins. Co,*
  643 F.3d ......................................................................................... 5
*American Federation of Government Employees, AFL-CIO v. Federal Labor Relations
   Authority,*
  778 F.2d 850 (D.C. Cir. 1985) .............................................................. 13
*Andrade v. Lauer,*
  729 F.2d 1476 (D.C. Cir 1984) .............................................................. 8
*Arch Coal, Inc. v. Acosta,*
  888 F.3d 493 (D.C. Cir. 2018) ............................................................... 9
*Arpaio v. Obama,*
  797 F.3d 11 (D.C. Cir. 2015) ................................................................ 8
*Asiana Airline v. FAA,*
  134 F.3d 393 (D.C. Cir. 1998) .............................................................. 36
*\*Ass'n of Am. R.R. v. U.D. Dep't of Transp,*
  821 F.3d 19 (D.C. Cir 2016) ....................................................... 26, 28, 29
*Buckley v. Valeo,*
  424 U.S. 1 (1976) ................................................................... 7, 25, 26
*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) ......................................................................... 4, 5
*\*Council of Prison Locals v. Brewer,*
  *et al.*, 735 F.2d 1497 (D.C. Cir. 1984) ............................................. passim
*Dep't of Def. Domestic Dependent Elementary & Secondary Sch. Fort Buchanan, P.R.,*
  71 F.L.R.A. 127 (2019) ...................................................................... 13
*Dep't of Transp. v. Ass'n of Am. R.R.,*
  135 S. Ct. 1225 (2015) ...................................................................... 29
*District of Columbia v. Place,*
  892 A.2d 1108 (D.C. Cir. 2006) ............................................................ 31

*Duncan v. Walker,*
   533 U.S. 167 (2001) ............................................................................................. 31
*Edmond v. United States,*
   520 U.S. 651 (2015) ...................................................................................... 25, 28
*Elgin,*
   576 U.S. .................................................................................................... 17, 19
*Falcon Trading Grp,*
   . 102 F.3d 579 (D.C. Cir. 1996) ............................................................. 23, 37, 38
*\*Free Enterprise Fund v. Public Co. Accounting Oversight Bd,*
   561 U.S. 477 (2010) ................................................................................... passim
*Freytag v. Commissioner,*
   501 U.S. (1991) ............................................................................................ 26, 27
*Griffith v. FLRA,*
   842 F.2d .......................................................................................................... 22
*Herbert v. Nat'l Acad. of Sciences,*
   974 F.2d 192 (D.C. Cir. 1992) ........................................................................... 5
*Housing and Urban Development and AFGE, Council of HUD Locals 222,*
   18 FSIP 075, (February 14, 2019) ...................................................................... 2
*Intercollegiate Broadcasting,*
   684 F.3d 1332 (D.C. Cir 2012) ......................................................................... 28
*Jarkesy v. SEC,*
   803 F.3d 9 (D.C. Cir. 2015) ................................................................... 9, 17, 18
*\*Laurel Baye Healthcare of Lake Lanier, Inc. v. NLRB,*
   564 F.3d 469 (2009) ................................................................................... passim
*Leedom v. Kyne,*
   358 U.S. 184 (1958) ............................................................... 6, 20, 23, 24
*\*Lucia v. S.E.C.,*
   138 S. Ct. 2044 (2018) .......................................................................... 25, 26, 27
*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992) .......................................................................................... 8
*Lunderstadt v. Colafella,*
   885 F.2d 66 (3d Cir. 1989) ............................................................................... 5
*MedImmune, Inc. v. Genentech, Inc.,*
   549 U.S. 118 (2007) ...................................................................................... 10, 22
*\*National Air Traffic Controllers Association v. Federal Service Impasses Panel,*
   *et al.,* 606 F.3d 780 (2010) ........................................................................ 12, 21, 22
*Oestereich v. Selective Serv. Sys. Local Bd. No. 11, Cheyenne, Wyoming,*
   393 U.S. 233 (1968) ...................................................................................... 22, 24
*Philip Morris, Inc. v. Block,*
   755 F.2d 368 (4th Cir. 1985) ............................................................................ 20
*Physicians Nat'l House Staff Ass'n v. Fanning,*
   642 F.2d 492 (D.C. Cir. 1980) ........................................................................ 23
*Russello v. U.S.,*
   464 U.S. 16 (1983) .......................................................................................... 32
*Ryder v. United States,*
   515 U.S. 177 (1995) ........................................................................................ 24

*SoundExchange, Inc. v. Librarian of Congress*,
   571 F.3d 1220 (D.C. Cir. 2009) ................................................................. 29
*Thunder Basin Coal Co. v. Reich*,
   510 U.S. 200 (1994) .................................................................... passim
*U.S. Dep't of the Treasury v. FLRA*,
   43 F.3d 682 (D.C. Cir. 1994) ........................................................... 24
*U.S. v. Villanueva-Sotelo*,
   515 F.3d 1234 (D.C. Cir. 2008) ....................................................... 32
*United States v. Germaine*,
   99 U.S. 508 (1879) ............................................................................ 26
*Winston Strawn, LLP v. McLean*,
   843 F.3d 503 (D.C. Cir. 2016) ........................................................... 4

## Statutes

5 U.S.C. §7104(a) .......................................................................... 32
5 U.S.C. § 7104(a)(d) ..................................................................... 32
5 U.S.C. § 7104(b) ........................................................................... 2
5 U.S.C. § 7104(d) .................................................................. 2, 3, 7, 32
5 U.S.C. § 7105 ................................................................................. 2
5 U.S.C. § 7116(c)(2), (3), and (4) ................................................... 26
5 U.S.C. § 7119 ............................................................................. 2, 8
5 U.S.C. § 7119(c) ............................................................... 25, 30, 36
5 U.S.C. § 7119(c)(2) .............................................................. passim
5 U.S.C. § 7119(c)(3) ........................................................................ 3
5 U.S.C. § 7119(c)(5) ...................................................................... 29
5 U.S.C. § 7119(c)(5)(B) ............................................................. 3, 26
5 U.S.C. § 7119(c)(5)(B)(iii) ............................................................. 3
5 U.S.C. § 7119(c)(5)(C) ............................................................. 27, 29
5 U.S.C. § 7119(c)(B)(iii) ............................................................... 27
5 U.S.C. § 7123 .................................................................... 10, 12, 21
5 U.S.C. § 7123(A) ......................................................................... 21
5 USC 7116(c)(3) ............................................................................ 26
29 U.S.C. § 153(a) .......................................................................... 33
29 U.S.C. § 153(b) ..................................................................... 34, 38
Federal Service Labor-Management Relations Statute, 5 ...................... 2
Pub L. No, 110-432 ......................................................................... 29
United States Constitution. Art. II, § 2, cl. 2 ...................................... 1

## Rules

Fed. R. Civ. P. 56(a) ........................................................................ 4
Fed.R.Civ.P. 12(b)(1) ....................................................................... 5
Rule 12(b)(6) ................................................................................... 5
Rule 56 ................................................................................... iii, 4
Rule 56(e) of the Federal Rules of Civil Procedure ................................ i

Regulations

5 C.F.R. 2470.2(f) and (h)................................................................................................. iv, 35, 36, 38

Other Authorities

Senate. 5............................................................................................................................... 4
United States26 ..................................................................................................................... iv

## INTRODUCTION

The Court should grant Plaintiff's Motion for Summary Judgment, and deny Defendants' Motion to Dismiss, for three reasons. One, the Court has subject matter jurisdiction over this action as it does not fall within the Statute's administrative review scheme. Channeling would improperly foreclose meaningful review of Plaintiff's claims and force Plaintiff to "bet the farm" in exactly the manner that the Supreme Court rejected in *Free Enterprise Fund v. Public Co. Accounting Oversight Bd*, 561 U.S. 477, 490-91 (2010).

Two, the Court should grant Plaintiff's Motion for Summary Judgment because the chairman and members of the Panel are principal officers who were not appointed with the advice and consent of the Senate in violation of the Appointments Clause of the United States Constitution. Art. II, § 2, cl. 2. To the extent that Section 7119 of the Statute allows otherwise, it is void. Panel members exercise significant authority, without supervision, and take final actions that bind the parties before them. The Appointments Clause therefore requires that their appointments be made only with the Senate confirmation, which they were not.

Three, separate and apart from the insurmountable constitutional defect in the appointments of the Panel's chairman and members, the Panel's issuance of the decision in this case was done outside of the power that the Statute grants the Panel. Unlike the Statute's clear and express provision that the Authority may continue to exercise its power in the event of a vacancy, the Statute grants the Panel no such similar allowance. Instead, the Statute sets the condition precedent that the Panel must be composed of "a Chairman and *at least* six other members." 5 U.S.C. § 7119(c)(2) (emphasis added). The Panel had no power under the Statute to issue any decision with respect to *HUD and Council 222*, unless and until it had a full complement of six members and a chairman, which it did not. To the extent that Defendants seek

1

to rely on the Panel's regulations, that reliance is misplaced. Any reading of the Panel's regulations that would allow the Panel to take a final action in the absence of "a Chairman and *at least* six other members" is contrary to the plain language of the Statute and therefore without force. 5 U.S.C. § 7119(c)(2)(emphasis added).

