**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, National Council of HUD Locals Council 222, AFL-CIO, 451 7th St. SW, Washington D.C. 20410;<br>Plaintiff,<br>v.<br>FEDERAL SERVICE IMPASSES PANEL, 1400 K St. NW, Washington, D.C. 20424;<br>and<br>MARK ANTHONY CARTER, In his official capacity as Chairman of the Federal Service Impasses Panel, 1400 K St. NW, Washington, D.C. 20424;<br>and<br>FEDERAL LABOR RELATIONS AUTHORITY, 1400 K St., NW, Washington, D.C. 20424;<br>Defendants. | Civil Action No. 1:19-cv-01934(RJL) |
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, AFL-CIO, 80 F St. NW, Washington D.C. 20001;<br>Plaintiff,<br>v.<br>FEDERAL SERVICE IMPASSES PANEL, 1400 K St. NW, Washington, D.C. 20424;<br>and<br>MARK ANTHONY CARTER, In his official capacity as Chairman of the Federal Service Impasses Panel, 1400 K St. NW, Washington, D.C. 20424;<br>and<br>FEDERAL LABOR RELATIONS AUTHORITY, 1400 K St., NW, Washington, D.C. 20424;<br>Defendants. | Civil Action No. 1:19-cv-01976(RJL) |

## STATEMENT OF POINTS OF LAW AND AUTHORITIES
## IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS

NOAH PETERS
Solicitor
REBECCA J. OSBORNE
Deputy Solicitor

Federal Labor Relations Authority
1400 K Street, N.W.
Washington, D.C. 20424
(202) 218-7999

**TABLE OF AUTHORITIES**

**Cases**

*Aircraft & Diesel Equip. Corp. v. Hirsch*, 331 U.S. 752 (1947) .................................................. 4

*Am. Fed'n of Gov't Emps. v. Sec'y of Air Force*, 716 F.3d 633 (D.C. Cir. 2013) ......................... 3

*Am. Fed'n of Gov't Emps. v. Trump*, 929 F.3d 748 (D.C. Cir. 2019) .................................... 7, 8, 9

*Bank of Louisiana v. Fed. Deposit Ins. Corp.*, 919 F.3d 916 (5th Cir. 2019) ................................ 5

*Bebo v. S.E.C.*, 799 F.3d 765 (7th Cir. 2015) ............................................................................... 5

*Bennett v. U.S. Sec. & Exch. Comm'n*, 844 F.3d 174 (4th Cir. 2016) ........................................... 5

*Council of Prison Locals v. Brewer*, 735 F.2d 1497 (D.C. Cir. 1984) ....................... 1, 2, 3, 4, 5, 6

*Dep't of Def. Domestic Dependent Elementary & Secondary Sch. Fort Buchanan, P.R.* 71 FLRA 127 (2019) ............................................................................................................................... 6

*Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012) ............................................................................. 1

*F.T.C. v. Flotill Prod., Inc.*, 389 U.S. 179 (1967) ....................................................................... 11

*Falcon Trading Grp., Ltd. v. S.E.C.*, 102 F.3d 579 (D.C. Cir. 1996), ................................ 9, 10, 12

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010) ............................ 4

*Frischer & Co. v. Bakelite Corp.*, 39 F.2d 247 (C.C.P.A. 1930) ................................................ 11

*Hill v. Sec. & Exch. Comm'n*, 825 F.3d 1236 (11th Cir. 2016). .................................................... 5

*Jarkesy v. S.E.C.*, 803 F.3d 9 (D.C. Cir. 2015) ........................................................................ 1, 5

*Laurel Baye Healthcare of Lake Lanier, Inc. v. N.L.R.B.*, 564 F.3d 469 (D.C. Cir. 2009) ......... 12

*Leedom v. Kyne*, 358 U.S. 184 (1958) .......................................................................................... 9

*Mitchell v. Christopher*, 996 F.2d 375 (D.C. Cir. 1993) ............................................................... 9

*Nat'l Air Traffic Controllers Ass'n AFL-CIO v. FSIP*, 437 F.3d 1256 (D.C. Cir. 2006) .............. 3

*Nevada National Guard*, 7 FLRA 245 (1981) .............................................................................. 8

*Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445 (D.C. Cir. 2009) ............................ 9

*Patent Office Prof'l Ass'n v. FLRA*, 26 F.3d 1148 (D.C. Cir. 1994) ............................................ 6

