**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, NATIONAL COUNCIL OF HUD LOCALS COUNCIL 222, AFL-CIO, | |
| Plaintiff, | |
| v. | Civil Action No. 19-cv-01934 (RJL) |
| FEDERAL SERVICE IMPASSES PANEL, *ET AL.*, | |
| Defendants, | |
| U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, 451 7th Street, S.W. Washington, D.C. 20410 | |
| Intervenor. | |

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF THE U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT'S MOTION TO INTERVENE UNDER RULE 24(a) OR 24(b)**

On February 14, 2019, the Federal Service Impasses Panel ("Panel") issued a decision and order that resolved a collective-bargaining impasse between the U.S. Department of Housing and Urban Development ("HUD") and the American Federation of Government Employees, National Council of HUD Locals Council 222, AFL-CIO ("AFGE-HUD"), the exclusive representative of a bargaining unit of HUD employees. *Department of Housing and Urban Development and AFGE, Council of HUD Locals 222*, 18 FSIP 075 (Feb. 14, 2019) ("*HUD and AFGE-HUD*"). AFGE-HUD seeks to undo that decision, and thereby set aside the ground rules approved for the parties' bargaining, through this federal action against the Panel, Mark Anthony

1

Carter in his official capacity as Chairman of the Panel, and the Federal Labor Relations

Authority ("Authority") (collectively, "Defendants"). Am. Compl., ECF No. 14. AFGE-HUD

alleges, in short, that the Panel decision is void because it was issued by a Panel whose

composition was statutorily and constitutionally infirm.

HUD was not named as a defendant by AFGE-HUD, and thus is not presently a party to

this action. But its interests in the underlying negotiation process, including the Panel decision,

are both concrete and substantial. HUD invested significant time and expense in the collective-

bargaining negotiations leading up to and underlying the Panel decision. Thus, a court order in

AFGE-HUD's favor would force HUD to expend significantly more time and money to continue

negotiations that such a decision would reopen. At the same time, HUD's interest in this case

goes beyond the challenged Panel decision (and underlying collective bargaining negotiation). A

ruling adverse to Defendants on either statutory or constitutional grounds (or both) might call

into question a whole host of HUD's collective bargaining agreements that were only finalized

with the Panel's intervention.

Accordingly, HUD's substantial interests in the subject of this case support its

intervention as a matter of right under Federal Rule of Civil Procedure 24(a)(2). Alternatively,

HUD should be granted permissive intervention under Rule 24(b)(1)(B). Indeed, had AFGE-

HUD presented its challenge administratively before the Authority and then sought judicial

review in a federal court of appeals—the proper course of action under the Federal Service

Labor-Management Relations Statute, *see Am. Federation of Gov't Emps., AFL-CIO v. Fed.

Labor Relations Auth.*, 778 F.2d 850, 854 (D.C. Cir. 1985)—intervention by HUD would have

been granted as a matter of course. The courts of appeals routinely authorize intervention by the

agency that, like HUD here, prevailed before the Authority in the underlying administrative proceedings.

At this juncture, HUD specifically seeks to intervene for the goal of ensuring that the Court address substantial questions of subject-matter jurisdiction before any further actions are taken, including further briefing on AFGE-HUD's early cross-motion for summary judgment. HUD fully agrees with the compelling jurisdictional arguments raised by Defendants in the pending motion to dismiss, ECF No. 20.  HUD does not seek to supplement that motion at this time, however, unless the Court determines that it would be of benefit to its consideration of Defendants' motion, in which event HUD would be happy to do so on a schedule convenient to the Court.  Barring such a request from the Court, HUD seeks now only to argue for a stay of summary judgment briefing to permit the Court to resolve the questions of jurisdiction that Defendants have ably raised.

Thus, HUD contends that the parties' briefing on, and the Court's consideration of, AFGE-HUD's early cross-motion for summary judgment is not yet warranted and should be stayed pending resolution of the Court's jurisdiction.  To that end, a motion to stay briefing on, and consideration of, the motion for summary judgment is attached hereto as Exhibit A.[1]  HUD further requests that, if the Court grants its intervention motion, the Court simultaneously accept the attached motion to stay and deem it to have been filed effective on this date.