For all of the reasons above, the Panel's issuance of its decision in *Department of Housing and Urban Development and AFGE, Council of HUD Locals 222,* 18 FSIP 075, (February 14, 2019) (*"HUD and Council 222"*), was *ultra vires* and should be vacated. The Court should therefore grant Plaintiff's motion for summary judgment and deny Defendants' motion to dismiss in its entirety.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

I.    The Panel

The Federal Service Labor-Management Relations Statute, 5 U.S.C. Chapter 71, (the "Statute") establishes the Federal Labor Relations Authority ("Authority") and provides that the Authority is composed of three members who "shall be appointed by the President by and with the advice and consent of the Senate."  5 U.S.C. § 7104(b). The Statute gives the Authority a variety of powers and duties relating to federal sector labor relations. 5 U.S.C. § 7105. And the Statute expressly provides, with respect to the Authority's ability to use its powers, that "[a] vacancy in the Authority shall not impair the right of the remaining members to exercise all of the powers of the Authority."  5 U.S.C. § 7104(d).

Similar to the Authority, the Statute separately establishes the Federal Service Impasses Panel ("Panel" or "FSIP"). 5 U.S.C. § 7119. The Panel is empowered, broadly speaking, to

---

[1] To the extent that Defendants' motion to dismiss seeks to dismiss Civil Action No. 19-cv-1976, or any claims that were raised therein, Defendants' motion should be denied as moot in light of the parties' joint motion to dismiss that action with prejudice. *See* Docket No. 19, Joint Motion to Dismiss Civil Action No. 19-cv-1976 as Moot.

2

resolve negotiation impasses that may arise between an agency and a labor organization engaged in collective bargaining - so long as the Panel does not take any action inconsistent with the Statute. 5 U.S.C. § 7119(c)(5)(B)(iii). Pursuant to the Statute, the Panel exercises significant authority and discretion. Specifically, 5 U.S.C. § 7119(c)(5)(B) authorizes the Panel to: (i) hold hearings; (ii) administer oaths, take the testimony or deposition of any person under oath, and issue subpoenas; and (iii) take whatever action is necessary and not inconsistent with this chapter to resolve the impasse.

The Statute treats the Panel differently from the Authority in two key respects. First, the Statute provides that "[t]he Panel shall be composed of a Chairman and *at least* six other members, who shall be appointed by the President," without the advice and consent of the Senate. 5 U.S.C. § 7119(c)(2) (emphasis added). Such Panel members may also be removed by the President at any time. 5 U.S.C. § 7119(c)(3). The second key respect in which the Statute treats the Panel differently from the Authority is that the Statute contains no provision that grants the Panel or its members the ability to exercise any of its powers in the event of a vacancy. *Compare* 5 U.S.C. § 7104(d) *with* 5 U.S. C. § 7119(c)(2).

II.     HUD and Council 222

On or about June 19, 2018, Council 222 and HUD began bargaining, over a "ground rules" agreement that would govern the parties' negotiations for a term agreement. A month later, on July 30, 2018, HUD asserted that the parties had reached an impasse in their ground rules negotiations and HUD submitted a request for Panel assistance with the parties' ground rules negotiations. Council 222 objected to the Panel's jurisdiction on September 2018.  Despite Council 222's objection on November 15, 2018, the Panel took jurisdiction and ordered the parties to engage in mediation with the Federal Mediation and Conciliation Service (FMCS).

From December 10, 2018 through December 14, 2018, Council 222 and HUD met with the FMCS mediator. On December 14, 2018, because the parties could not reach agreement on the ground rules, the FMCS mediator referred the parties to the Panel for resolution of the purported impasse.

Prior to the referral to the Panel, on July 26, 2017, the President appointed defendant Mark Carter to be Chairman of the Panel; he also appointed as members Andrea Fisher Newman, David R. Osborne, Karen M. Czarnecki, Donald Todd, Jonathan Riches and F. Vincent Vernuccio.  On January 10, 2019, the appointments of Donald Todd, Jonathan Riches, and F. Vincent Vernuccio expired, leaving the Panel with only four members.

On February 14, 2019, the Panel issued its decision in *HUD and Council 222* with only four members serving on the Panel.

## ARGUMENT

### I. STANDARD OF REVIEW

#### a. Rule 56

A moving party is entitled to summary judgment when it demonstrates that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Winston Strawn, LLP v. McLean*, 843 F.3d 503, 507 (D.C. Cir. 2016) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the movant carries this initial burden, the burden shifts to the non-moving party to demonstrate that sufficient evidence exists for a reasonable jury to find in the nonmoving party's

4

favor as to the essential elements of that party's case, for which they will have the burden of proof at trial. *Celotex*, 477 U.S. at 322. If the non-moving party is unable to set forth specific facts showing a genuine issue for trial exists, summary judgment is appropriate. *Id*. at 324.

b. <u>Rule 12(b)(1)</u>

In ruling upon a motion to dismiss brought under Rule 12(b)(1), a court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (citations omitted). Under Rule 12(b)(1), however, "where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992). Generally, the "threshold to withstand a motion to dismiss under Fed.R.Civ.P. 12(b)(1) is … lower than that required to withstand a Rule 12(b)(6) motion." *See Lunderstadt v. Colafella*, 885 F.2d 66, 70 (3d Cir. 1989). If the Court concludes that it is not barred from hearing a plaintiff's claims, it must deny the motion to dismiss. *Am. Nat'l Ins. Co,* 643 F.3d at 1145.

## II.   THE COURT HAS SUBJECT MATTER JURISDICTION OVER THIS ACTION

The Court has subject matter jurisdiction because Council 222 satisfies all the prerequisites necessary to establish this Court's jurisdiction and the Statute does not otherwise preclude this Court from asserting jurisdiction over this action. Council 222 was a party to the Panel's decision and that binding decision, issued by invalidly appointed officers and without the full complement of members that the Statute requires, harmed Council 222 and continues to

harm Council 22 by imposing bargaining ground rules that are detrimental to Council 222 and to which the council did not agree.

Moreover, the administrative channeling which Defendants seek is not available because Council 222's claims are not "of the type Congress intended to be reviewed within [the] statutory structure." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212 (1994) ("*Thunder Basin*"). And even assuming solely for the sake of argument that they were, the Court would nonetheless have subject matter jurisdiction over this matter because the Panel's issuance of its decision was done "in excess of its delegated powers" and was contrary to the clear statutory mandate that the Panel shall be composed of a Chairman and at least six other members." *See Council of Prison Locals v. Brewer, et al.*, 735 F.2d 1497 (D.C. Cir. 1984) ("*Brewer*") (*quoting Leedom v. Kyne*, 358 U.S. 184 (1958) ("*Leedom*")); *see also* 5 U.S.C. § 7119(c)(2).

Defendants' preclusion argument is based entirely on the misplaced notion that this Court lacks jurisdiction to review Panel decisions. This might be true of Council 222 sought review of the substance or the merits of the Panel's decision, but they do not. Council 222 does not challenge here the substance of the Panel's order or the reasoning behind it. Instead, Council 222 challenges the very authority of the Panel to issue any orders, as presently appointed and as it was composed at the time it issued it decision in this case. As a result, Council 222's claims are not the type of claims Congress intended to be reviewed through the Statute.

Further, Defendants' try to elide Council 222's argument that the Statute requires a "Chairman and at least six other members" before it may act by asserting that the Statute is "silent" as to "what constitutes a quorum of the Panel" and that therefore *Leedom* does not apply. Defs. Motion at 24. But Defendants are looking in the wrong place. Their argument, put differently, turns a blind eye to what is a very simple and straightforward, and express, statutory

mandate: "[t]he Panel shall be composed of a Chairman and at least six other members." 5
U.S.C. § 7119(c)(2). And we must presume that Congress knew full well what it was doing when
it used the language "at least" when, by contrast, it took the time to carve out a different and
express "quorum" provision for the Authority. *Compare* 5 U.S.C. § 7104(d) *and* 5 U.S.C §
7119(c)(2). The Panel therefore acted contrary to an express statutory mandate when it issued
*HUD and Council 222* with fewer than seven members. Consequently, *Leedom* provides this
Court subject matter jurisdiction to correct the Panel's violation of this clear and mandatory
statutory provision.

Finally, in support of their motion to dismiss, Defendants inaptly rely on *Am. Fed'n of
Gov't Employees, AFL-CIO v. Trump*, 929 F.3d 748 (D.C. Cir. 2019) ("*Trump*"). The Court of
Appeals' decision in *Trump* is inapplicable here because it involved widely divergent
circumstances and different parts of the Statute. Specifically, the claims in *Trump* dealt with
challenges to executive orders issued by the President and concerned the potential imposition of
specific types of bargaining terms – where bargaining had yet to occur. Neither the Panel, nor the
portions of the Statute at issue here, were implicated by the claims in *Trump*. Moreover, the
Court of Appeals' holding in Trump was based on hypothetical bargaining scenarios that could
not arise from the facts that led to Council 222's claims. Consequently, the Court of Appeals
opinion in *Trump* does not support Defendants' Motion, and this Court has jurisdiction to hear
Council 222's claims.

### A.      Council 222 has standing to bring this action against the Panel

It does not warrant detailed discussion to establish that Council 222 has standing in this
case. First, it is settled law in this Circuit that a regulated entity has standing to assert a challenge
to the constitutionality of a regulatory official's appointment. *See Buckley v. Valeo*, 424 U.S. 1,

7

12 (1976) & n.10; *Andrade v. Lauer*, 729 F.2d 1476, 1494-496 (D.C. Cir 1984). It is beyond dispute that Council 222 is an entity regulated by the Authority and Panel. *See* 5 U.S.C. § 7119. Thus, Council 222 clearly has standing to raise an Appointments Clause challenge to the composition of the Panel.