*Spagnola v. Mathis*, 859 F.2d 223 (D.C. Cir. 1988) (en banc) (per curiam) ................................ 7

*Steadman v. Governor, U.S. Soldiers' & Airmen's Home*, 918 F.2d 963 (D.C. Cir. 1990) ........... 4

*Thunder Basin Coal Co. v. Reich*. 510 U.S. 200 (1994) ......................................................... 1, 5, 9

*Tilton v. Sec. & Exch. Comm'n*, 824 F.3d 276 (2d Cir. 2016) ...................................................... 5

*Turgeon v. FLRA*, 677 F.2d 937 (D.C. Cir. 1982) ...................................................................... 12

*U.S. Dep't of Def. Educ. Activity, Arlington, Va.*, 56 FLRA 119 (2000) ...................................... 8

*Veterans Admin. Washington, D.C.*, 26 FLRA 264 (1987) ....................................................... 7, 8

i

**Statutes**

5 U.S.C. § 7105.................................................................................................... 8, 9

5 U.S.C. § 7119............................................................................................. 7, 10, 11

5 U.S.C. § 7134......................................................................................................... 10

5 U.S.C. § 7123........................................................................................................... 1

15 U.S.C. § 78d......................................................................................................... 10

15 U.S.C. § 78w......................................................................................................... 10

16 U.S.C. § 792......................................................................................................... 11

19 U.S.C. § 1330....................................................................................................... 11

29 U.S.C. § 153......................................................................................................... 11

47 U.S.C. § 154......................................................................................................... 11

**Other Authorities**

H.R.Doc. No. 341, 95th Cong., 2d Sess. 7 (1978).................................................... 2

H.R.Rep. No. 1403, 95th Cong., 2d Sess. 54 (1978) ............................................... 2

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ........................................................... 12, 13

**Regulations**

5 C.F.R. § 2470.2..................................................................................................... 10

5 C.F.R. § 2471.6(a)................................................................................................... 7

Did Congress intend to allow for direct judicial review of orders of the Federal Service
Impasses Panel (the "Panel" or "FSIP")?  For over 30 years, the answer to this question has been
settled: "No."

"[C]ourts determine that Congress intended that a litigant proceed exclusively through a
statutory scheme of administrative and judicial review when (i) such intent is 'fairly discernible
in the statutory scheme,' and (ii) the litigant's claims are 'of the type Congress intended to be
reviewed within [the] statutory structure.'"  *Jarkesy v. S.E.C.*, 803 F.3d 9, 15 (D.C. Cir. 2015)
(quoting *Thunder Basin Coal Co. v. Reich*. 510 U.S. 200, 207, 212 (1994)).  This involves
examining the statute's "text, structure, and purpose." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 10
(2012).  "If a special statutory review scheme exists . . . it is ordinarily supposed that Congress
intended that procedure to be the exclusive means of obtaining judicial review in those cases to
which it applies."  *Jarkesy*, 803 F.3d at 15 (internal formatting omitted).

In *Council of Prison Locals v. Brewer*, 735 F.2d 1497 (D.C. Cir. 1984), the D.C. Circuit
undertook this inquiry in the context of review of Panel orders.  Based on its careful analysis of
the text and history of the Federal Service Labor-Management Relations Statute, 5 U.S.C.
§§ 7101-7135 (the "Statute"), the Court found that Congress intended that the unfair labor
practice procedure be the exclusive means for challenging Panel decisions.  Indeed, the question
was not close: "A clearer suggestion that Congress intended no appeal from Panel decisions
would be difficult to imagine." *Brewer*, 735 F.2d at 1499.  *Brewer* noted that "[w]hile [5 U.S.C.
§] 7123 specifically provides for judicial review of orders by the *Authority*, there is no provision
for such review of *Panel* orders, and Panel orders are not appealable even to the Authority." *Id*.
In addition, *Brewer* noted that the legislative history of the Statute showed conclusively that
Congress did not intend for direct judicial review of Panel orders.  "First, the Administration's

1

proposed bill provided for no review of Panel orders; in fact, section 305 of the proposed bill would have rendered '[t]he decisions of the Authority on any matter within its jurisdiction . . . . final and not subject to judicial review.'" *Id.* (quoting H.R.Doc. No. 341, 95th Cong., 2d Sess. 7 (1978).) "The Senate bill made all Panel orders appealable to the Authority, but restricted judicial review of Authority decisions to include appeals only from unfair labor practice proceedings, except when constitutional questions were raised." *Id.* at 1500. "Thus, the Administration's proposed bill and the Senate bill both envisioned that Panel orders would generally not be subject to direct judicial review." *Id.*