## BACKGROUND

The Federal Service Labor-Management Relations Statute, 5 U.S.C. §§ 7101-7135 (2018) (the "Statute"), "establishe[s] a distinct regulatory framework for collective bargaining between federal agencies and their employees."  *Nat'l Air Traffic Controllers Ass'n v. Federal Serv.*

---

[1] Defendants consent to the motion to stay, but Plaintiff does not consent.

*Impasses Panel*, 606 F.3d 780, 783 (D.C. Cir. 2010) ("*NATCA 2010*") (quotation omitted).  The Authority, which administers the Statute, is composed of three members who are "appointed by the President by and with the advice and consent of the Senate."  5 U.S.C. § 7104(b).  The Panel, in turn, is an entity within the Authority tasked with resolving disputes between federal agencies and their employees' exclusive representatives after their labor negotiations have reached an impasse.  *NATCA 2010*, 606 F.3d at 783 (quoting *Nat'l Air Traffic Controllers Ass'n AFL-CIO v. Federal Serv. Impasses Panel*, 437 F.3d 1256, 1257–58 (D.C. Cir. 2006)).  If the Panel asserts jurisdiction over an impasse, it may "take whatever action is necessary and not inconsistent with [the Statute] to resolve the impasse," 5 U.S.C. § 7119(c)(5)(B)(iii), including issuing orders setting forth specific terms that become "part of the [parties'] collective bargaining agreement." *Am. Federation of Gov't Emps., AFL-CIO v. Federal Labor Relations Auth.*, 778 F.2d 850, 863 (D.C. Cir. 1985) (Ginsburg, J., dissenting).  The Panel is "composed of a Chairman and at least six other members," each of whom is "appointed by the President" without the advice and consent of the Senate.  5 U.S.C. § 7119(2).

HUD is a federal agency subject to the Statute.  And it is party to a collective bargaining agreement ("CBA") with AFGE-HUD that expired on July 23, 2018.  Am. Compl. ¶ 6.  Under the CBA's terms, the CBA continues in full force and effect, in one-year periods, until a newly negotiated CBA becomes effective. *Id.*  In May 2018, HUD notified AFGE-HUD that it wished to negotiate a new CBA. *Id.* ¶ 21.  The next month, HUD and AFGE-HUD began bargaining over a "ground rules" agreement that would govern their subsequent negotiations for a new CBA. *Id.* ¶ 22.  Not long after they began their ground rules negotiations, the parties reached an impasse. *Id.* ¶ 23.

On November 15, 2018, over AFGE-HUD's objection, the Panel asserted jurisdiction over the parties' impasse. *Id.* ¶ 25. It ordered the parties to engage in mediation. *Id.* ¶ 26. After mediation failed, the parties returned to the Panel for its resolution of the impasse. *Id.* ¶ 27. On February 14, 2019, the Panel issued a decision and order that imposed certain terms on the parties' ground rules agreement. *HUD and AFGE-HUD*, 18 FSIP 075. At the time it issued its decision, the Panel was composed of a Chairman and three other members, each of whom was appointed by the President without the advice and consent of the Senate. Am. Compl. ¶¶ 28–32.

After the Panel issued its decision, AFGE-HUD brought this action in the United States District Court for the District of Columbia, seeking its vacatur. AFGE-HUD claims that: (1) the Panel's decision is *ultra vires* because the Panel issued the decision when it was composed with less than the statutorily required number of members, Am. Compl. ¶¶ 44–49; (2) for the same reason, the Panel's decision violates the Administrative Procedure Act, 5 U.S.C. § 706(2)(C), *id.* ¶¶ 62–67; and (3) Panel members are principal officers whose appointments are inconsistent with the Constitution, and therefore the Panel decision is itself unconstitutional, *id.* ¶¶ 50–61.

Defendants moved to dismiss AFGE-HUD's complaint for lack of jurisdiction. ECF No. 20. AFGE-HUD then cross-moved for summary judgment on the merits, incorporating into that motion its response to Defendants' motion to dismiss. ECF No. 23. Both motions remain pending; AFGE's early cross-motion for summary judgment has not yet been fully briefed by the parties. As matters stand, Defendants' response in opposition to AFGE-HUD's early cross-motion is due by Wednesday, December 4, 2019. *See* Minute Order, Nov. 8, 2019.