Next, Council 222 plainly has Article III, as it has established: (a) injury in fact that is actual, concrete, and particularized; (b) causation; and (c) redressability. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The Panel's decision directly injured Council 222 by imposing terms of a ground rules' agreement which Council 222 opposed and which compel Council 222 to take certain actions against its will. For example, *HUD and Council 222* has required Council 222 to expend resources for the travel expenses of its negotiators.

Finally, a favorable decision will redress Council 222's injury regardless of the eventual make-up of the Panel. Specifically, "it cannot be assumed that action in accord with correct procedures would have produced the same result." *Andrade*, 729 F.2d at 149. Thus, it cannot be presumed that Council 222 would have suffered the same injury if the Panel had been composed correctly and vacatur of the Panel's decision will provide Council 222 with relief from its terms and the opportunity to pursue a new agreement before a properly constituted Panel. Consequently, Council 222 has standing.

### B. The Statute Does Not Preclude Jurisdiction Over Challenges to the Panel's Composition.

This Court has jurisdiction to hear Council 222's claims because Council 222's challenges to the Panel's composition and appointment are not the type of claims that Congress intended to be reviewed by the Statute. When analyzing whether an otherwise comprehensive statutory scheme precludes district court jurisdiction over a claim, a court must review whether

the claim falls within the scheme's purview, i.e., is the claim "of the type Congress intended to be reviewed within [the] statutory structure." *Thunder Basin,* U.S. 200 at 212. For preclusion to apply, the intent must be "fairly discernible in the statutory scheme." *Thunder Basin,* 510 U.S. at 207.

The Court of Appeals has endorsed three "general guideposts useful for channeling the inquiry into whether the particular claims" are of the type Congress intended to be reviewed by a statutory scheme. *Jarkesy v. SEC*, 803 F.3d 9, 17 (D.C. Cir. 2015). Claims "will be found to fall outside of the scope of a special statutory scheme in only limited circumstances, when (1) a finding of preclusion might foreclose all meaningful judicial review; (2) the claim[s] [are] wholly collateral to the statutory review provisions; and (3) the claims are beyond the expertise of the agency." *Arch Coal, Inc. v. Acosta*, 888 F.3d 493, 500 (D.C. Cir. 2018) (citing *Free Enterprise Fund v. Public Co. Accounting Oversight Bd*, 561 U.S. 477, 489 (2010); *Thunder Basin*, 510 U.S. at 212–13).

Here, all three guideposts show that Council 222's claims are not of the type Congress intended to be reviewed by the Statute. Indeed, the nature of Council 222's claims against the Panel are uncannily like those that the Supreme Court found outside a statutory scheme's preclusion in *Free Enterprise.* Like the plaintiffs in *Free Enterprise's* "object[ion] to the Board's existence," Council 222 challenges the very existence of the Panel's authority. *Free Enterprise* 561 U.S. at 490. Similar to the *Free Enterprise* plaintiff's inability to obtain review from the Securities and Exchange Commission ("SEC"), Council 222 will not be able to obtain review from the Authority because its "general challenge to the [Panel] is 'collateral' to any [Authority] orders or rules from which review might be sought." *Id*. Moreover, even if Council 222 could conceivably obtain Authority review through a far-fetched unfair labor practice charge, such

review would not be meaningful because Council 222 would have "to 'bet the farm ... by taking the violative action' before 'testing the validity of the law.'" *Free Enterprise*, 561 U.S. at 490-91 (*quoting MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 129 (2007)). Finally, like the SEC in *Free Enterprise*, the Authority does not have the competence and expertise to hear Council 222's claims. *Id* at 491. Thus, in accordance with the Supreme Court's holding in *Free Enterprise,* this Court has jurisdiction to hear Council 222's claims.

1.   A finding of preclusion would foreclose all meaningful judicial review of Council 222's claims against the Panel.

Contrary to Defendants' assertion, a finding in this case that Council 222 is precluded from challenging the Panel's composition and appointment in district court would foreclose all meaningful judicial review of these claims. Specifically, the Statute does not provide any review, let alone meaningful review, of claims such as those made by Council 222. While the Statute provides for judicial review of Authority orders, there is no direct mechanism for review of Panel orders or claims challenging the Panel's authority. *See* 5 U.S.C. § 7123; *Brewer,* 735 F.2d 1497.

Defendants argue that a party may conceivably obtain review of a Panel order through an unfair labor practice proceeding. Council 222's claims in this matter, however, do not concern the substance of a Panel order. Rather, they challenge the very basis of the Panel's authority. In addition, the nature of Council 222's claims foreclose it from raising them before the Authority. Thus, unlike the claims in *Thunder Basin*, the claims here are appropriate for district court review. Put differently, Council 222 is not contesting the legality of the results reached by the Panel below. Council 222 is instead arguing that the Panel lacked the authority to reach any result at all because its very existence and composition is invalid. Moreover, even if Council 222 could make some far-fetched attempt to obtain review through an unfair labor practice, that review would not be meaningful because it would require Council 222 "to 'bet the farm ... by

10

taking the violative action' before 'testing the validity of the law.'" *Free Enterprise*, 561 U.S. at 490-91 (quoting *MedImmune Inc. at* 129). For instance, if Council 222 refused to adhere to the Panel imposed terms, it may be found to have engaged in bad faith bargaining and lose its ability to negotiate a term agreement.

The differences between the claims in *Thunder Basin* and Council 222's claims here highlight why review in this Court is appropriate. Unlike Council 222, the plaintiff in *Thunder Basin* was eventually able to obtain court review through a statutory scheme. In *Thunder Basin*, a mining company refused to post contact information of two union representatives that it believed were designated in violation of the National Labor Relations Act ("NLRA"). *Thunder Basin*, 510 U.S. at 204. Instead of waiting for the mine safety agency to file a citation against it based on its refusal, the mining company filed a pre-enforcement challenge to the union's designation in district court. *Id*. As a basis for its claims, the company argued that the union had violated the NLRA by designating the representatives. *Id*.

Had the mining company waited for a citation, it would have been able to obtain review of the citation from the Mine Safety and Health Review Commission, followed by appeal to circuit court. *Id.* at 215-16. Even though the mining company could not obtain court review prior to enforcement against it, the Supreme Court found that it was precluded from seeking relief in district court because it would eventually obtain meaningful review through the NLRA. *Id*. Specifically, had the mining company persisted in its refusal to recognize the designated representatives, the "Secretary would have been *required* to issue a citation and commence enforcement proceedings" against it. *Id.* (emphasis added). In turn, the mining company would eventually receive judicial review through those enforcement proceedings. *Id*.

11

The situation at hand is distinct because the Statute does not provide Council 222 a route to judicial review. First, unlike the mining company, Council 222 is not challenging the legality of an action it has taken. In *Thunder Basin*, the mining company took action that necessarily would prompt enforcement that, in turn, would lead to a judicially reviewable decision. *Thunder Basin,* 510 U.S. at 216. On its own, a Panel order is not subject to review through the administrative scheme and does not compel any enforcement action. *See* 5 U.S.C. § 7123; *Brewer*, 735 F.2d at 1497.

Next, were Council 222 to take action that could conceivably subject the Panel order to review, that review would not be obtained unless enforcement was taken against Council 222. In *Thunder Basin*, the Supreme Court relied on the fact that the mining company's actions compelled enforcement. *Thunder Basin*, 510 U.S. at 216 (noting that the violation "required" the Secretary to issue citation). Here, nothing in the Statute compels the Authority to initiate enforcement proceedings against a union that commits an unfair labor practice. Consequently, even if Council 222 were to commit an unfair labor practice in relation to the Panel's order, it would not be able to obtain judicial review unless a complaint against it was filed and adjudicated. *National Air Traffic Controllers Association v. Federal Service Impasses Panel, et al.*, 606 F.3d 780, 788 (2010) ("*NATCA*") ("We do not believe the Congress intended the General Counsel of the FLRA to exercise such control over" the Court's jurisdiction). More importantly, such an action may require Council 222 "to 'bet the farm ... by taking the violative action' before 'testing the validity of the law.'" *Free Enterprise*, 561 U.S. at 490-91. (quoting *MedImmune, Inc. at* 129.). The Supreme Court has concluded that it does not "consider this a 'meaningful' avenue of relief." *Id.*

Defendants' reliance on a series of cases predating *Free Enterprise* and *NATCA* is misplaced on numerous grounds. First, in the cases cited by Defendants, the challenges did not concern the Panel's authority to act in general but the Panel's authority to issue specific terms. For instance, in *American Federation of Government Employees, AFL-CIO v. Federal Labor Relations Authority*, 778 F.2d 850, 856 (D.C. Cir. 1985) (*AFGE v. FLRA*), the Court of Appeals was clear that it was discussing the binding nature of "[t]he terms" imposed by the Panel. In that case, the issue in contention involved an agency head's ability to determine that certain terms imposed by the Panel were non-negotiable. *Id* at 855. The court's finding, therefore, was limited to the conclusion that the Authority may review the merits of a Panel order through an unfair labor practice. *See also Dep't of Def. Domestic Dependent Elementary & Secondary Sch. Fort Buchanan, P.R.*, 71 F.L.R.A. 127, 134 (2019) (finding that Panel could not impose specific terms that were not at impasse). Here, Council 222 is not challenging any of the specific terms imposed by the Panel. Instead, the challenge before this Court is the Panel's very authority to act at all. The Authority has not, and cannot, provide meaningful review of such a claim through an unfair labor practice proceeding.