The House bill reported out of committee contained no provision for direct review of Panel decisions by either the Authority or the courts. The House bill "is of primary importance, because its provision regarding the Impasses Panel was incorporated verbatim into the final Act." *Id.* The Committee Report accompanying the House bill stated its intention regarding the reviewability with unusual clarity:

> "Notice of any final action of the Panel must be promptly served upon the parties, and the action is final and binding upon the parties during the term of the agreement, unless the parties agree otherwise. **Final action of the Panel under this section is not subject to appeal, and failure to comply with any final action ordered by the Panel constitutes an unfair labor practice . . . . .**" *Id.* (quoting H.R.Rep. No. 1403, 95th Cong., 2d Sess. 54 (1978)) (emphasis added.)

*Brewer*'s conclusion that direct judicial review of Panel orders is precluded "does not mean that absolutely no judicial review of Panel orders is available. As the House report . . . noted, 'failure to comply with any final action ordered by the Panel constitutes an unfair labor practice.'" *Id.* at 1500 (quoting H.R.Rep. No. 1403, 95th Cong., 2d Sess. 54 (1978)). "Once the Authority issues findings of fact and an order in an unfair labor practice proceeding, the parties may seek review in the courts of appeals. In such an appeal, the courts may review the validity of the Panel order in question." *Id.* (internal citations omitted.) "In light of our examination of the

statute and its legislative history, we agree with the district court that this specific review procedure, established by the statute, forecloses the assumption of general federal question or mandamus jurisdiction." *Id.*; *accord Nat'l Air Traffic Controllers Ass'n AFL-CIO v. FSIP*, 437 F.3d 1256, 1265 (D.C. Cir. 2006) ("*NATCA 2006*") ("[I]f the Unions' interpretation of the disputed statutory provisions is correct, then it is clear that they have viable unfair labor practice charges that can be raised with and addressed by the FLRA. Thus, the Unions are not without possible redress for the alleged violations of their statutory rights.")

The D.C. Circuit held that the unfair labor practice procedure, while perhaps less than ideal, affords litigants meaningful review of FSIP decisions. *Brewer* "recognize[d] . . . the shortcomings of the unfair labor practices proceeding as the exclusive means for assuring judicial review of Panel orders," including the potential adverse consequences for a union of "defy[ing] an existing labor contract—even if the relevant contract term were imposed by a Panel order." *Brewer*, 735 F.2d at 1502 n. 9. Indeed, *Brewer* noted that this scheme might not permit any sort of challenge to Panel orders "where an employee benefit rather than a burden is at issue." *Id.* But these shortcomings did not affect the Court's ultimate holding: "Perhaps Congress wished to pay this price in return for swift and final Panel authority. In any event, our decision today adheres to the language and legislative history of the Act." *Id.*

*Brewer* is consistent with D.C. Circuit and Supreme Court case law holding that the Statute's "exclusion of certain parties from judicial review is not an invitation to those parties to sue under other statutes but a manifestation of a considered congressional judgment that they should not have statutory entitlement to review." *Am. Fed'n of Gov't Emps. v. Sec'y of Air Force*, 716 F.3d 633, 638 (D.C. Cir. 2013) ("*AFGE 2013*") (internal formatting omitted).

The fact that the Union brings a constitutional claim does not change the analysis. With

the Statute, "Congress passed an enormously complicated and subtle scheme to govern employee relations in the federal sector, including the authorization of collective bargaining." *Steadman v. Governor, U.S. Soldiers' & Airmen's Home*, 918 F.2d 963, 967 (D.C. Cir. 1990). "It follows, then, that federal employees may not circumvent that structure even if their claim is based as well on the Constitution." *Id*. "As the Supreme Court has instructed us, 'the very fact that constitutional issues are put forward constitutes a strong reason for not allowing [a] suit either to anticipate or to take the place of [the agency's] final performance of its function.'" *Id*. (quoting *Aircraft & Diesel Equip. Corp. v. Hirsch*, 331 U.S. 752, 774 (1947).)