## ARGUMENT

HUD is entitled to intervene in this action as of right; alternatively, HUD meets the requirements for permissive intervention. In litigation arising from administrative proceedings

under the Statute—in which judicial review is at least presumptively exclusive to the federal courts of appeals, *see AFGE, et al. v. Trump, et al.*, 929 F.3d 748 (D.C. Cir. July 16, 2019)— petitioning labor unions ordinarily proceed against the Authority as the respondent.  In those cases, intervention by the party that prevailed in the administrative proceeding is routinely granted.  *See, e.g.*, *International Union, United Auto., Aerospace & Agr. Implement Workers of Am. AFL-CIO, Local 283 v. Scofield*, 382 U.S. 205, 208, 211 (1965).  Just as it would be in the court of appeals, HUD's intervention is proper in this Court.

HUD is entitled to intervene as of right because AFGE-HUD's claims attacking the validity of the Panel's decision and order put HUD's interests directly at stake in this litigation. The Panel decision resolved a bargaining impasse between HUD and AFGE-HUD on the terms that would govern their ongoing negotiations over a new CBA.  AFGE-HUD's statutory and constitutional attack on the Panel's authority to issue that decision threatens to undo the finality the Panel's decision imposed on the parties' negotiations.  And it places HUD at risk of having to expend significantly more time and money to revisit prior negotiations that a ruling in AFGE-HUD's favor would reopen.  At the same time, HUD's interest extends beyond the Panel decision specifically at issue in this litigation.  A merits ruling favorable to AFGE-HUD may well call into question the validity of each one of HUD's CBAs that required the Panel's involvement.  A potential ruling in AFGE-HUD's favor thus might engender further litigation over the force of prior negotiated agreements and place unknown obligations on HUD with respect to its employees and their exclusive representatives.

HUD's interest in the Panel decision underlying this litigation gives it Article III standing to intervene as of right.  Because of that interest, and considering the early stages of this litigation, HUD likewise meets Rule 24(a)(2)'s four requirements for intervention as of right.

Even if HUD did not satisfy the requirements for intervention as of right, however, it would alternatively meet the requirements for permissive intervention.  HUD's experience negotiating multiple CBAs with its employees' exclusive representatives as well as its financial stake in the validity of the Panel order at issue in this case, and similar orders issued prior to this one, give it a unique perspective that warrants its participation in the litigation under Rule 24(b)(1)(B)'s generous permissive intervention requirements.

### A.  HUD Satisfies the Requirements for Intervention as of Right under Rule 24(a)(2).

In the largely analogous National Labor Relations Board context, it is commonly recognized that "the party supporting a Board order, or the part challenged, may intervene" in federal proceedings.  *NLRB v. Oil, Chem. & Atomic Workers Int'l Union, AFL-CIO*, 476 F.2d 1031, 1034 (1st Cir. 1973) (citing *Scofield*, 382 U.S. at 211); *see also Scofield*, 382 U.S. at 211 & n.4 (agreeing with the "vast majority of the courts" that have "recognized [the] right" of a party prevailing before a labor board to intervene in the losing party's petition for review in federal court).  For the same reasons, the D.C. Circuit grants intervention to the employer or union that prevailed before the Authority as a matter of course.  *See U.S. Dep't of Justice Fed. Bureau of Prisons Fed. Corr. Complex Coleman, Fla. v. Fed. Labor Relations Auth.*, 737 F.3d 779, 782 (D.C. Cir. 2013); *Fed. Bureau of Prisons v. Fed. Labor Relations Auth.*, 654 F.3d 91 (D.C. Cir. 2011); *U.S. Dep't of Homeland Sec., Customs & Border Prot. v. Fed. Labor Relations Auth.,* 647 F.3d 359 (D.C. Cir. 2011); *Nat'l Treasury Emps. Union v. Fed. Labor Relations Auth.*, 453 F.3d 506 (D.C. Cir. 2006); *Fed. Labor Relations Auth. v. Nat'l Aeronautics & Space Admin.*, 120 F.3d 1208, 1211 (11th Cir. 1997), *aff'd*, 527 U.S. 229, 119 S. Ct. 1979, 144 L. Ed. 2d 258 (1999); *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 982 F.2d 577, 578 (D.C. Cir. 1993); *U.S. Office of Pers. Mgmt. v. Fed. Labor Relations Auth.*, 905 F.2d 430, 432 (D.C. Cir. 1990); *Am.*