Next, the Supreme Court's ruling in *Free Enterprise* is clear that a party need not "'bet the farm ... by taking the violative action' before 'testing the validity of the law.'" *Free Enterprise*, 561 U.S. at 490-91 (citations omitted). Defendants suggest that Council 222 "refuse to comply with" the Panel order to force HUD to file an unfair labor practice against it, in order to obtain review of its claims. Motion at 17. Defendants' suggestion appears to be based on its interpretation of *Brewer*, which predated the holding in *Free Enterprise.* Motion at 18. Were Council 222 to take some action to provoke an unfair labor practice, the consequences may be grievous and could include decertification. *Brewer*, 735 F.2d at 1501, n.9. For example, because

some of the terms contained in the Panel order concern benefits rather than burdens, the only action Council 222 may be able to take to instigate an unfair labor practice would involve a strike, work stoppage, or slowdown. See Id; 5 § 7120(f). Such actions would lead to decertification and cause Council 222 to cease to exist. Id. Surely a union should not have to suffer such a risk to its very existence before it may raise a constitutional challenge to the appointment of the Panel. In *Free Enterprise* the Supreme Court found just that, and held that a plaintiff could not be required to take action that would subject it to large fines, or "bet the farm," in order to obtain meaningful review. *Free Enterprise*, 561 U.S. at 490-91. Thus, Council 222 cannot be forced to take action that could result in sanctions as severe as decertification to obtain meaningful review of its claims.

Finally, Defendants' citations to the Court of Appeals' recent decision in *Trump*, 929 F.3d 748, are unavailing. First, Defendants claim that Council 222 may obtain review by "seek[ing] to reopen bargaining" with HUD in an attempt to prompt HUD to refuse to bargain. Motion at 17. If HUD refuses to reopen bargaining, Defendants propose that Council 222 obtain review through unfair labor practice proceedings. *Id*. Defendants' suggestion is based on a misplaced application of the *Trump* court's finding that a union may file a negotiability appeal or unfair labor practice during the bargaining over agencies' implementation of the executive orders that were challenged in that case. The challenges at issue in *Trump* did not involve an imposed agreement, and the relied upon portion of the court's opinion dealt with an issue unlike that here. *Id*. There, the court suggested that unions could potentially obtain review by challenging individual bargaining disputes as they arose. *Id* at 757. Specifically, as agencies bargained over the implementation of the challenged executive orders, the *Trump* court suggested that unions file unfair labor practices against the agencies over that bargaining. *Id*.

14

Employing such a strategy in this case would not provide Council 222 with meaningful review of its claims. One, the gravamen of Council 222's challenge is not based on anything that HUD has done or will do. If Council 222 filed an unfair labor practice over HUD's refusal to reopen bargaining over the Panel imposed terms, the subsequent proceedings would not be about the Panel's authority but about HUD's refusal to bargain. The Authority would therefore be constrained to reviewing the validity of HUD's actions, not the Panel's. Two, even if an unfair labor practice was successful, the relief provided would merely be the reopening of bargaining and would not impact the Panel's authority. As a result, Defendants' suggestion that Council 222 obtain relief by seeking to reopen bargaining, is without merit.

Defendants' refence to the *Trump* court's observation that the Statute may foreclose both administrative and judicial relief is also misplaced. Although the *Trump* court did quote prior Court of Appeals' precedent opining on the Statute's ability to foreclose all review of certain claims, it made clear that the issue of the "outer bounds" of the Statute's preclusion was not before it. *Trump*, 929 F.3d at 757. More important, the *Trump* court was not discussing the ability of the Statute to foreclose all review of a certain issue but only the "adequacy of specific remedies." *Id.* (*quoting AFGE v. Secretary of the Air Force*, 716 F.3d 633 (D.C. Cir. 2013). Here, if Council 222 is unable to obtain review in this Court, all meaningful review of the issues it raises in its claims will be foreclosed.

It is clear that Congress did not foresee the type of claims Council 222 makes here and, therefore, did not provide a mechanism to assert them. The only way Council 222 can obtain judicial review, let alone any meaningful review, is through this challenge. Consequently, if Council 222 is denied review in this Court, it will foreclose any meaningful judicial review of its statutory and constitutional claims.

2. <u>Council 222's claims are wholly collateral to the Statute's administrative review provisions.</u>

Council 222's claims are wholly collateral to those "regularly adjudicated" through the Statute because its challenges to the Panel's existence and authority fall outside the Statute's administrative scheme. No plausible reading of the Statute's text, or case law applying the Statute, render questions about the Panel's composition and appointment as issues to which the Statute's scheme applies. Additionally, viewed through the relief sought, Council 222's claims are wholly collateral because they do not seek relief that can be sought within the Statute's scheme.

*Free Enterprise* and *Elgin v. Department of Treasury*, 576 U.S. 1, 13 (2012), bracket the type of claims that will be considered "wholly collateral." In *Free Enterprise*, the earlier of the two decisions, the Supreme Court found that a constitutional challenge to the Public Company Accounting Oversight Board ("PCAOB") was wholly collateral to the administrative review scheme provided by the Sarbanes–Oxley Act of 2002 ("Sarbanes-Oxley"). *Free Enterprise*, 561 U.S. at 489-90. Under Sarbanes-Oxley, an administrative challenge to a PCAOB order could be made through a request to the SEC. *Id*. A resulting SEC order was then judicially reviewable. *Id*. However, the Court found that the plaintiff's claims in *Free Enterprise* were not the type properly made through Sarbanes-Oxley's administrative scheme because they were not merely challenging a PCAOB order or its rules. *Id*. Instead, the plaintiff's challenge to the very existence of the PCAOB was "'collateral' to any Commission orders or rules from which review might be sought" through Sarbanes-Oxley. *Id*. Consequently, the Court found that the plaintiff's challenge was not precluded by Sarbanes-Oxley's administrative review procedures even though it could have potentially obtained review through the SEC. *Id*.

Distinguishing its ruling in *Free Enterprise*, the Court's opinion in *Elgin* held that claims are not "wholly collateral" if they concern "precisely the type of [] action regularly adjudicated" through the statutory review process. *Elgin*, 576 U.S. at 22.  In *Elgin*, petitioners challenged an adverse employment action on multiple constitutional grounds. The Court concluded that the "petitioners' constitutional claims [were] the vehicle by which" they sought relief that the statutory scheme "routinely affords." *Elgin,* 576 U.S. at 22-23. Specifically, although the *Elgin* petitioners' claims were premised on constitutional grounds, the relief they sought was the reversal of a removal – the same type of relief the Merit Systems Protection Board ("MSPB") routinely grants *Id*.

The key factor distinguishing the claims in *Elgin* and *Jarskey* from those found as wholly collateral in *Free Enterprise* was that the claims were meant solely to obtain relief that was already available under an administrative scheme. *Jarskey v. SEC,* 803 F.3d 9, 23 (D.C. Cir. 2015). In *Jarskey*, the court found that even though the plaintiff's asserted claims were allegedly "independent and irrelevant" to the reason enforcement action was taken against him, the SEC would "one way or another, rule on those claims." *Id*. That is because the relief sought by the plaintiff in *Jarskey*, the cessation of enforcement action, was the same relief sought both in the claims made at district court and the administrative process. The same is true of the plaintiffs in *Elgin*. There, the plaintiffs conceded that they could pursue a challenge to their removals through the MSPB; they merely disagreed whether the MSPB was capable of adjudicating their constitutional claims.

The plaintiffs here, like those in *Free Enterprise*, neither have an administrative venue for their claims nor are requesting relief that is regularly afforded through the Statute. Like the plaintiffs' challenge to the PCAOB in *Free Enterprise*, Council 222 is challenging the very

existence and authority of the Panel. Although Council 222's claims arise from a Panel order, the relief sought is not the mere reversal of the Panel's order but rather a judgment finding that the Panel, as currently composed, does not have the authority to issue *any* decisions. Moreover, like the review provisions in Sarbanes-Oxley, the Statute does not provide for a direct challenge to the Panel. And, unlike the plaintiffs in *Elgin* and *Jarskey*, there is no administrative proceeding that can provide the relief that Council 222 seeks.

In arguing that Council 222's claims are not collateral; Defendants again mischaracterize the claims as involving the substance of a Panel order. Motion at 22. Although Council 222 believes it was harmed by the Panel's imposition of certain terms, it is not asking for review of those specific terms or merely for the reversal of that order. Instead, the relief it seeks is broader. Moreover, unlike the plaintiff in *Jarskey*, reversal of the action prompting Council 222's challenge is not available under the standard administrative process. In *Jarskey*, the statutory scheme provided the plaintiff with a direct avenue to appeal the order he was challenging. *Jarskey v. SEC,* 803 F.3d at 21-23 (discussing the administrative proceeding over Jarskey's sanction). Here, there is no way for Council 222 to directly attack the Panel's order and, like the claims in *Free Enterprise*, Council 222's claims are wholly collateral to the claims adjudicated through the Statute. As a result, Council 222's claims involving the composition of the Panel are wholly collateral to the administrative scheme provided by the Statute.

3. <u>Council 222's Claims are Beyond the Expertise of the Authority.</u>

Finally, Congress could not have intended for Council 222's claims involving the Panel's composition to be precluded because these claims are outside the expertise of the Authority. The Authority has no expertise whatsoever in determining whether the Constitution requires senate confirmation for particular appointments. This is plainly not a labor-relations issue or even an

issue associated with a labor-relations issue. So, while the Authority may have "specialized expertise in the field of federal labor relations" and is tasked with administering and interpreting the Statute, the claims at issue here do not implicate such expertise at all. *AFGE Council of Locals 214 v. FLRA*, 798 F.2d 1525, 1528 (DC Cir 1986). Like the claims in *Free Enterprise*, Council 222's claims, are "standard questions of administrative law, which the courts are at no disadvantage in answering." *Free Enterprise*, 561 U.S. at 491.