Opposing this authority, the Union relies almost exclusively on the Supreme Court's holding in *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 490–91 (2010). But that decision, which considered the constitutionality of a body established by Sarbanes-Oxley Act of 2002, 116 Stat. 745, is inapposite. The plaintiffs' challenge in that case was prompted by an "uncomplimentary inspection report" issued by the Public Company Accounting Oversight Board that "produced no sanction" and was not subject to administrative or judicial review of any sort. *Free Enterprise Fund*, 561 U.S. at 490. Review of inspection reports was not channeled by Congress into any statutory review scheme comparable to the unfair labor practice procedure available to the Union in this case. Instead, the *Free Enterprise Fund* plaintiffs would have had to "select and challenge a Board rule at random" in order to gain any sort of hearing on their Appointments Clause challenge. *Id*. The Supreme Court deemed this to be "an odd procedure for Congress to choose." *Id*. Here, by contrast, Congress made its intent crystal-clear that the exclusive means of challenging Panel orders is through the Statute's unfair labor practice procedure. *Brewer*, 735 F.2d at 1500.

Whatever anomalies that the Supreme Court may have perceived in *Free Enterprise Fund*

in requiring the plaintiff in that case to potentially incur a sanction in order to obtain judicial review, we know that Congress specifically contemplated and approved that possibility in the context of the Panel. *See Brewer*, 735 F.2d at 1502 n. 9 (recognizing "the shortcomings of the unfair labor practices proceeding as the exclusive means for assuring judicial review of Panel orders"; noting that "[t]he decision to defy an existing labor contract—even if the relevant contract term were imposed by a Panel order—is not to be taken lightly" and could "subject the union to prolonged administrative proceedings, followed perhaps by a cease and desist order, before judicial review could be available.")  And in *Thunder Basin* itself, the plaintiff-mine operator was required to incur a citation and civil penalties which "unquestionably may become onerous" in order to raise its constitutional and statutory challenges. *Thunder Basin*, 510 U.S. at 218, 204 & n. 4.  The Supreme Court nonetheless required the mine operator to take this risk, disallowing a pre-enforcement challenge in federal district court while noting that "the Secretary's penalty assessments become final and payable only after full review by both the Commission and the appropriate court of appeals." *Id*. at 218.

Contrary to the Union's contention, *Free Enterprise Fund* does not throw *Brewer*'s conclusion into doubt.  The D.C. Circuit and other appellate courts have routinely distinguished *Free Enterprise Fund* in holding that statutes that establish schemes for administrative review preclude federal court jurisdiction outside of those review schemes, even with respect to Appointments Clause and other constitutional challenges. *See Jarkesy*, 803 F.3d at 19-20; *Tilton v. Sec. & Exch. Comm'n*, 824 F.3d 276, 288–89 (2d Cir. 2016); *Bennett v. U.S. Sec. & Exch. Comm'n*, 844 F.3d 174, 182 (4th Cir. 2016); *Bank of Louisiana v. Fed. Deposit Ins. Corp.*, 919 F.3d 916, 926–27 (5th Cir. 2019); *Bebo v. S.E.C.*, 799 F.3d 765, 769–75 (7th Cir. 2015); *Hill v. Sec. & Exch. Comm'n*, 825 F.3d 1236, 1243 (11th Cir. 2016).

Like the plaintiffs in those cases, the Union here attempts to challenge an action that Congress expressly channeled into an alternative statutory review scheme: a final order of the Panel. The Union asks this Court to "[v]acat[e] the Panel's decision in *HUD and Council 222* in its entirety"; "[d]eclar[e] the Panel's decision in *HUD and Council 222* to be *ultra vires* and void, and in violation of the [APA]"; "[d]eclar[e] that the Panel may not exercise its powers unless it is composed of a Chairman and at least six other members"; "[d]eclar[e] the Panel's assertion of jurisdiction over the matters at issue in *HUD and Council 222* void in violation of the Appointments Clause of the United States Constitution"; and "[d]eclar[e] that the Panel may not exercise its powers absent members who have been appointed 'by and with the Advice and Consent of the Senate'. . . ." (Second Amended Complaint ["SAC"] at p. 12).  The Statute requires a party to channel such challenges to the Panel's jurisdiction through the unfair labor practice procedure.  *Brewer*, 735 F.2d at 1499.