*Federation of Gov't Emps. v. Fed. Labor Relations Auth.*, 850 F.2d 782 (D.C. Cir. 1988); *Nat'l Federation of Fed. Emps. v. Fed. Labor Relations Auth.*, 852 F.2d 1349 (D.C. Cir. 1988); *Local 32, AFGE, AFL-CIO v. Fed. Labor Relations Auth.*, 782 F.2d 1526 (D.C. Cir. 1984).  Because sole litigation authority on behalf of the federal government in most instances is vested in the Department of Justice, 28 U.S.C. § 516, the Department often intervenes in the federal courts of appeals on behalf of agencies, like HUD here, that were a party to the underlying Authority decisions.

Just as HUD would be entitled to intervene in an appellate proceeding on direct review under the Statute, HUD's unique interest in this action allows it to intervene as of right in this Court under Rule 24(a)(2).  That Rule provides, in relevant part:

> Upon timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction which is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless the existing parties adequately represent that interest.

Federal Rule of Civil Procedure 24(a)(2).  As this Circuit has explained, intervention as of right under Rule 24 depends on four factors:

> (1) the timeliness of the motion; (2) whether the applicant "claims an interest relating to the property or transaction which is the subject of the action"; (3) whether "the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest"; and (4) whether "the applicant's interest is adequately represented by existing parties."

*Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003) (quoting *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1074 (D.C. Cir. 1998).  In addition to meeting these requirements, "a party seeking to intervene as of right must demonstrate that it has standing under Article III of the Constitution."  *Id.* at 731–32.  The standing requirement exists "because a Rule 24 intervenor seeks to participate on an equal footing with the original parties to the suit."

*Id.* at 732 (quoting *City of Cleveland v. NRC*, 17 F.3d 1515, 1517 (D.C. Cir. 1994)).  When it comes to determining whether these factors are met, Rule 24(a) "is construed broadly in favor of applicants for intervention."  *United States v. Oregon,* 913 F.2d 576, 587 (9th Cir. 1990), *cert. denied sub nom., Makah Indian Tribe v. United States,* 501 U.S. 1250 (1991).

All these factors considered, HUD is entitled to intervention of right.  For starters, HUD meets Article III's injury-in-fact, causation, and redressability requirements for standing.  *See Norton*, 322 F.3d at 732–33.  The standing requirements, as applied in the intervention context, require HUD to "demonstrate a causal connection between a judgment by th[e] Court for plaintiff[] and a concrete and imminent injury-in-fact to" HUD.  *Ctr. for Biological Diversity v. U.S. EPA*, 274 F.R.D. 305, 309 (D.D.C. 2011).  That test is easily met here.  A court ruling in AFGE-HUD's favor would directly implicate HUD's obligations in its ongoing negotiations with AFGE-HUD, placing the two parties back at the negotiation table or before a new Panel to again resolve their impasse.  Either way, HUD will be forced to expend substantial time and money to continue to resolve the disputes between the parties that the Panel's existing order has already settled.  *See Textile Workers Union of Am., CIO v. Allendale Co.*, 226 F.2d 765, 769 (1955) (stating that an "economic interest" in the subject of the action is "sufficient to justify intervention under Rule 24").  A ruling in AFGE-HUD's favor would also inject uncertainty into the many agreements between HUD and its employees' exclusive representatives that have required the Panel's intervention.  HUD thus has standing to intervene as of right.

Moreover, HUD's motion to intervene satisfies Rule 24(a)(2)'s four factors for intervention as of right.  First, its motion is timely.  AFGE-HUD initiated this action on June 27, 2019, ECF No. 1, and filed its Second Amended Complaint on August 27, 2019—just three months ago.  ECF No. 14.  The parties very recently completed briefing on Defendants' motion

to dismiss for lack of jurisdiction, *see* ECF No. 25, and the Court has yet to rule on that motion.