Moreover, unlike MSPB in *Elgin*, the Authority cannot obviate the need to address Council 222's challenge to the Panel's authority. In *Elgin*, the Supreme Court found that even though the plaintiff had raised a constitutional claim that was outside the expertise of the MSPB, the MSPB could still apply its expertise to threshold issues that accompanied that claim. *Elgin,* 576 U.S. at 22. This was in part because the relief requested in *Elgin*, reversal of a removal from federal service, could be obtained on other grounds that would eliminate the need to address the constitutional question. *Id*. Here, Council 222 is asking for declaratory and injunctive relief based on the Panel's authority and existence. Nothing in the Statute provides the Authority with the ability to render judgement on the Panel's composition, and there is no forum for Council 222 to request such relief through the Statute. Consequently, Council 222's claims are outside the expertise of the Authority and the Authority cannot obviate the need to review those claims.

Council 222's claims regarding the composition of the Panel are not the type of claims that "Congress intended to be reviewed within th[e] statutory structure." *Free Enterprise* 561 U.S. at 489 (quoting *Thunder Basin*, 510 U.S. at 207, 212). Consequently, the Statute does not preclude Council 222's claims and they are properly presented to this court for review.

**C.      The Court has Subject Matter Jurisdiction Because The Panel Violated an Express Statutory Prohibition.**

Council 222's claims are not of the type that Congress intended precluded by the Statute. Regardless, even if some form of preclusion is found, review is proper because the Panel acted "in excess of its delegated powers and contrary to a specific prohibition" in the Statute when it issued the decision in *HUD and Council 222* without a full complement of Panel members. *See Leedom,* 358 U.S. 184. In *Leedom*, the Supreme Court held that even when a statutory scheme implicitly precludes district court review of a claim, review is proper if an agency has acted "in excess of its delegated powers and contrary to a specific prohibition in" its governing statute. *Id*; See also *Philip Morris, Inc. v. Block*, 755 F.2d 368, 369-70 (4th Cir. 1985) ("judicial intervention is authorized when an agency acts in 'brazen defiance' of its statutory authorization.").

Under *Leedom*, this court has the power to review whether the Panel exceeded its authority. The *Leedom* exception applies when: (1) there is a statutory preclusion of review that is implied, rather than expressed; (2) the plaintiff has no other meaningful and adequate means of vindicating its statutory rights; and (3) the government has acted contrary to a clear and mandatory statutory provision.  *Am. Fed'n of Gov't Employees, Local 2510 v. FLRA*, 453 F.3d 500, 506 (D.C. Cir. 2006) ("*Local 2510*")

Here, Council 222 is not seeking review of the merits of a Panel order, but to vacate the order because it was issued when the Panel did not have the mandated composition of a chairman and six other members. In *Leedom*, the Supreme Court upheld the district court's jurisdiction to remedy the National Labor Relations Board's ("the Board") violation of a statutory provision on a representation matter, notwithstanding the fact that representation cases are not generally subject to judicial review. Although the *Leedom* exception is narrow and difficult to meet, Council 222 meets that standard.

20

1.  <u>The Statute Does Not Expressly Preclude Judicial Review</u>

As discussed above, the Statute does not expressly preclude review of Panel orders and Congress did not intend for Panel orders to be precluded through the statutory scheme. Instead, where preclusion has been found, it has been implied from Section 7123's provision for circuit court review of certain Authority orders. See 5 U.S.C. § 7123(A).  That is, "[w]hile section 7123 specifically provides for judicial review of orders by the Authority, there is no provision for such review of Panel orders, and Panel orders are not appealable even to the Authority." *Brewer,* 735 F.2d at 1499. In *Brewer*, the Court of Appeals found Section 7123's grant of judicial review of certain Authority orders as implicitly precluding a challenge to the merits of a Panel order. *Id.*

Unlike the complaint in *Brewer*, Council 222 is not requesting that this Court review the merits of a Panel order for an error in fact or law of the resolution of an impasse. Any resolution in this matter will not determine the merits of the Panel's order on a bargaining dispute. Instead, Council 222 is merely seeking judgment on the Panel's authority. Such relief is appropriately sought before this court. *See NATCA., 606 F.3d at 787* (holding declaratory judgment proper and the court did not lack jurisdiction because the union did not seek review of a decision of either the Panel or the Authority General Counsel). Regardless, there is nothing in the clear text of the Statute that precludes review of a Panel order, let alone a challenge to the Panel's authority. As such, the only preclusion that could conceivably be found is implicit. Council 222's claim thus meets the first requirement in *Leedom*.

2.  <u>Council 222 has no other meaningful and adequate means of vindicating its statutory rights.</u>

Next, barring review by this Court would deny Council 222 a meaningful and adequate means of vindicating its statutory rights.  *See Supra Section III(B)(1)*. Without judicial review in this court there is no forum for Council 222 to effectively cure the Panel's violation of the law.

*See Griffith v. FLRA*, 842 F.2d at 493 (*quoting Oestereich v. Selective Serv. Sys. Local Bd. No. 11, Cheyenne, Wyoming*, 393 U.S. 233, 237 (1968) ("Without judicial intervention, the Court said, the Boards could deteriorate into 'freewheeling agencies meting out their brand of justice in a vindictive manner.")

Typically, Panel decisions are neither subject to administrative review by the Authority, nor are judicially reviewable. *Brewer* at 1499. In some cases, a Panel decision may be subject to collateral attack through a party's instigation of an unfair labor practice complaint. *Id*. In such a case, a party's refusal to comply with a Panel order may result in unfair labor practice proceedings during which the party could assert a challenge to the Panel's decision. The ability to assert a challenge, though, is contingent on an unfair labor practice being issued against the party that wishes to challenge the Panel's order. *NATCA*, 606 F.3d at 788.

Moreover, although a party may thus conceivably challenge a Panel order through an unfair labor practice, doing so could result in substantial "calamities." *Brewer, 735 F.2d* at fn.9. Such a challenge, therefore, would not be meaningful because the potential risk would require a party to "bet the farm." *Free Enterprise*, 561 U.S. at 490-91. (*quoting MedImmune, Inc.* 549 U.S. at 129. The Supreme Court has concluded that it does "consider this a 'meaningful' avenue of relief." *Id.*

Here, regardless of the potential to challenge a Panel order through an unfair labor practice, Council 222's challenges are not of the type that could be reviewed through an unfair labor practice proceeding. Specifically, unlike the plaintiffs in *Brewer*, Council 222 is not challenging the specific reasoning in a Panel decision. Rather, Council 222's challenge is to the very existence and authority of the Panel. As a result, Council 222 has no means other than this action to vindicate its rights.

3.   The Panel has Violated a Clear and Mandatory Statutory Provision.

By issuing orders without a chairman and six other members, the Panel acted contrary to a clear and mandatory statutory provision and exceeded its statutory authority. The Court of Appeals expressly recognized that, "in exceptional circumstances, a district court may exercise federal jurisdiction to invalidate a Panel order made 'in excess of its delegated powers..' *Brewer* at 1500-501, (quoting *Leedom*). "[T]o justify [*Leedom*] jurisdiction, there must be a 'specific provision of the Act which, although it is 'clear and mandatory,'' was nevertheless violated by the Panel." *Id*. at 1501 (*quoting Physicians Nat'l House Staff Ass'n v. Fanning*, 642 F.2d 492, 496 (D.C. Cir. 1980), cert. denied, 450 U.S. 917 (1981)). That is precisely the situation here - a specific statutory provision mandates that "[t]he Panel shall be composed of a Chairman and *at least* six other members" and the Panel did not have the requisite composition of members when it issued *HUD and Council 222*. 5 U.S.C. § 7119(c)(2) (emphasis added).

Seemingly ignoring the explicit language in Section 7119(c)(2), Defendants' sole opposition to this court asserting jurisdiction under *Leedom* is based on its claim that the Statute is "silent" as to "what constitutes a quorum of the Panel." Motion at 24. Defendants argue that an agency may create quorum rules when "not otherwise constrained by statute." *See e.g. Falcon Trading Grp*,. 102 F.3d 579, 582 (D.C. Cir. 1996). Contrary to Defendants' claims, however, the Statute specifically and expressly constrains the composition of the Panel. Indeed, in mandating that "[t]he Panel shall be composed of a Chairman and at least six other members," Congress constrained the Panel to functioning only with "at least" seven members. 5 U.S.C. § 7119(c)(2).

In *Leedom*, the Supreme Court stated that the law provides a remedy for a "suit [that] is not one to 'review,' in the sense of that term as used in the Act, a decision of the Board made within its jurisdiction. . . it is one to strike down an order of the Board made in excess of its

23

delegated powers and contrary to a specific prohibition in the Act." *Leedom*, 358 U.S. at 187. The Court of Appeals has explained that the *Leedom* exception "'is premised on the original federal subject matter jurisdiction of the district courts.'" *Local 2510,* 453 F.3d at 506 (*quoting U.S. Dep't of the Treasury v. FLRA*, 43 F.3d 682, 688 n.6 (D.C. Cir. 1994)).

Federal courts have reversed actions because federal agencies have exceeded their statutory authority, despite the existence of a judicial bar to reviewing the agencies' decisions. *Oestereich*, 393 U.S. at 237-38. (holding a Selective Service board exceeded its statutory mandate by promulgating regulations that denied a selective service registrant his statutory exemption); *AID Association for Lutherans v. U.S. Postal Serv.*, 321 F.3d 1166, 1175 (D.C. Cir. 2003) ("*AID Association*")(finding the Postal Service exceeded its statutory authority with its issuance of a regulation restricting the use of nonprofit third-class postage rate). Here, Council 222 is not asking this Court to review the Panel's resolution of a specific bargaining impasse, but to vacate the Panel's order that exceeded the Panel's delegated powers and violated the Statute.