Contrary to the Union's contention (Union Br. at 17-18), the relief it seeks (invalidation of the Panel's decision in *HUD and Council 222*) is exactly the sort of relief that the Authority routinely grants in reviewing Panel-imposed contractual terms in the unfair labor practice context. *See, e.g., Dep't of Def. Domestic Dependent Elementary & Secondary Sch. Fort Buchanan, P.R.* 71 FLRA 127, 134 (2019) ("*Fort Buchanan*").  In *Fort Buchanan*, for example, an agency obtained Authority review of Panel-imposed contractual terms by refusing to implement them, triggering an unfair labor practice charge and ultimately a decision from the Authority vacating the Panel-imposed terms.  *Id*. at 129, 134; *see also Patent Office Prof'l Ass'n v. FLRA*, 26 F.3d 1148, 1153 (D.C. Cir. 1994) (rejecting enforcement of contract provisions imposed by an interest arbitrator acting on delegated authority from the Panel, where the arbitrator, and, consequently, the Panel lacked jurisdiction to impose those provisions).  As

Defendants explained in their initial brief, there are several ways for the Union to obtain Authority, and ultimately, judicial, review of the Panel's jurisdiction through the unfair labor practice scheme: it could refuse to comply with the Panel's order, or it could have refused to participate in proceedings before the Panel in the first place. (Opening Br. at pp. 17-18).

Even if these mechanisms were not available, however, the law is settled that "[t]he Statute can preclude a claim from being brought in a district court even if it forecloses the claim from administrative review and provides no other way to bring the claim." *Am. Fed'n of Gov't Emps. v. Trump*, 929 F.3d 748, 756 (D.C. Cir. 2019) ("*AFGE 2019*").  That is because "it is the comprehensiveness of the statutory scheme involved, not the 'adequacy' of specific remedies thereunder, that counsels judicial abstention."  *Spagnola v. Mathis*, 859 F.2d 223, 227 (D.C. Cir. 1988) (en banc) (per curiam).

The Union contends that its claim is "wholly collateral" to the statutory scheme because it "is not contesting the legality of the results reached by the Panel below" but the Panel's "authority to reach any result at all."  (Union Br. at 10.)  But a core function of the Panel is to determine whether it has jurisdiction to hear disputes; thus, the Panel routinely considers whether it has the "authority to reach any result at all." Pursuant to the Statute, the Panel must "promptly investigate any impasse presented to it," 5 U.S.C. § 7119(c)(5)(A), and then "either (1) [d]ecline to assert jurisdiction in the event that it finds that no impasse exists or that there is other good cause for not asserting jurisdiction" or "(2) [a]ssert jurisdiction," 5 C.F.R. § 2471.6(a); *see also* Exhibit A to Defendants' Summary Judgment Motion (9-page letter from the Union to the Panel asserting that it lacked jurisdiction).  And the Authority routinely entertains claims that the Panel lacked jurisdiction to impose certain contractual terms on the parties in unfair labor practice proceedings. *See Veterans Admin. Washington, D.C.*, 26 FLRA 264, 268-269 (1987) (reviewing

Panel decision to determine whether the Panel "exceed[ed] its authority in asserting jurisdiction" and whether its order was "contrary to law"); *U.S. Dep't of Def. Educ. Activity, Arlington, Va.*, 56 FLRA 119, 120, 122 (2000) (sustaining agency's objection "that enforcing the Panel's Order would violate the Appropriations Clause, the doctrine of separation of powers and the doctrine of sovereign immunity contained in the United States Constitution."); *Nevada National Guard*, 7 FLRA 245, 259–61 (1981) (considering at length an agency's contention that a Panel order "which has the effect of overriding the military determination concerning technician attire" was consistent with Article I, Section 8, clauses 15 and 16 of the U.S. Constitution.)

Finally, the Union contends that consideration of its statutory and constitutional claims are beyond the Authority's expertise.  As Defendants pointed out in their initial brief, that is simply not so. The Union claims that "the Panel took an action inconsistent with clear and mandatory requirements set by the Statute."  (SAC ¶ 48.)  But "[t]he FLRA has primary responsibility for administering and interpreting the Statute, and it serves the special function of applying the general provisions of the Statute to the complexities of federal labor relations." *AFGE 2019*, 929 F.3d at 760 (internal quotation marks and citations omitted).  "In doing so, the FLRA regularly construes the Statute and adjudicates whether governmental actions violate the Statute."  *Id*. (internal quotation marks omitted).  Indeed, the Statute states that "[t]he Authority shall provide leadership in establishing policies and guidance relating to matters under [the Statute], and, except as otherwise provided, shall be responsible for carrying out the purpose of [the Statute]."  5 U.S.C. § 7105(a)(1).  In its role as arbiter of the Statute, the Authority frequently passes upon both constitutional questions and questions regarding the Panel's jurisdiction in unfair labor practice proceedings and review of grievance arbitration awards. *See*, *e.g.*, *Veterans Admin. Washington, D.C.*, 26 FLRA at 268-69 (reviewing Panel decision to

determine whether the Panel "exceed[ed] its authority in asserting jurisdiction" and whether its order was "contrary to law");