Although AFGE-HUD has already filed a cross-motion for summary judgment, its motion was

early; it did so before the parties even completed briefing on Defendants' jurisdictional motion to

dismiss. *See id.* Moreover, HUD's immediate interest in this action concerns the timing of

AFGE-HUD's cross-motion for summary judgment. Therefore, HUD's intervention will not

impede resolution of the pending and fully briefed motion to dismiss, but rather only the Court's

consideration of AFGE-HUD's early cross-motion for summary judgment.[2]  Accordingly,

HUD's intervention will not cause any delay or prejudice to the current parties in the case.

*Wash. Alliance of Tech. Workers v. U.S. Dep't of Homeland Sec'y*, 395 F. Supp. 3d 1, 18

(D.D.C. 2010) (stating that "the purpose for which intervention is sought . . . and the probability

of prejudice to those already parties in the case" are relevant factors when judging the timeliness

of an intervention request (quoting *United States v. British Am. Tobacco Austl. Servs., Ltd.*, 437

F.3d 1235, 1238 (D.C. Cir. 2006)).

　　　　Second, HUD'S "constitutional standing is alone sufficient to establish that" it satisfies

the next intervention factor: having "an interest relating to the property or transaction which is

the subject of the action." *Norton*, 322 F.3d at 735 (quoting Fed. R. Civ. Pr. 24(a)(2)). The

relevant "property" here is the FSIP decision and order and the "transaction" is impasse between

HUD and AFGE-HUD that the decision and order resolved. *See id.* That HUD might well

suffer a concrete injury from a court ruling in AFGE-HUD's favor is enough to show that it has a

---

[2] Similarly, HUD initially did not believe it necessary to seek intervention prior to resolution of Defendants' jurisdictional motion to dismiss. In light of AFGE-HUD's early-filed cross-motion for summary judgment, however, HUD now finds it necessary to do so. That said, as the attached Motion to Stay argues, the Court should stay briefing on and consideration of the motion for summary judgment until after it has resolved the substantial jurisdictional questions presented in Defendants' pending motion to dismiss. Those arguments in support of such a stay apply whether HUD intervenes in this case or not.

direct interest in the subject of this action that gives is the right to intervene. *See Allendale Co.*, 226 F.2d at 769.

Third, disposition of this action without HUD's participation will necessarily impede HUD's ability to protect its interest in the Panel's decision and order. This factor looks to the "'practical consequences' of denying intervention." *Nat'l Resources Defense Council v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977); *see Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967) ("[I]n the intervention area[,] the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process."). A ruling in AFGE-HUD's favor will make "the task of reestablishing the status quo" between HUD and AFGE-HUD—having a final ground rules agreement—"difficult and burdensome." *Norton*, 322 F.3d at 735. HUD would be required to expend substantial time and money to again attempt to resolve a negotiation impasse with AFGE-HUD, which the Panel's almost 10-month-old decision was designed to resolve. This time, however, depending on what an AFGE-HUD-favorable court ruling says about the Panel's constitutional status, when and how the parties are able to resolve the impasse may have no definite answer.

Finally, HUD's interest is not adequately represented by existing parties. This final requirement is not an onerous one. *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986). Like the other requirements for intervention of right, it is to be construed liberally in favor of intervention, and the party opposing intervention bears the burden of "show[ing] the adequacy of the existing representation." *Nuesse*, 385 F.2d at 702. HUD's interest in this case is having the Panel's decision upheld. That interest, to be sure, "overlap[s]" with the interests of existing defendants, *Norton*, 322 F.3d at 736—the Authority and the Panel likewise have an interest in the Panel decision being upheld. But the Authority's and the Panel's interest in

11

preserving that decision only extends so far as their interest in maintaining the Panel's authority to resolve labor disputes between parties such as HUD and AFGE-HUD.  Therefore, the Authority and the Panel naturally possess a broad interest in seeing any Panel decision upheld.