In this case, Council 222 meets the three criteria for a *Leedom* exception to any finding of implied preclusion, and this court has jurisdiction over its claim.

## III.   THE COURT SHOULD GRANT SUMMARY JUDGMENT BECAUSE THE APPOINTMENT OF THE PANEL'S CHAIRMAN AND MEMBERS VIOLATES THE APPOINTMENT'S CLAUSE

The Panel that issued *HUD and Council 222* was composed in violation of the Appointment's Clause because the chairman and members are principal officers and were not appointed by and with the advice and consent of the Senate. The Appointments Clause to the Constitution "preserves … the Constitution's structural integrity by preventing the diffusion of the appointment power." *Ryder v. United States*, 515 U.S. 177, 182 (1995). The Appointments Clause "lays out the permissible methods of appointing 'Officers of the United States,' a class of

government officials distinct from mere employees." *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2049 (2018) (*quoting* Art. II, § 2, cl. 2). The acceptable method of appointment is determined by whether an officer is deemed a "principle" or "inferior officer." *Edmond v. United States*, 520 U.S. 651, 659-60 (2015). While Congress can vest the appointment of inferior officers to "the President alone, in the Courts of Law, or in the Heads of Departments," a principal officer can only be appointed by the President, "by and with the Advice and Consent of the Senate." Art. II, § 2, cl. 2.

Panel members are officers of the United States because they exercise significant authority pursuant to the laws of the United States, inasmuch as the Statute provides them discretion in resolving impasses that arise between an agency and labor organization, and renders any final decision taken by the Panel binding. 5 U.S.C. § 7119(c). Moreover, because Panel members are not subject to supervision and issue final decisions, they cannot be inferior officers and must be principal officers. *See Edmond*, 520 U.S. at 663. As officers of the United States, Panel members "must, therefore, be appointed in the manner prescribed by" the Appointments Clause. *Buckley*, 424 U.S. at 126. Principal officers must be appointed "by and with the Advice and Consent of the Senate." Art. II, § 2, cl. 2.

The Panel that issued *HUD and Council 222* was composed of members that were not appointed by and with the advice and consent of the Senate. 5 U.S.C. § 7119(c)(2). Therefore, the Panel was appointed in violation of the Appointments Clause and the portion of the Statute purporting to permit their appointment without the advice and consent of the Senate is unconstitutional.

1.  Panel Members are Officers Who Exercise Significant Authority Pursuant to the
    Laws of the United States.

That Panel members are officers of the United States is beyond dispute. The Supreme

Court's decisions in *Germaine* and *Buckley*, provide the "framework for distinguishing between

officers and employees." *Lucia*, 138 S.Ct. 2044 at 2051. First, the Court has held that an

individual "must occupy a "continuing" position established by law to qualify as an officer." *Id*

(*citing United States v. Germaine*, 99 U.S. 508, 510 (1879)). Second, the Court will look to "the

extent of power an individual wields in carrying out his assigned functions," in order to

determine if he "exercise[s] significant authority pursuant to the laws of the United States." *Id*

(*quoting Buckley*, 424 U.S. at 126).

Here, Panel members hold positions that are continuing in nature and are not "occasional

or temporary." Id. The Statute explicitly provides that Panel members are appointed to five-year

terms. 5 USC 7116(c)(3). Moreover, they "serve on an ongoing, rather than a 'temporary [or]

episodic [,] basis'; and their 'duties, salary, and means of appointment' are all specified" by the

Statute. *Lucia* 138 S.Ct. 2044 at 2051 (quoting *Freytag v. Commissioner*, 501 U.S. at 881

(1991)); 5 U.S.C. § 7116(c)(2), (3), and (4); *See also Ass'n of Am. R.R. v. U.D. Dep't of Transp*,

821 F.3d 19 (D.C. Cir 2016) (finding arbitrators appointed to resolve specific impasses are

principal officers).

Next, the powers which the Statute grants the Panel are significant. The Statute provides

the Panel with nearly unlimited "power … in carrying out [its] assigned functions." *Lucia* 138

S.Ct. at 2051. In particular, the Panel "may hold hearings, administer oaths, take testimony or

deposition, and issue subpoenas." 5 U.S.C. § 7119(c)(5)(B). The Supreme Court has found that

identical responsibilities demonstrate that an individual exercises significant authority even

though, unlike the Panel, they do not issue final decisions. *Freytag*, 501 U.S. at 881-82 (finding

that the ability to "take testimony, conduct trials, rule on the admissibility of evidence, and have the power to enforce compliance with discovery orders" demonstrated significant authority). If holding hearings, administering oaths, taking testimony, and issuing subpoenas supports the conclusion that a particular officer is a principal officer even if that officer does not issue final decisions, it is beyond cavil that adding the power to issue final decisions to that list, as is the case with the Panel, only solidifies the officer's status as a principal officer.

The Statute's grant of authority to the Panel is thus even more significant than the authority which the Court has found sufficient to establish status as an officer. By way of further example, the Statute provides the Panel with the authority to "take whatever action is necessary and not inconsistent with this chapter to resolve the impasse." 5 U.S.C. § 7119(c)(B)(iii). "Whatever action is necessary" is a very broad grant of power, even when set against the backstop of "this chapter." *Id.*  The fact that the Statute renders Panel orders final and binding only serves to seal the deal. 5 U.S.C. § 7119(c)(5)(C).

In *Lucia*, the Court found the authority of SEC administrative law judges ("ALJ") to be significant despite being far more limited than that of the Panel. *See Lucia* 138 S.Ct. 2044 (observing that ALJ orders can be reviewed by SEC); *See also Freytag* 501 U.S. at 882 (Special Tax Court judges exercise significant authority even though their decisions must be adopted by a regular judge). Consequently, the Panel is composed of officers of the United States because the Panel, by and through its members, exercises significant authority pursuant to the laws of the United States.

      2.  <u>Panel Members are Principal Officers.</u>

In distinguishing inferior from principal officers, the Supreme Court has indicated that the term "inferior officer" "connotes a relationship with some higher ranking officer or officers

27

below the President." *Edmond*, 520 U.S. at 661-62. While review of an individual's authority is important in determining their status as officers, authority "marks, not the line between principal and inferior officer for Appointments Clause purposes, but rather … the line between officer and nonofficer." *Id* at 662. Thus, whether an officer is inferior or principal is "a question of supervision." *Ass'n of Am. Railroads*, 821 F.3d at 39.

The Court of Appeals recently considered the line between inferior and principal officers in two cases involving issues similar to those here. First, in *Intercollegiate Broadcasting*, 684 F.3d 1332 (D.C. Cir 2012), the court found that Copyright Royalty Board Judges ("CRJs") were principal officers. Like the Panel, CRJs were empowered to resolve disputes between parties when voluntary negotiations failed and to impose binding terms on the disputing parties. *Id* at 1334. After confirming that CRJs were officers because they exercised significant authority through their ability to impose binding rates, the court went on to review the level of supervision the judges were subject to. *Id* at 1338-40.

The court noted that while both the Librarian of Congress and Registrar of Copyrights exercised some supervision over the CRJs, that supervision was limited. *Id*. The Librarian was responsible for approving the CRJ's regulations and issuing their ethical rules. *Id*. The Registrar issued opinions on copyright law that the CRJs were bound by and, in certain instances, reviewed and corrected legal errors in CRJ determinations. *Id*. Despite this oversight, the Court found that CRJs were left with "vast discretion" in performing their duties. *Id*. This low-level of supervision, combined with the general finality of CRJs' decisions and their inability to be removed by other officers, led the court to conclude that "CRJs as currently constituted are principal officers who must be appointed by the President and confirmed by the Senate, and that the structure of the Board therefore violates the Appointments Clause." *Id* at 134 (*citing*

*SoundExchange, Inc. v. Librarian of Congress*, 571 F.3d 1220, 1226–27 (D.C. Cir. 2009) (Kavanaugh, J., concurring)).

In a more recent case, the Court of Appeals found that arbitrators empowered by the Passenger Rail Investment and Improvement Act, Pub L. No, 110-432, to "resolve any impasse between Amtrak and FRA" were principal officers of the United States. *Ass'n of Am. Railroads*, 821 F.3d at 37-39. In determining that the arbitrator was a principal officer, the court observed that there was no clear statutory "procedure by which the arbitrator's decision [was] reviewable," and that the arbitrator's decisions were final and binding. Id at 37-39. As a result, the Court held that the arbitrators were principal officers because the statute did not provide "for the arbitrator's direction or supervision by principal officers." *Id*.

The Statute grants the Panel even more independence than the CRJs and arbitrators found to be principal officers. First, the Statute explicitly makes the Panel's decisions final and binding and provides no mechanism for their review.  *See* 5 U.S.C. § 7119(c)(5)(C); *Brewer*, 735 F.2d at 1497. Importantly, the Panel's orders are binding on both unions, such as Council 222, and agencies and other officers of the Executive Branch. The Constitution vests such authority only in principal officers. *Cf. Dep't of Transp. v. Ass'n of Am. R.R.*, 135 S. Ct. 1225, 1239 (2015) (Alito, J., concurring) ("[N]othing final should appear in the Federal Register unless a Presidential appointee has at least signed off on it.").