Moreover, an agency's relative level of expertise concerning particular claims is not dispositive.  In *Thunder Basin*, for example, the plaintiff-mine operator's suit involved claims that a union's designation of certain representations "violates the principles of collective bargaining under the NLRA and petitioner's right to exclude nonemployee union organizers from its property, , and that adjudication of petitioner's claims through the statutory-review provisions will violate due process by depriving petitioner of meaningful review." *Thunder Basin*, 510 U.S. at 213-214 (internal citations and quotation marks omitted).  The Federal Mine Safety and Health Commission, the administrative agency that would otherwise review the plaintiff's challenge, had "no particular expertise in construing statutes other than the Mine Act." *Id*. at 214.  The Supreme Court nonetheless concluded that "agency expertise could be brought to bear on the statutory questions presented here." *Id*.  In sharp contrast, the Union's challenge in this case requires interpreting the very Statute which the Authority is charged with administering and enforcing. *See* 5 U.S.C. § 7105(a)(1).  This is not one of the "precious few cases" where the Court's review would not be "aided by the agency's statutory construction." *AFGE 2019*, 929 F.3d at 761 (quoting *Mitchell v. Christopher*, 996 F.2d 375, 379 (D.C. Cir. 1993).)

The Union attempts to get around the Statute's clear intent to bar direct review of FSIP decisions by invoking the extremely narrow *Leedom v. Kyne*, 358 U.S. 184 (1958) exception. "[A] *Leedom v. Kyne* claim is essentially a Hail Mary pass" that "rarely succeeds." *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009).  So it is in this case.

In *Falcon Trading Grp., Ltd. v. S.E.C.*, 102 F.3d 579, 582 (D.C. Cir. 1996), the D.C. Circuit considered a challenge to the ability of the Securities & Exchange Commission ("SEC")

to act where it lacks a full complement of five members. The language in the Securities Exchange Act of 1934 that created the SEC is nearly identical to the language in the Statute creating the Panel: "There is hereby established a Securities and Exchange Commission . . . to be composed of five commissioners to be appointed by the President by and with the advice and consent of the Senate." 15 U.S.C. § 78d. The language creating the Panel provides similarly that "[t]he Panel shall be composed of a Chairman and at least six other members, who shall be appointed by the President, solely on the basis of fitness to perform the duties and functions involved, from among individuals who are familiar with Government operations and knowledgeable in labor-management relations." 5 U.S.C. § 7119.

The language that authorized the SEC to create a quorum rule allowing less than a full five-member SEC to take action was: "The Commission . . . shall . . . have power to make such rules and regulations as may be necessary or appropriate to implement the provisions of this chapter for which [it is] responsible or for the execution of the functions vested in [it] by this chapter." 15 U.S.C. § 78w(a)(1). In *Falcon Trading Group*, 102 F.3d at 582, the D.C. Circuit identified this provision as "sufficiently empower[ing]" the SEC to "create its own quorum requirement." The statutory language allowing FSIP to promulgate its own quorum rule is nearly identical: "[T]he Panel shall . . . prescribe rules and regulations to carry out the provisions of this chapter applicable to [it]." 5 U.S.C. § 7134.

The Panel, acting pursuant to § 7134 of the Statute, has promulgated regulations permitting the Panel's powers to be exercised by "a quorum thereof," defined as "a majority of the members of the Panel." 5 C.F.R. § 2470.2(f), (h). This "majority of the members" requirement is exactly what the rule would be in the absence of a regulation: "The almost universally accepted common-law rule is . . . in the absence of a contrary statutory provision, a

majority of a quorum constituted of a simple majority of a collective body is empowered to act for the body." *F.T.C. v. Flotill Prod., Inc.*, 389 U.S. 179, 183 (1967); *accord Frischer & Co. v. Bakelite Corp.*, 39 F.2d 247, 254 (C.C.P.A. 1930) ("Where a governmental body has been created by law, consisting of more than one person, whether legislative, judicial, or administrative, unless the number necessary to constitute a quorum is fixed by law, it has usually been held that a majority of the persons constituting such body shall constitute such quorum and may transact the business for which it is organized.")