HUD's interest, on the other hand, is directly tied to the particular Panel decision in this case and to the many other Panel decisions that apply specifically to HUD.  That interest gives it a financial stake in the case's outcome that the existing defendants do not similarly possess— again, if the Panel decision is struck down as a violation of the Statute or the Constitution, HUD will be forced to expend additional time and resources to restart negotiations or proceedings before a newly composed Panel.  *See Dimond*, 792 F.2d at 190 (finding existing representation inadequate when only the party seeking intervention had a "financial stake in the outcome" of the case).  HUD's unique financial interest as compared to the existing defendants is sufficient to demonstrate that it is not adequately represented by those defendants.  *See Norton*, 322 F.3d at 735–36 (all the would-be intervenor must show is that "representation of [its] interest '*may be*' inadequate" (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972) (emphasis added)); *cf. Allendale*, 226 F.2d at 769 (having an economic interest in the action is sufficient to justify intervention under Rule 24).

HUD, in sum, may intervene as of right under rule 24(a)(2), because it satisfies the Article III standing requirements as well as the Rule's four intervention factors.

### B.  Alternatively, HUD Satisfies the Requirements for Permissive Intervention under Rule 24(b)(1).

Alternatively, HUD meets the requirements for permissive intervention.  Rule 24(b) provides in relevant part that, "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. Pr. 24(b)(1)(B).  "Although the rule speaks in terms of a 'claim or defense'

this is not interpreted strictly so as to preclude permissive intervention." *Nuesse*, 385 F.2d at 704. Those terms are interpreted broadly to allow intervention even "in situations where 'the existence of any nominate 'claim' or 'defense' is difficult to find.'" *Id.* at 704 (quoting 4 J. MOORE, FEDERAL PRACTICE P24.10, at 6o (1966)). And so, as with the requirements for intervention as of right, those for permissive intervention under Rule 24(b) must be liberally construed. *Accord id.* at 704–05 (noting that the Rule was amended to avoid "exclusionary constructions" and "considers [a] governmental application [to intervene] with a fresh and more hospitable approach"). Permissive intervention is particularly favored when it would "advance the 'public interest'" by bringing another important perspective to bear on a federal question having far-reaching consequences. *Id.* at 705–06.

If HUD's interest in this lawsuit does not entitle it to intervention as of right, its defense certainly allows it to intervene permissively. For the reasons explained above, HUD's motion to intervene is timely. And the agency's defenses to AFGE-HUD's claims, if ultimately presented, would share a common question of law and fact with those raised by Defendants. HUD has a substantial stake in the validity of this Panel decision, as well as any prior Panel decisions pertaining to HUD's CBAs. Adding HUD's voice to the mix, moreover, will advance notions of due process and the public's interest in ensuring that as many perspectives as possible are heard on claims that have the potential to profoundly affect not only HUD but also every other federal agency that is subject to the Panel's jurisdiction. *See Nuesse*, 385 F.2d at 706 ("[P]ermissive intervention is available when sought because an aspect of the public interest with which [a public entity] is officially concerned is involved in the litigation."). And because adding HUD to this case will not "unduly expand the controversy or otherwise lead to improvident delay or expense," permissive intervention—if not intervention as of right—is entirely appropriate. *Id.*

(reversing a district court's denial of permissive intervention when intervention by a state entity would advance public interests and there was no finding that intervention would expand unduly expand the controversy or delay its resolution).

## CONCLUSION

For the foregoing reasons, HUD seeks to intervene in this action as of right under Rule 24(a)(2) or, alternatively by permission under Rule 24(b)(1)(B).  HUD likewise seeks the Court's permission to file the Motion to Stay Summary Judgment Briefing, attached as Exhibit A, and to deem it effectively filed as of this date should HUD's intervention be authorized.

Dated: December 2, 2019                    Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

CHRISTOPHER R. HALL
Assistant Branch Director

*/s/ Kyla M. Snow*
KYLA M. SNOW (Ohio Bar No. 96662)
Trial Attorney
U.S. Dep't of Justice, Civil Div., Federal Programs Branch
1100 L Street, NW
Washington, D.C.  20005
Phone:  (202) 514-3259
Fax: (202) 616-8460

*Counsel for Intervenor*