Next, while the Authority may have some narrow oversight of the Panel inasmuch as its rulings inform the Panel of the law, the Panel itself is in charge of determining the procedures and methods used for exercising its authority. 5 U.S.C. § 7119(c)(5). Moreover, neither the Authority nor any other principal officer has the power to remove or supervise the Panel. Instead,

like other principal officers, the Panel is only accountable to the President and may retain its own

staff. 5 U.S.C. § 7119(c).

The Panel exercises significant authority pursuant to the laws of the United States. It

exercises that authority with little to no supervision. Consequently, Panel members are principal

officers of the United States. The Appointments Clause requires that principal officers be

appointed "by and with the Advice and Consent of the Senate." Art. II, § 2, cl. 2. The Panel that

issued *HUD and Council 222* was not appointed by and with the advice and consent of the

Senate. Therefore, the Panel acted *ultra vires* and in violation of the Appointments Clause.

### IV. THE STATUTE DOES NOT AUTHORIZE THE PANEL TO TAKE A FINAL ACTION WITHOUT A PROPERLY APPOINTED PANEL OF A CHAIRMAN AND AT LEAST SIX MEMBERS.

1. <u>The Statute Requires that a Panel be Composed of a Chairman and At Least Six Other Members; the Panel that Issued *HUD and Council 222* Did Not Meet This Requirement.</u>

On or about July 26, 2017, the President appointed defendant Mark Carter to be

Chairman of the Panel. In addition, he appointed Andrea Fisher Newman, David R. Osborne,

Karen M. Czarnecki, Donald Todd, Jonathan Riches and F. Vincent Vernuccio to serve as

members. On January 10, 2019, the appointments of Donald Todd, Jonathan Riches, and F.

Vincent Vernuccio expired, leaving the Panel with a Chairman and three members.

On February 14, 2019, the Panel issued *HUD and Council 222*, whereby it imposed

ground rules for Council 222's and HUD's negotiations over a successor term collective

bargaining agreement. However, as of February 14, 2019, the President had not made any

appointments to fill the positions left vacant by former members Donald Todd, Jonathan Riches,

and F. Vincent Vernuccio. Consequently, by issuing *HUD and Council 222* without a Chairman

and at least six other members, and because nothing in the Statute empowers the Panel to take a

final action notwithstanding vacancies in its membership, the Panel acted in violation of 5 U.S.C.

§ 7119(c)(2) and exceeded its authority under the Statute.

2. <u>The Statute Specifically and Unambiguously Directs that a Panel Shall be Composed of At Least Seven, not Four members.</u>

"[The] first step when interpreting a statute is to look at the language of the statute."

*District of Columbia v. Place,* 892 A.2d 1108, 1111 (D.C. Cir. 2006). The primary and general

rule of statutory construction is that the intent of the lawmaker is to be found in the language that

he has used." *Id*. (internal citations and quotations omitted). It is axiomatic that the words of the

statute should be construed according to their ordinary sense and with the meaning commonly

attributed to them. *Id*. When interpreting the language of a statute, we must look to the plain

meaning if the words are clear and unambiguous. *Id*. In this case, Section 7119(c)(2) of the

Statute is explicit:

> The Panel **shall** be composed of a Chairman and **at least** six other members, who shall be appointed by the President, solely on the basis of fitness to perform the duties and functions involved, from among individuals who are familiar with Government operations and knowledgeable in labor-management relations.

*Id*. The intent of Congress is thus clear and unambiguous - the Statute mandates "[t]he Panel

shall be composed of a Chairman and at least six other members." *Id*. The use of the words

"shall" and "at least" is a clear indication of congressional intent to ensure that the Panel be

composed of a minimum of seven members. The language is plain and unequivocal; a fully

constituted Panel must consist of at least seven members and one of the members must be the

Chairman. This is the only way to give meaningful effect to Section 7119(c)(2) of the Statute.

*Duncan v. Walker*, 533 U.S. 167, 174 (2001) (declining to adopt a construction of the statute

[that] would render [a term] insignificant").

Another principle of statutory construction is "when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *U.S. v. Villanueva-Sotelo*, 515 F.3d 1234, 1248 (D.C. Cir. 2008) quoting *Russello v. U.S.* 464 U.S. 16, 23 (1983).  Applying this simple cannon of construction and comparing it to the parallel provision of the Statute addressing the composition of the Authority -- we observe that 5 U.S.C. § 7104(a)(d) provides:

> (a)The Federal Labor Relations Authority is composed of three members, not more than 2 of whom may be adherents of the same political party. No member shall engage in any other business or employment or hold another office or position in the Government of the United States except as otherwise provided by law.
> (d)A vacancy in the Authority shall not impair the right of the remaining members to exercise all of the powers of the Authority.

*Id*. Here, the Statute provides that the Authority shall be composed of three members. 5 U.S.C. §7104(a).  The Statute also expressly provides that: "[a] vacancy in the Authority shall not impair the right of the remaining members to exercise all of the powers of the Authority."  5 U.S.C. § 7104(d). Unlike the Panel, the Statute provides that the Authority is able to exercise all its powers even if it is lacking a full complement of members.  The Statute does not provide this permissive language with regards to the Panel. Indeed, it explicitly states "[t]he Panel shall be composed of a Chairman and at least six other members [.]" 5 U.S.C. § 7119(c)(2).

If Congress intended the Panel to be able to exercise its authority when a Panel member was vacant, it presumably would have said so expressly, as it did for the Authority at 5 U.S.C. § 7104(d).  Because Congress did not use the same language for the Panel it is "presumed that Congress act[ed] intentionally and purposely in the disparate [] exclusion" of any vacancy clause in the Statute pertaining to the Panel.  *U.S. v. Villanueva-Sotelo*, 515 F.3d at 1248.  Put another

way the presumption is that Congress did not intend for the Panel to exercise its full authority

with less than seven members.   This construction also makes sense because of the extraordinary

power that the Panel wields.  For example, if the Panel asserts jurisdiction it may "take whatever

action is necessary and not inconsistent with the [Statute] to resolve the impasse including

binding arbitration." *Am. Fed'n of Gov't Emps. v. FLRA*,  691 F.2d 565, 569 n. 26 (D.C. Cir.

1982) (internal citations omitted).   In sum, the language in the Statute plainly and

unambiguously directs that a properly constituted Panel must be composed of at least six

members and one chairman.

3.   The Panel Cannot Issue Final Actions Without a Properly Constituted Panel of Seven
     Members.

        The Panel was not properly constituted with at least seven members when it issued the

Decision and Order in *HUD and Council 222*.   This court's reviewing circuit has held that an

entity, like the FSIP, loses it authority to act when it fails to maintain a statutorily imposed

membership requirement.  *See Laurel Baye Healthcare of Lake Lanier, Inc. v. NLRB*, 564 F.3d

469, 475 (2009) ("The Board quorum provision…clarifies that three members of the board shall

at all times, constitute a quorum of the Board…..The Board's ability to legally transact business

exists only when three or more members are on the Board.") (internal citations omitted) ("*Laurel

Baye*").

        *Laurel Baye* addressed the lawfulness of the Board's effort to evade the quorum

requirement imposed on its own activities. *Id*. at 472. The Court of Appeals considered whether

plenary, final authority delegated to panels of the Board's own members could survive when the

Board did not maintain a three-member quorum. *Id*.  The NLRA provides that "the Board shall

consist of five instead of three members." *Laurel Baye Healthcare,* 564 F.3d at 470, citing 29

U.S.C. § 153(a).  Section 3(b) of the NLRA states, in relevant part, that:

> The Board is authorized to delegate to any group of three or more members any or
> all of the powers which it may itself exercise.... A vacancy in the Board shall not
> impair the right of the remaining members to exercise all of the powers of the
> Board, and three members of the Board shall, at all times, constitute a quorum of
> the Board, except that two members shall constitute a quorum of any group
> designated pursuant to the first sentence hereof.

29 U.S.C. § 153(b). *Id.*

 The Court of Appeals concluded that the delegation in question could not survive because it was precluded by the plain meaning of the Boards quorum provision that "three members of the Board shall at all times, constitute a quorum of the Board." *Laurel Baye Healthcare*, 564 F.3d at 475.

In *Laurel Bay Healthcare*, the petitioner argued that the Board lacked the power to issue a Decision and Order because it did not have a properly constituted three-member quorum. *Laurel Bay Healthcare*, 564 F.3d at 472. Like the NLRB's failure to maintain the membership requirement for a quorum of the Board in *Laurel Baye Healthcare*, the Panel here failed to maintain the unambiguously directed seven-member Panel requirement of the Statute.

Although as noted in Section V(B), *supra*, the Statute provides neither a vacancy clause nor a delegation clause for the Panel, the Court's analysis of the delegation clause in *Laurel Bay Healthcare* is controlling in this case.  Like the Board's quorum requirement of three members; the Panel's membership requirement of seven members must be satisfied at all times. Specifically, Section 7119(c)(2) of the Statute mandates "[t]he Panel shall be composed of a Chairman and at least six other members[.]" *Id*. Further, 29 U.S.C. § 153(b) mandates that "three members of the Board shall, at all times, constitute a quorum of the Board." *Id*.  That the Statute fails to contain a delegation clause underscores, conclusively, that the Panel cannot act without

seven members. Congress could have included a delegation clause, such as the one in the NLRA, if it had intended otherwise.