 The language of the National Labor Relations Act ("NLRA"), which specifically prescribes what constitutes a quorum of the National Labor Relations Board ("Board"), is quite different from 5 U.S.C. § 7119.  In addition to stating that "the Board shall consist of five instead of three members," 29 U.S.C. § 153(a), it states that "three members of the Board shall, at all times, constitute a quorum of the Board." 29 U.S.C. § 153(b).  It is very common for Congress to specify quorum requirements by statute when it creates administrative agencies and boards.  *See*, *e.g.*, 47 U.S.C. § 154(a) & (h) ("The Federal Communications Commission . . . shall be composed of five commissioners appointed by the President, by and with the advice and consent of the Senate . . . .Three members of the Commission shall constitute a quorum thereof."); 16 U.S.C. § 792 ("A commission is created and established to be known as the Federal Power Commission  . . . .which shall be composed of five commissioners who shall be appointed by the President, by and with the advice and consent of the Senate. . . Three members of the commission shall constitute a quorum for the transaction of business . . . ."); 19 U.S.C. § 1330 (a), (c)(6) ("The United States International Trade Commission . . . shall be composed of six commissioners who shall be appointed by the President, by and with the advice and consent of the Senate . . . . A majority of the commissioners in office shall constitute a quorum, but the

Commission may function notwithstanding vacancies.")

As the above examples show, Congress knows how to create specific quorum requirements for agencies and boards when it wishes to do so.  Indeed, it did so in the NLRA, the law upon which the Statute was patterned.  *Turgeon v. FLRA*, 677 F.2d 937, 939–40 (D.C. Cir. 1982).  But Congress did not create a specific quorum requirement for the Panel.  The Panel thus had the power to enact regulations stating that a majority of Panel members constitute a quorum.  The Panel's quorum determination is lawful because it is "not countermanded elsewhere by Congress, as for example in an explicit statutory quorum provision."  *Falcon Trading Group*, 102 F.3d at 582.

*Laurel Baye Healthcare of Lake Lanier, Inc. v. N.L.R.B.*, 564 F.3d 469 (D.C. Cir. 2009), which involved the NLRA's specific quorum requirement for the Board, is therefore not on point.  Indeed, *Laurel Baye Healthcare* took pains to distinguish the specific quorum requirement there at issue from the situation in *Falcon Trading Group*, and this case, where the statute creating a board or commission does not contain an explicit statutory quorum requirement: "This highlights the fundamental problem with the Board's reasoning. The [SEC] was sufficiently empowered by its enabling legislation; the Board is not. Indeed, Congress has spelled out precise quorum provisions for the Board." *Laurel Baye Healthcare*, 564 F.3d at 475.

The Union cannot obtain *Leedom* jurisdiction, which is premised on violation of a "specific and unambiguous statutory directive," *NATCA 2006*, 437 F.3d at 1264 (internal quotation marks omitted), based on provisions of the Statute that allow the Panel to define for itself what constitutes a quorum.

Defendants therefore respectfully ask this Court to dismiss the Complaints in these matters under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court grant their

motion to dismiss the Complaints pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack

of jurisdiction.

Respectfully submitted,

/s/ Noah Peters
NOAH PETERS (#1023748)
Solicitor

REBECCA J. OSBORNE
Deputy Solicitor
Federal Labor Relations Authority
1400 K Street, NW
Washington, D.C. 20424
Telephone: (202) 218-7999
Facsimile: (202) 343-1007
Email: npeters@flra.gov

Dated: November 8, 2019

13

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of November 2019, I electronically filed the

foregoing with the Clerk of the Court for the United States District Court for the District of

Columbia by using the CM/ECF system.  I also certify that the foregoing document is being

served on counsel of record and that service will be accomplished by the CM/ECF system.


/s/ Noah Peters
NOAH PETERS
Solicitor
Federal Labor Relations Authority
1400 K Street, NW
Washington, DC  20424
Telephone: (202) 218-7908
Email: npeters@flra.gov