Congress's use of "shall" and "at least" in the Statute is a clear indication that a Panel must have a minimum of seven members at all times  Thus, like in *Laurel Bay Healthcare*, where the Court of Appeals found that the Board did not have the authority to issue its Decision and Order with only two members because it failed to maintain the requisite three members in the quorum, this Court should also find that the Panel did not have the authority to issue a Decision and Order in *HUD and Council 222* with less than the statutorily mandated seven member Panel. The Panel cannot circumvent the prerequisite number of members because this requirement must always be satisfied. Interpreting the Statute to require the Panel's power to be vested at all times in a group of at least seven Panel members is consonant with the unambiguous language in Section 7119(c)(2) of the Statute.

4. The Panel's Regulations at 5 C.F.R. §§ 2470.2(f) and (h) Cannot Allow the Panel to Act Without Seven Properly Appointed Members.

There can be no legitimate dispute that at the time the Panel issued its decision in *HUD and Council 222*, it did so without seven members. Defendants' argue that the Panel did not act in excess of its statutory authority when it defined the Panel quorum as a majority of its members.  Motion at 24.  Defendants' assert:

> [i]n the face of the Statute's silence, when the Authority promulgated its first regulations concerning the processing of cases for all FLRA components, it defined the Panel as the Federal Service Impasses Panel or a quorum thereof[.]…. [and later]….redefined quorum to mean a majority of the members of the Panel.

Motion at 24. (internal quotations and citations omitted). However, the Statute is not silent on the composition of a fully constituted Panel, and any reliance on 5 C.F.R. 2470.2(f) and (h) is misplaced because those regulations would apply only if the Panel is properly constituted.

5 C.F.R. 2470.2(f) and (h) provide:

> (f) The term Panel means the Federal Service Impasses Panel described in 5 U.S.C. § 7119(c) or a quorum thereof; and
> (h)The term quorum means a majority of the members of the Panel.

*Id*. The regulations' definitions are best read to require that the Panel maintain a membership of at least seven members before a majority of those members -- hence "thereof" -- can act as a quorum.  Thus, the Panel's definitions of "Panel" and "Quorum" in its regulations are inapplicable here because the Panel issued its decisions in *HUD and Council 222* -- without a properly constituted Panel of seven members.   The Agency's reliance on any argument that its regulations allow a four-member Panel to issue final actions without a properly constituted seven-member Panel would run counter to Congress's unambiguous direction that that "[t]he Panel shall be composed of a Chairman and at least six other members[.]." 5.U.S.C. § 7119(c)(2).

     "A cardinal principle of interpretation requires us to construe a statute so that no provision is rendered inoperative or superfluous, void or insignificant." *Laurel Baye Healthcare* 564 F.3d at 472. (quoting *Asiana Airline v. FAA*, 134 F.3d 393, 398 (D.C. Cir. 1998).  Any regulation allowing a Panel consisting of only four members, to exercise the authority of the Panel violates this principle of statutory interpretation by deliberately avoiding congress's clear mandate that "[t]he Panel shall be composed of a Chairman and at least six other members [.]" 5 U.S.C. § 7119 (c)(2).  Defendants, without any elaboration, argue that the Authority interpreted 5 U.S.C. § 7119 (c)(2) to define what constitutes a full complement of Panel members---not the number of Panel members necessary to take action. Motion at 6.  However, the use of the words "shall" and "at least" are present in the Statute to indicate that the Panel must be composed of a minimum of six members and a chairman. 5 U.S.C. § 7119(c)(2).   If Congress intended the

Panel to be able to exercise its authority with only four members, the existing statutory language would be an unlikely way to express that intention.  Any argument that the FSIP regulations establish such authority must fail.  "An agency construction of a statute cannot survive judicial review if a contested regulation reflects an action that exceeds the agency's authority." *AID Association, 321* F.3d at 1174.

Defendants' reliance on *Falcon Trading Group, Ltd. v. S.E.C.,* 102. F.3d 579 (D.C. Cir. 1996) ("*Falcon Trading*"), is misplaced. Defs. Mot. at 25. In *Falcon Trading* the Court of Appeals approved the SEC's promulgation of a new quorum rule, which stated that the SEC's quorum would equal the number of remaining commissioners if the number of remaining commissioners fell below the normal three-commissioner quorum. *Falcon Trading*, 102 F.3d at 582.  The Court of Appeals held that, "[i]f not otherwise constrained by statute, an agency sufficiently empowered by its enabling legislation may create its own quorum rule." *Id*. Further, the court noted that the SEC's quorum determination was lawful because it was "not countermanded elsewhere by Congress, as for example in an explicit statutory quorum provision." *Id*.

This case is unlike *Falcon Trading*.  Here, unlike the SEC in *Falcon Trading* --- where the SEC was sufficiently empowered by its enabling statute --- the Panel is not.  While the Panel also has an enabling statute that allows for the promulgations of regulations, it is nonetheless countermanded by Congress's unambiguous language in the Statute mandating the minimum number of members that constitute a Panel.  Specifically, as explained supra Section V(B), Section 7119 (c)(2) provides:

> The Panel **shall** be composed of a Chairman and **at least** six other members, who shall be appointed by the President, solely on the basis of fitness to perform the duties and functions involved, from among individuals who are familiar with

> Government operations and knowledgeable in labor-management relations.
> (emphasis added)

*Id*.

That statutory directive defines the minimum number of members needed to constitute a

Panel.  The Agency's reliance on any argument that its regulations permit the issuance of *HUD*

*and Council 222* with only four members on the Panel and not the statutorily mandated properly

constituted seven-member Panel is not supported by the text of the Statute.  Distinguishing its

ruling in *Falcon Trading*, the Court of Appeal's opinion in *Laurel Bay Healthcare* held that

"*Falcon Trading Group* offered no support to the Board in that case." *Laurel Bay Healthcare*,

564 F.3d at 475.   The Court of Appeals upheld SEC's power to determine how many members

constituted a quorum because Congress specifically bestowed the power on the Commission."

*Laurel Bay Healthcare*, 564 F.3d at 475. The Court of Appeals reasoned:

> the [SEC] was sufficiently empowered by its enabling legislation: the Board is not.
> Indeed, Congress has spelled out precision quorum provisions for the Board.  Congress
> provided that a quorum of the Board is three members.  The Board does not have three
> members.  It cannot act. Though section 3(b) gives the Board power to delegate its
> authority to a group of members, this authority is necessarily limited by the fact that the
> delegation authority allows the Board to grant its power only to a group of three or more
> members.  See 29 U.S.C. § 153(b).  The Board's delegation power is also obviously
> limited by the fact that the Board quorum provision establishes that the power of the
> Board to act exists when the Board consists of three members.

*Laurel Baye Healthcare,* 564 F3d at 475.  Thus, the Board lacked the power to issue a Decision

and Order because it did not have a properly constituted three-member quorum. *Laurel Baye*

*Healthcare*, 564 F.3d at 472.

There can be no legitimate dispute that at the time the Panel issued its decision in *HUD*

*and Council 222*, it did so without seven members.  Any reliance on 5 C.F.R. §§ 2470.2(f) and

(h) is misplaced because those provisions would apply if there had been a properly constituted

Panel and three members were not present for the issuance of the decision in *HUD and Council*

*222.* The Agency's reliance on any argument that its regulation allows a Panel with less than seven members to transact final actions would run counter to Congress's unambiguous expressed language in the Statute that a Panel shall consist of at least six members and a chairman, 5 U.S.C. § 7119 (c)(2); and counter to the holding in *Laurel Bay Healthcare*. The FSIP, cannot contravene the unambiguous and clear commands of Congress. Any argument that the Panel can exercise its authority without a properly constituted seven-member panel pursuant to FSIP regulations is plainly inconsistent with the plain language of the Statute.

## CONCLUSION

For the foregoing reasons, Council 222 respectfully requests that the Court deny Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint and grant Plaintiff's Motion for Summary Judgment. Accordingly, Plaintiff requests that the Court vacate the Panel's decision in HUD and Council 222 in its entirety and declare *HUD and Council 222* to be void and *ultra vires* in violation of the Statute and Appointments Clause to the United States Constitution. Plaintiff further requests that the Court enjoin the Panel from exercising its powers and declare that the Panel may not exercise its powers until it is composed of a Chairman and at least six other members that have been appointed "by and with the Advice and Consent of the Senate," as required by the Appointments Clause to the United States Constitution.

Respectfully Submitted,

 /s/ Andres M. Grajales
Andres M. Grajales
Deputy General Counsel
D.C. Bar No. 476894
AFGE, Office of the General Counsel
80 F Street, N.W.
Washington, D.C. 20001
Tel.:    (202) 639-6426
Fax.:    (202) 379-2928
Email: Grajaa@afge.org

/s/ Mark L. Vinson
Mark L. Vinson
Assistant General Counsel
D.C. Bar No. 478175
AFGE, Office of the General Counsel
80 F Street, N.W.
Washington, D.C. 20001
Tel.:     (202) 639-6426
Fax.:    (202) 379-2928
Email: Vinsom@afge.org

 /s/ Rushab Sanghvi
Rushab Sanghvi
Associate General Counsel
D.C. Bar No. 1012814
AFGE, Office of the General Counsel
80 F Street, N.W.
Washington, D.C. 20001
Tel.:     (202) 639-6426
Fax.:    (202) 379-2928
Email: Sanghr@afge.org


Attorneys for Council 222

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of November 2019, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system.  I also certify that the foregoing document is being served on counsel of record and that service will be accomplished by the CM/ECF system.

/s/ Rushab Sanghvi
Rushab Sanghvi
Associate General Counsel
D.C. Bar No. 1012814
AFGE, Office of the General
Counsel
80 F Street, N.W.
Washington, D.C. 20001
Tel.:    (202) 639-6424
Fax.:    (202) 379-2928
Email: sanghr@afge.org

41