**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

———————————————————————

| | |
|---|---|
| AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES, National Council of HUD Locals Council 222, AFL-CIO, 451 7th St. SW, Washington D.C. 20410; | ) ) ) ) |
| Plaintiff, | ) |
| v. | ) |
| FEDERAL SERVICE IMPASSES PANEL, 1400 K St. NW, Washington, D.C. 20424; | ) ) ) Civil Action No. 1:19-cv-01934(RJL) |
| and | ) |
| MARK ANTHONY CARTER, In his official capacity as Chairman of the Federal Service Impasses Panel, 1400 K St. NW, Washington, D.C. 20424; | ) ) ) ) |
| and | ) |
| FEDERAL LABOR RELATIONS AUTHORITY, 1400 K St., NW, Washington, D.C. 20424; | ) ) |
| Defendants. | ) |

———————————————————————

**STATEMENT OF POINTS OF LAW AND AUTHORITIES
IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS
AND IN SUPPORT OF A MOTION TO STAY BRIEFING
ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, ALTER THE BRIEFING SCHEDULE**

———————————————————————

NOAH PETERS
Solicitor
REBECCA J. OSBORNE
Deputy Solicitor
Federal Labor Relations Authority
1400 K Street, N.W.
Washington, D.C. 20424
(202) 218-7999

## TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................................................................. i

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION ....................................................................................................................... 1

ARGUMENT ............................................................................................................................... 2

I.    THE COURT SHOULD GRANT DEFENDANT'S MOTION TO DISMISS
      BECAUSE IT LACKS JURISDICTION TO REVIEW FEDERAL SERVICE
      IMPASSES PANEL ORDERS................................................................................................2

      A.  Congress precluded direct judicial review of Federal Service Impasses Panel
          decision through the creation of a comprehensive statutory structure..........................2

      B.  The extremely narrow exception established in *Leedom v. Kyne*, does not
          establish district court jurisdiction in this case. ..........................................................11

II.   THE COURT SHOULD STAY DEFENDANTS' RESPONSE TO PLAINTIFF'S
      MOTION FOR SUMMARY JUDGMENT BECAUSE THE COURT MUST
      RESOLVE THE JURISDICTIONAL QUESTION PRIOR TO ANY
      PROCEEDINGS ON THE MERITS OF THE COMPLAINT...........................................16

CONCLUSION........................................................................................................................... 23

# TABLE OF AUTHORITIES

## Cases

*Aircraft & Diesel Equip. Corp. v. Hirsch*,
  331 U.S. 752 (1947) ................................................................................................ 5

*Am. Fed'n of Gov't Emps. v. Sec'y of Air Force*,
  716 F.3d 633 (D.C. Cir. 2013) ................................................................................ 5

*Am. Fed'n of Gov't Emps. v. Trump*,
  929 F.3d 748 (D.C. Cir. 2019) ................................................................... 8, 10, 11

*Angulo v. Gray*,
  907 F. Supp. 2d 107 (D.D.C. 2012) ...................................................................... 20

*Baginski v. Lynch*,
  229 F. Supp. 3d 48 (D.D.C. 2017) ........................................................................ 19

*Bank of Louisiana v. Fed. Deposit Ins. Corp.*,
  919 F.3d 916 (5th Cir. 2019) .................................................................................. 7

*Beatty v. Washington Metropolitan Area Transit Authority*,
  860 F.2d 1117 (D.C. Cir 1988) ....................................................................... 21, 22

*Bebo v. Sec. & Exch. Comm'n.*,
  799 F.3d 765 (7th Cir. 2015) .................................................................................. 7

*Bennett v. U.S. Sec. & Exch. Comm'n*,
  844 F.3d 174 (4th Cir. 2016) .................................................................................. 7

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .............................................................................................. 21

*Cierco v. Lew*,
  190 F. Supp. 3d 16 (D.D.C. 2016) ........................................................................ 19

*Cierco v. Mnuchin*,
  857 F.3d 407 (D.C. Cir. 2017) .............................................................................. 19

*Council of Prison Locals v. Brewer*,
  735 F.2d 1497 (D.C. Cir. 1984) ..................................................................... passim

*Daniels v. United States*,
  947 F. Supp. 2d 11 (D.D.C. 2013) ........................................................................ 19

*Democratic Republic of Congo v. FG Hemisphere Assocs., LLC,*
   508 F.3d 1062 (D.C. Cir. 2007) ............................................................ 17

*Dep't of Def. Domestic Dependent Elementary & Secondary Sch. Fort Buchanan, P.R.*
   71 FLRA 127 (2019) ............................................................................... 8

*Elgin v. Dep't of Treasury,*
   567 U.S. 1 (2012) .................................................................................... 2

*Ex parte McCardle,*
   7 U.S. 506 (1968) .................................................................................. 16

*F.T.C. v. Flotill Prod., Inc.,*
   389 U.S. 179 (1967) .............................................................................. 13

*Falcon Trading Grp., Ltd. v. Sec. & Exch. Comm'n,*
   102 F.3d 579 (D.C. Cir. 1996), ...................................................... 12, 14

*Forras v. Rauf,*
   812 F.3d 1102 (D.C. Cir. 2016) ........................................................... 16

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.,*
   561 U.S. 477 (2010) ........................................................................... 5, 6

*Freedom Watch, Inc. v. Dep't of State,*
   925 F. Supp. 2d 55 (D.D.C. 2013) ....................................................... 19

*Frischer & Co. v. Bakelite Corp.,*
   39 F.2d 247 (C.C.P.A. 1930) ................................................................ 13

*Frito-Lay, Inc. v. Willoughby,*
   863 F.2d 1029 (D.C. Cir. 1988) ........................................................... 21

*Furniture Brands Int'l, Inc. v. U.S. Int'l Trade Comm'n,*
   No. 1:11-CV-00202, 2011 WL 10959877 (D.D.C. Apr. 8, 2011) .............. 17, 19, 20

*Gilmore v. Palestinian Interim Self-Gov't Auth.,*
   843 F.3d 958 (D.C. Cir. 2016) ............................................................. 16

*Griffith v. FLRA,*
   842 F.2d 487 (D.C. Cir. 1988) ............................................................. 15

*Hill v. Sec. & Exch. Comm'n,*
   825 F.3d 1236 (11th Cir. 2016) ............................................................. 7

*In re Papandreou*,
    139 F.3d 247 (D.C. Cir. 1998) ......................................................................... 17

*Jarkesy v. Sec. & Exch. Comm'n*,
    803 F.3d 9 (D.C. Cir. 2015) ........................................................................ 2, 6

*Kaplan v. Cent. Bank of the Islamic Republic of Iran*,
    896 F.3d 501 (D.C. Cir. 2018) ....................................................................... 16

*Kentucky v. Graham*,
    473 U.S. 159 (1985) ......................................................................................... 1

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936) ....................................................................................... 18

*Laurel Baye Healthcare of Lake Lanier, Inc. v. NLRB.*,
    564 F.3d 469 (D.C. Cir. 2009) ................................................................. 14, 15

*Leedom v. Kyne*,
    358 U.S. 184 (1958) ....................................................................................... 11

*Lewis v. Clarke*,
    137 S. Ct. 1285 (2017) ..................................................................................... 1

*Magritz v. Ozaukee Cty.*,
    894 F. Supp. 2d 34 (D.D.C. 2012) ................................................................ 20

*Mitchell v. Christopher*,
    996 F.2d 375 (D.C. Cir. 1993) ....................................................................... 11

*Montgomery v. IRS*,
    No. 17-cv-918 (D.D.C. Nov. 6, 2017) ........................................................... 19

*Nat'l Air Traffic Controllers Ass'n AFL-CIO v. FSIP*,
    437 F.3d 1256 (D.C. Cir. 2006) ....................................................................... 4

*Nevada National Guard*,
    7 FLRA 245 (1981) .......................................................................................... 9

*Nyunt v. Chairman, Broad. Bd. of Governors*,
    589 F.3d 445 (D.C. Cir. 2009) ....................................................................... 11

*Patent Office Prof'l Ass'n v. FLRA*,
    26 F.3d 1148 (D.C. Cir. 1994) ......................................................................... 8

*Spagnola v. Mathis*,
  859 F.2d 223 (D.C. Cir. 1988) ............................................................................. 9

*Steadman v. Governor, U.S. Soldiers' & Airmen's Home*,
  918 F.2d 963 (D.C. Cir. 1990) ............................................................................. 5

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ............................................................................................. 16

*Thunder Basin Coal Co. v. Reich*,
  510 U.S. 200 (1994) .................................................................................. 2, 7, 10

*Ticor Title Ins. Co. v. FTC*,
  625 F. Supp. 747 (D.D.C. 1986) ......................................................................... 20

*Tilton v. Sec. & Exch. Comm'n*,
  824 F.3d 276 (2d Cir. 2016) ................................................................................. 7

*Turgeon v. FLRA*, 677 F.2d 937 (D.C. Cir. 1982) ...................................................... 14

*U.S. Dep't of Def. Educ. Activity, Arlington, Va.*,
  56 FLRA 119 (2000) ............................................................................................ 9

*U.S. Dep't of Housing and Urban Development*,
  18 FSIP 075 (Feb. 14, 2019) .................................................................... *passim*

*United States v. Locke*,
  471 U.S. 84 (1985) ............................................................................................. 17

*United States v. W. Elec. Co.*,
  158 F.R.D. 211 (D.D.C. 1994) ............................................................................ 19

*United States v. W. Elec. Co.*,
  46 F.3d 1198 (D.C. Cir. 1995) ............................................................................ 19

*United Transp. Serv. Emps. of Am., CIU, ex rel. Wash. v. Nat'l Mediation Bd.*,
  179 F.2d 446 (D.C. Cir. 1949) ............................................................................ 17

*Veterans Admin. Washington, D.C.*,
  26 FLRA 264 (1987) ...................................................................................... 9, 10

*W. Va. Ex rel. Morrisey v. U.S. Dep't of Health & Human Servs.*,
  No. 14-1287, 2014 WL 12803229 (D.D.C. Nov. 3, 2014) ............................. 17, 20

*Wilkes-Barre Hosp. Co, LLC, v. NLRB*,
  857 F.3d 364 (D.C. Cir. 2017) ............................................................................ 18

*Zobrest v. Catalina Foothills Sch. Dist.*,
   509 U.S. 1 (1993) ................................................................................................ 18

**Statutes**

5 U.S.C. § 7105 ................................................................................................ 11

5 U.S.C. § 7119 ........................................................................................ 9, 12, 13

5 U.S.C. § 7123 .................................................................................................. 3

5 U.S.C. § 7134 ................................................................................................ 12

15 U.S.C. § 78d ................................................................................................ 12

15 U.S.C. § 78w ............................................................................................... 12

16 U.S.C. § 792 ................................................................................................ 13

19 U.S.C. § 1330 .............................................................................................. 14

28 U.S.C. § 1 ................................................................................................... 14

29 U.S.C. § 153(a), ........................................................................................... 13

30 U.S.C. § 823 ................................................................................................ 14

42 U.S.C. § 2286 .............................................................................................. 14

47 U.S.C. § 154 ................................................................................................ 13

52 U.S.C. § 30106 ............................................................................................ 14

**Other Authorities**

H.R.Doc. No. 341, 95th Cong., 2d Sess. 7 (1978) ............................................... 3

H.R.Rep. No. 1403, 95th Cong., 2d Sess. 54 (1978) ............................................ 4

**Rules**

Federal Rule Civil Procedure 12(b)(1) ..................................................... *passim*

Federal Rule Civil Procedure 56 .............................................................. *passim*

**<u>Regulations</u>**

5 C.F.R. § 2470.2 ........................................................................................................... 16

5 C.F.R. § 2471.6(a) ....................................................................................................... 12

84 Fed. Reg. 63,789 (Nov. 12, 2019) ............................................................................ 23

## INTRODUCTION

As the American Federation of Government Employees, National Council of HUD Locals, Counsel 222, AFL-CI ("AFGE-HUD" or the "Union") seeks this Court's review of the Decision and Order of the Federal Service Impasses Panel (the "Panel" or "FSIP") in *U.S. Department of Housing and Urban Development*, 18 FSIP 075 (Feb. 14, 2019) ("HUD and Council 222"), and this Court does not have jurisdiction to review such orders, the Union's Second Amended Complaint ("Complaint") in this case must be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction.

Defendants FSIP, Mark Anthony Carter in his official capacity as Chairman of FSIP,[1] and the Federal Labor Relations Authority (the "Authority" or "FLRA") (collectively "Defendants") respectfully request that this Court stay briefing on the motion for summary judgment pending resolution of their motion to dismiss.  A stay is warranted because the jurisdictional issue raised by Defendants' motion to dismiss must be resolved prior to any consideration of the merits.  Moreover, events that have occurred since filing of the Union's summary judgment motion (such as the President's issuance of a memorandum delegating authority to remove FSIP members to the FLRA on November 12, 2019, and FSIP's subsequent ratification of the decision at issue in this matter) have significantly altered the legal and factual landscape, making the Union's summary judgment motion outdated  and further briefing on it

---

[1]  A claim brought against a federal government employee in his or her official capacity "is only nominally against the official and in fact is against the official's office and thus the sovereign itself. . . .  The real party in interest is the government entity, not the named official."  *Lewis v. Clarke*, 137 S. Ct. 1285, 1291 (2017) (citations omitted).  Chairman Carter may therefore assert, in response to the Unions' claims against him in his Official Capacity, the same immunities and defenses that are available to the Panel as a whole.  *Id.* (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)).  Thus this brief applies equally to all three Defendants: the Panel, Chairman Carter, and the Authority.

potentially unhelpful to this Court.  In the event the Court disagrees, Defendants respectfully

request an additional 21 days to respond to the Union's summary judgment motion.

## ARGUMENT

**I.    THE COURT SHOULD GRANT DEFENDANT'S MOTION TO DISMISS
BECAUSE IT LACKS JURISDICTION TO REVIEW FEDERAL
SERVICE IMPASSES PANEL ORDERS.**

**A.    Congress precluded direct judicial review of Federal Service
Impasses Panel decisions through the creation of a
comprehensive statutory structure.**

Did Congress intend to allow for direct judicial review of orders of the Federal Service

Impasses Panel?  For over 30 years, the answer to this question has been settled: "No."

"[C]ourts determine that Congress intended that a litigant proceed exclusively through a

statutory scheme of administrative and judicial review when (i) such intent is 'fairly discernible

in the statutory scheme,' and (ii) the litigant's claims are 'of the type Congress intended to be

reviewed within [the] statutory structure.'" *Jarkesy v. Sec. & Exch. Comm'n*, 803 F.3d 9, 15

(D.C. Cir. 2015) (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207, 212 (1994)).

This involves examining the statute's "text, structure, and purpose." *Elgin v. Dep't of Treasury*,

567 U.S. 1, 10 (2012).  "If a special statutory review scheme exists . . . it is ordinarily supposed

that Congress intended that procedure to be the exclusive means of obtaining judicial review in

those cases to which it applies." *Jarkesy*, 803 F.3d at 15 (internal formatting omitted).

In *Council of Prison Locals v. Brewer*, 735 F.2d 1497 (D.C. Cir. 1984), the U.S. Court of

Appeals for the District of Columbia Circuit ("D.C. Circuit") undertook this inquiry in the

context of a review of Panel orders.  Based on its careful analysis of the text and history of the

Federal Service Labor-Management Relations Statute, 5 U.S.C. §§ 7101-7135 (2018) (the

"Statute"), the Court found that Congress intended that the unfair labor practice procedure be the

exclusive means for challenging Panel orders.  Indeed, the question was not close: "A clearer

2

suggestion that Congress intended no appeal from Panel orders would be difficult to imagine."
*Brewer*, 735 F.2d at 1499.  *Brewer* noted that "[w]hile [5 U.S.C. §] 7123 specifically provides
for judicial review of orders by the *Authority*, there is no provision for such review of *Panel*
orders, and Panel orders are not appealable even to the Authority."  *Id.* (emphasis in original).  In
addition, *Brewer* noted that the Statute's legislative history showed that Congress did not intend
for direct judicial review of Panel orders.  "[T]he Administration's proposed bill provided for no
review of Panel orders; in fact, section 305 of the proposed bill would have rendered '[t]he
decisions of the Authority on any matter within its jurisdiction . . .  final and not subject to
judicial review.'"  *Id.*  (quoting H.R. Doc. No. 341, 95th Cong., 2d Sess. 7 (1978)).  "The Senate
bill made all Panel orders appealable to the Authority, but restricted judicial review of Authority
decisions to include appeals only from unfair labor practice proceedings, except when
constitutional questions were raised."  *Id.* at 1500.  "Thus, the Administration's proposed bill and
the Senate bill both envisioned that Panel orders would generally not be subject to direct judicial
review."  *Id.*

The House bill reported out of committee contained no provision for direct review of
Panel decisions by either the Authority or the courts.  The House bill "is of primary importance,
because its provision regarding the Impasses Panel was incorporated verbatim into the final Act."
*Id.*  The Committee Report accompanying the House bill stated its intention regarding the
reviewability of Panel orders with unusual clarity:

> "Notice of any final action of the Panel must be promptly served upon the parties,
> and the action is final and binding upon the parties during the term of the
> agreement, unless the parties agree otherwise.  **Final action of the Panel under
> this section is not subject to appeal, and failure to comply with any final
> action ordered by the Panel constitutes an unfair labor practice . . . .**"

*Brewer*, 735 F.2d at 1500 (quoting H.R. Rep. No. 1403, 95th Cong., 2d Sess. 54 (1978)) (emphasis added).

However, *Brewer*'s conclusion that direct judicial review of Panel orders is precluded "does not mean that absolutely no judicial review of Panel orders is available.  As the House report . . .  noted, 'failure to comply with any final action ordered by the Panel constitutes an unfair labor practice.'"  *Id.*  "Once the Authority issues findings of fact and an order in an unfair labor practice proceeding, the parties may seek review in the courts of appeals.  In such an appeal, the courts may review the validity of the Panel order in question."  *Id.* (internal citations omitted.)  "In light of our examination of the statute and its legislative history, we agree with the district court that this specific review procedure, established by the statute, forecloses the assumption of general federal question or mandamus jurisdiction."  *Id.*; *accord Nat'l Air Traffic Controllers Ass'n AFL-CIO v. FSIP*, 437 F.3d 1256, 1265 (D.C. Cir. 2006) ("*NATCA 2006*") ("[I]f the Unions' interpretation of the disputed statutory provisions is correct, then it is clear that they have viable unfair labor practice charges that can be raised with and addressed by the FLRA.  Thus, the Unions are not without possible redress for the alleged violations of their statutory rights.").

In sum, the D.C. Circuit found that the unfair labor practice procedure, while perhaps less than ideal, affords litigants meaningful review of FSIP decisions.  *Brewer* "recognize[d] . . . the shortcomings of the unfair labor practices proceeding as the exclusive means for assuring judicial review of Panel orders," including the potential adverse consequences for a union of "defy[ing] an existing labor contract—even if the relevant contract term were imposed by a Panel order."  *Brewer*, 735 F.2d at 1502 n. 9.  Indeed, *Brewer* noted that this scheme might not permit any sort of challenge to Panel orders "where an employee benefit rather than a burden is

at issue." *Id*.  Those shortcomings, however, did not affect the Court's ultimate holding: "Perhaps Congress wished to pay this price in return for swift and final Panel authority.  In any event, our decision today adheres to the language and legislative history of the Act." *Id*.

*Brewer* is consistent with D.C. Circuit and Supreme Court case law holding that the Statute's "exclusion of certain parties from judicial review is not an invitation to those parties to sue under other statutes but a manifestation of a considered congressional judgment that they should not have statutory entitlement to review." *Am. Fed'n of Gov't Emps. v. Sec'y of Air Force*, 716 F.3d 633, 638 (D.C. Cir. 2013) ("*AFGE 2013*") (internal formatting omitted).

The fact that the Union brings a constitutional claim does not change this analysis.  With the Statute, "Congress passed an enormously complicated and subtle scheme to govern employee relations in the federal sector, including the authorization of collective bargaining." *Steadman v. Governor, U.S. Soldiers' & Airmen's Home*, 918 F.2d 963, 967 (D.C. Cir. 1990).  "It follows, then, that federal employees may not circumvent that structure even if their claim is based as well on the Constitution." *Id*.  "As the Supreme Court has instructed us, 'the very fact that constitutional issues are put forward constitutes a strong reason for not allowing [a] suit either to anticipate or to take the place of [the agency's] final performance of its function.'" *Id*. (quoting *Aircraft & Diesel Equip. Corp. v. Hirsch*, 331 U.S. 752, 774 (1947)).

Opposing this authority, the Union relies almost exclusively on the Supreme Court's holding in *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477, 490–91 (2010).  But that decision, which considered the constitutionality of a body established by the Sarbanes-Oxley Act of 2002, is inapposite.  The plaintiffs' challenge in that case was prompted by an "uncomplimentary inspection report" issued by the Public Company Accounting Oversight Board that "produced no sanction" and was not subject to administrative or judicial

review of any sort.  *Free Enterprise Fund*, 561 U.S. at 490.  The Sarbanes-Oxley Act of 2002 did

not create a review scheme comparable to the unfair labor practice procedure available to the

Union in this case.  Instead, the *Free Enterprise Fund* plaintiffs would have had to "select and

challenge a Board rule at random" in order to gain a hearing on their Appointments Clause

challenge.  *Id*.  The Supreme Court deemed this to be "an odd procedure for Congress to

choose."  *Id*.  Here, by contrast, Congress made its intent crystal-clear that the exclusive means

of challenging Panel orders is through the Statute's unfair labor practice procedure.  *Brewer*, 735

F.2d at 1500.

      Whatever anomalies that the Supreme Court may have perceived in *Free Enterprise Fund*

in requiring plaintiffs to potentially incur a sanction to obtain judicial review, we know that

Congress specifically contemplated and approved that possibility in the context of the Panel.  *See*

*Brewer*, 735 F.2d at 1502 n. 9 (recognizing "the shortcomings of the unfair labor practices

proceeding as the exclusive means for assuring judicial review of Panel orders"; and noting that

"[t]he decision to defy an existing labor contract—even if the relevant contract term were

imposed by a Panel order—is not to be taken lightly" and could "subject the union to prolonged

administrative proceedings, followed perhaps by a cease and desist order, before judicial review

could be available.").

      Nor does *Free Enterprise Fund* throw *Brewer*'s conclusion into doubt, the Union's

arguments to the contrary notwithstanding (Pl. Br. at 13-14).  The D.C. Circuit and other

appellate courts have routinely distinguished *Free Enterprise Fund* in holding that statutes that

establish schemes for administrative review preclude federal court jurisdiction outside of those

review schemes, even with respect to Appointments Clause and other constitutional challenges.

*See Jarkesy*, 803 F.3d at 19-20; *Tilton v. Sec. & Exch. Comm'n*, 824 F.3d 276, 288–89 (2d Cir.

2016); *Bennett v. U.S. Sec. & Exch. Comm'n*, 844 F.3d 174, 182 (4th Cir. 2016); *Bank of Louisiana v. Fed. Deposit Ins. Corp.*, 919 F.3d 916, 926–27 (5th Cir. 2019); *Bebo v. Sec. & Exch. Comm'n*, 799 F.3d 765, 769–75 (7th Cir. 2015); *Hill v. Sec. & Exch. Comm'n*, 825 F.3d 1236, 1243 (11th Cir. 2016).

Indeed, the Supreme Court has drawn similar conclusions in other cases.  For example, in *Thunder Basin*, the Court found that a plaintiff-mine operator would have to incur a citation and civil penalties which "unquestionably may become onerous" in order to raise its constitutional and statutory challenges.  *Thunder Basin*, 510 U.S. at 218, 204 & n. 4.  The Supreme Court nonetheless required the mine operator to take this risk, disallowing a pre-enforcement challenge in District Court while noting that "the Secretary's penalty assessments become final and payable only after full review by both the Commission and the appropriate court of appeals."  *Id.* at 218.

Like the plaintiffs in those cases, the Union here erroneously attempts to challenge in this Court an action that Congress expressly channeled into an alternative statutory review scheme: a final order of the Panel.  *AFGE-HUD* asks this Court to "[v]acat[e] the Panel's decision in *HUD and Council 222* in its entirety"; "[d]eclar[e] the Panel's decision in *HUD and Council 222* to be *ultra vires* and void, and in violation of the [APA]"; "[d]eclar[e] that the Panel may not exercise its powers unless it is composed of a Chairman and at least six other members"; "[d]eclar[e] the Panel's assertion of jurisdiction over the matters at issue in *HUD and Council 222* void in violation of the Appointments Clause of the United States Constitution"; and "[d]eclar[e] that the Panel may not exercise its powers absent members who have been appointed 'by and with the Advice and Consent of the Senate'. . . ." (Second Amended Complaint ("SAC") at ¶12).  The Union's attempts should be rejected because the Statute requires a party to channel such

7

challenges to the Panel's jurisdiction through the unfair labor practice procedure.  *Brewer*, 735 F.2d at 1499.

Moreover, contrary to the Union's contention (Pl. Br. at 17-18), the relief it seeks (invalidation of the Panel's decision in *HUD and Council 222*) is exactly the sort of relief that the Authority routinely grants in reviewing Panel-imposed contractual terms in the unfair labor practice context.  *See*, *e.g.*, *Dep't of Def. Domestic Dependent Elementary & Secondary Sch. Fort Buchanan, P.R.* 71 FLRA 127, 134 (2019) ("*Fort Buchanan*").  In *Fort Buchanan*, for example, an agency obtained Authority review of Panel-imposed contractual terms by refusing to implement them, triggering an unfair labor practice charge and ultimately a decision from the Authority vacating the Panel-imposed terms.  *Id.* at 129, 134; *see also Patent Office Prof'l Ass'n v. FLRA*, 26 F.3d 1148, 1153 (D.C. Cir. 1994) (rejecting enforcement of contract provisions imposed by an interest arbitrator acting on delegated authority from the Panel, where the arbitrator, and, consequently, the Panel lacked jurisdiction to impose those provisions).  As Defendants explained in their initial brief, there are several ways for the Union to obtain Authority, and ultimately, judicial, review of the Panel's jurisdiction through the unfair labor practice scheme.  (Defs. Br. at 17-18.)  The Union could, for example, refuse to comply with the Panel's order, or it could have refused to participate in proceedings before the Panel in the first place.  (*Id.*)

Even if those mechanisms were not available, however, the law is settled that "[t]he Statute can preclude a claim from being brought in a district court even if it forecloses the claim from administrative review and provides no other way to bring the claim."  *Am. Fed'n of Gov't Emps. v. Trump*, 929 F.3d 748, 756 (D.C. Cir. 2019) ("*AFGE 2019*").  That is because "it is the comprehensiveness of the statutory scheme involved, not the 'adequacy' of specific remedies

thereunder, that counsels judicial abstention."  *Spagnola v. Mathis*, 859 F.2d 223, 227 (D.C. Cir.

1988) (en banc) (per curiam).

This Court should also reject the Union's argument that its claims are "wholly collateral"

to the statutory scheme because it "is not contesting the legality of the results reached by the

Panel below" but the Panel's "authority to reach any result at all."  (Pl. Br. at 10.)  A core

function of the Panel is to determine whether it has jurisdiction to hear disputes; thus, the Panel

routinely considers whether it has the "authority to reach any result at all."  Pursuant to the

Statute, the Panel must "promptly investigate any impasse presented to it," 5 U.S.C.

§ 7119(c)(5)(A), and then "either (1) [d]ecline to assert jurisdiction in the event that it finds that

no impasse exists or that there is other good cause for not asserting jurisdiction" or "(2) [a]ssert

jurisdiction," 5 C.F.R. § 2471.6(a); *see also* (Letter brief from Plaintiff; to J. Daniel Duran; re: 18

FSIP 075; dated September 28, 2018; attached to Defendants' Statement of Disputed and

Additional Material Facts ("Defs. 7(h) Stat.") as Exhibit A (Union's letter brief in this case to the

Panel, arguing that FSIP lacked jurisdiction, *inter alia*, the parties had not reached impasse)).

Moreover, the Authority routinely entertains claims that the Panel lacked jurisdiction to

impose certain contractual terms on the parties in unfair labor practice proceedings.  *See*

*Veterans Admin. Washington, D.C.*, 26 FLRA 264, 268-269 (1987) (reviewing Panel decision to

determine whether the Panel "exceed[ed] its authority in asserting jurisdiction" and whether its

order was "contrary to law"); *U.S. Dep't of Def. Educ. Activity, Arlington, Va.*, 56 FLRA 119,

120, 122 (2000) (sustaining agency's objection "that enforcing the Panel's Order would violate

the Appropriations Clause, the doctrine of separation of powers and the doctrine of sovereign

immunity contained in the United States Constitution."); *Nevada National Guard*, 7 FLRA 245,

259–61 (1981) (considering at length an agency's contention that a Panel order "which has the

effect of overriding the military determination concerning technician attire" was consistent with Article I, Section 8, clauses 15 and 16 of the U.S. Constitution.).

Finally, the Union contends that consideration of its statutory and constitutional claims is beyond the Authority's expertise.  (Pl. Br. at 18-19.)  As Defendants pointed out in their initial brief (*see* Defs. Br. at 18-21), that is simply not so.  "The FLRA has primary responsibility for administering and interpreting the Statute, and it serves the special function of applying the general provisions of the Statute to the complexities of federal labor relations."  *AFGE 2019*, 929 F.3d at 760 (internal quotation marks and citations omitted).  "In doing so, the FLRA regularly construes the Statute and adjudicates whether governmental actions violate the Statute."  *Id*. (internal quotation marks omitted).  In its role as arbiter of the Statute, the Authority frequently passes upon both constitutional questions and questions regarding the Panel's jurisdiction in unfair labor practice proceedings and review of grievance arbitration awards.  *See, e.g.*, *Veterans Admin. Washington, D.C.*, 26 FLRA at 268-69 (reviewing a Panel order to determine whether the Panel "exceed[ed] its authority in asserting jurisdiction" and whether its order was "contrary to law.").

Even if this was not the case, an agency's relative level of expertise concerning particular claims is not dispositive.  In *Thunder Basin*, for example, the plaintiff mine-operator's suit involved claims that a union's designation of certain representatives "violates the principles of collective bargaining under the [National Labor Relations Act ("NLRA")] and petitioner's right to exclude nonemployee union organizers from its property, and that adjudication of petitioner's claims through the statutory-review provisions will violate due process by depriving petitioner of meaningful review."  *Thunder Basin*, 510 U.S. at 213-214 (internal citations and quotation marks omitted).  The Federal Mine Safety and Health Commission, the administrative agency that

would otherwise review the plaintiff's challenge, had "no particular expertise in construing statutes other than the Mine Act." *Id*. at 214.  The Supreme Court nonetheless concluded that "agency expertise could be brought to bear on the statutory questions presented here." *Id*.  In sharp contrast, the Union's challenge in this case requires interpreting the very Statute which the Authority is charged with administering and enforcing.  *See* 5 U.S.C. § 7105(a)(1).  This is not one of the "precious few cases" where the Court's review would not be "aided by the agency's statutory construction." *AFGE 2019*, 929 F.3d at 761 (quoting *Mitchell v. Christopher*, 996 F.2d 375, 379 (D.C. Cir. 1993)).

**B.  The extremely narrow exception established in *Leedom v. Kyne*, does not establish district court jurisdiction in this case.**

This Court should also reject Union attempts to get around the Statute's clear intent to bar direct review of Panel orders by invoking the extremely narrow *Leedom v. Kyne*, 358 U.S. 184 (1958) exception.  "[A] *Leedom v. Kyne* claim is essentially a Hail Mary pass" that "rarely succeeds." *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009).  So it is in this case.  As the Statute does not set quorum requirements for the Panel, its regulation requiring a simple majority for the Panel to issue orders was within the authority delegated in the Statute.  Moreover, the Union has not demonstrated that it is without any alternative means to raise this challenge.  Thus, jurisdiction for a direct appeal of a Panel order in this Court cannot be established under *Leedom*.

Congress could have included a specific quorum requirement when it established FSIP, as it had in numerous other statutes establishing and regulating various panels, boards and commissions.  It chose not to do so.  *See* 5 U.S.C. §§ 7119, 7134.  Therefore, FSIP was permitted to issue Panel orders with a majority, and not a full complement, of members.

In *Falcon Trading Grp., Ltd. v. Sec. & Exch. Comm'n*, 102 F.3d 579, 582 (D.C. Cir. 1996), the D.C. Circuit considered a challenge to the ability of the Securities and Exchange Commission ("SEC") to act where it lacks a full complement members.  The language in the Securities Exchange Act of 1934 that created the SEC is nearly identical to the language in the Statute creating the Panel: "There is hereby established a Securities and Exchange Commission . . . to be composed of five commissioners to be appointed by the President by and with the advice and consent of the Senate."  15 U.S.C. § 78d.  The language creating the Panel provides similarly that "[t]he Panel shall be composed of a Chairman and at least six other members, who shall be appointed by the President, solely on the basis of fitness to perform the duties and functions involved, from among individuals who are familiar with Government operations and knowledgeable in labor-management relations."  5 U.S.C. § 7119; *see also* (Defs. 7(h) Stat. ¶¶ 10, 11).

The language authorizing the SEC to create a quorum rule allowing less than a full five-member SEC to take action was: "The Commission . . . shall . . .  have power to make such rules and regulations as may be necessary or appropriate to implement the provisions of this chapter for which [it is] responsible or for the execution of the functions vested in [it] by this chapter."  15 U.S.C. § 78w(a)(1).  In *Falcon Trading Group*, 102 F.3d at 582, the D.C. Circuit identified this provision as "sufficiently empower[ing]" the SEC to "create its own quorum requirement."  The statutory language allowing the Panel to promulgate its own quorum rule is nearly identical: "[T]he Panel shall . . . prescribe rules and regulations to carry out the provisions of this chapter applicable to [it]."  5 U.S.C. § 7134; *see also* (Defs. 7(h) Stat. ¶¶ 10, 11).

The Panel, acting pursuant to § 7134 of the Statute, has promulgated regulations permitting the Panel's powers to be exercised by "a quorum thereof," defined as "a majority of

the members of the Panel." 5 C.F.R. § 2470.2(f), (h).  This "majority of the members"
requirement is exactly what the rule would be in the absence of a regulation. "The almost
universally accepted common-law rule is . . . in the absence of a contrary statutory provision, a
majority of a quorum constituted of a simple majority of a collective body is empowered to act
for the body." *F.T.C. v. Flotill Prod., Inc.*, 389 U.S. 179, 183 (1967); *accord Frischer & Co. v.
Bakelite Corp.*, 39 F.2d 247, 254 (C.C.P.A. 1930) ("Where a governmental body has been
created by law, consisting of more than one person, whether legislative, judicial, or
administrative, unless the number necessary to constitute a quorum is fixed by law, it has usually
been held that a majority of the persons constituting such body shall constitute such quorum and
may transact the business for which it is organized.").

By contrast, when Congress drafted the NRLA, the statute specifically prescribed what
constitutes a quorum of the National Labor Relations Board ("Board"), provisions that are
plainly not included in 5 U.S.C. § 7119.  In addition to stating that "the Board shall consist of
five instead of three members," 29 U.S.C. § 153(a), it states that "three members of the Board
shall, at all times, constitute a quorum of the Board." 29 U.S.C. § 153(b).  It is very common for
Congress to specify quorum requirements by statute when it creates administrative agencies and
boards.  *See*, *e.g.*, 47 U.S.C. § 154(a) & (h) ("The Federal Communications Commission . . .
shall be composed of five commissioners appointed by the President, by and with the advice and
consent of the Senate . . . .Three members of the Commission shall constitute a quorum
thereof."); 16 U.S.C. § 792 ("A commission is created and established to be known as the
Federal Power Commission  . . . .which shall be composed of five commissioners who shall be
appointed by the President, by and with the advice and consent of the Senate. . . Three members
of the commission shall constitute a quorum for the transaction of business . . . ."); 19 U.S.C.

13

§ 1330 (a), (c)(6) ("The United States International Trade Commission . . . shall be composed of six commissioners who shall be appointed by the President, by and with the advice and consent of the Senate . . . . A majority of the commissioners in office shall constitute a quorum, but the Commission may function notwithstanding vacancies."); 52 U.S.C. § 30106(c) (requiring an affirmative vote of four or more members of the Federal Election Commission when undertaking certain Commission activities); 42 U.S.C. § 2286(e) (designating a quorum requirement of three of the five members for conducting business of the Defense Nuclear Facilities Safety Board); 30 U.S.C. § 823(c) ("The [Federal Mine Safety and Health Review] Commission is authorized to delegate to any group of three or more members any or all of the power of the Commission, except that two members shall constitute a quorum of any group designated pursuant to this paragraph."); *cf.* 28 U.S.C. § 1 (designating the Composition of the Supreme Court of the United States shall "consist of a Chief Justice of the United States and eight associate justices, any six of whom shall constitute a quorum.").

As the above examples show, Congress knows how to create specific quorum requirements for agencies and boards when it wishes to do so.  Indeed, it did so in the NLRA, the law upon which the Statute was patterned.  *Turgeon v. FLRA*, 677 F.2d 937, 939–40 (D.C. Cir. 1982).  But Congress did not create a specific quorum requirement for the Panel.  The Panel thus had the power to enact regulations stating that a majority of Panel members constitute a quorum. (Defs. 7(h) Stat. ¶ 11).  The Panel's quorum determination is lawful because it is "not countermanded elsewhere by Congress, as for example in an explicit statutory quorum provision."  *Falcon Trading Group*, 102 F.3d at 582.[2]

---

[2] The Union's citation to *Laurel Baye Healthcare of Lake Lanier, Inc. v. NLRB*, 564 F.3d 469 (D.C. Cir. 2009), which involved the NLRA's specific quorum requirement for the Board, is therefore not on point.  Indeed, *Laurel Baye Healthcare* took pains to distinguish the specific

The Union also does not demonstrate that the Panel's order clearly violated a right granted by the Statute. In *Leedom*, the Board included in a bargaining unit both professional and non-professional employees, and explicitly denied a request for a statutorily-mandated vote by the profession employees as to whether they favored inclusion of the non-professional employees. 358 U.S. at 186. Here, in sharp contrast, the Union's Statement of Material Facts as to Which There is No Genuine Dispute ("Pl. 7(h) Stat.") listed only one specific way in which it was injured by the Panel's order: "*HUD and Council 222* requires Counsel 222 to pay travel costs for its bargaining team members." (Pl. 7(h) Stat. ¶ 37.) But there is no "clear and mandatory" right to have the travel cost of bargaining team members paid by the agency for which they work in the Statute. The Union's Complaint at most demonstrates a disagreement with the Panel's order, not any violation of a "clear and mandatory" statutory right. *Cf. Griffith v. FLRA*, 842 F.2d 487, 494 (D.C. Cir. 1988) (finding no *Leedom* jurisdiction where alleged error in statutory interpretation was, "not the only possible construction of the statutory language, [but] it is surely a colorable one.").

The Union cannot obtain *Leedom* jurisdiction, which is premised on violation of a "specific and unambiguous statutory directive," *NATCA 2006*, 437 F.3d at 1264 (internal quotation marks omitted), based on provisions of the Statute that allow the Panel to define for itself what constitutes a quorum. And the Union had not demonstrated that the Panel's order violated any other unambiguous statutory directive, and the Complaint must be dismissed.

---

quorum requirement there at issue from the situation in *Falcon Trading Group* (and this case) where the statute lacks a quorum requirement: "This highlights the fundamental problem with the Board's reasoning. The [SEC] was sufficiently empowered by its enabling legislation; the Board is not. Indeed, Congress has spelled out precise quorum provisions for the Board." *Laurel Baye Healthcare*, 564 F.3d at 475

**II. THE COURT SHOULD STAY DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BECAUSE THE COURT MUST RESOLVE THE JURISDICTIONAL QUESTION PRIOR TO ANY PROCEEDINGS ON THE MERITS OF THE COMPLAINT.**

Defendants ask the Court to stay any further proceedings on the Union's summary judgment motion pending the resolution of Defendants' motion to dismiss, because Defendants' motion to dismiss raises the issue of whether the Court has jurisdiction to hear this matter at all. Jurisdiction is a mandatory threshold questions, and if the Court lacks jurisdiction then it cannot proceed to any merits issue in this case, including a motion for summary judgment.

"Jurisdiction is power to declare law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 7 U.S. 506, 514 (1968)); *see also Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 896 F.3d 501, 509-10 (D.C. Cir. 2018) (holding that the lower court erred when it did not ensure that it had personal jurisdiction over the defendants as well as subject matter jurisdiction). Even when the result in a case, either on jurisdictional or merits grounds, might result in a dismissal of the claim, it is *still* imperative that the Court first address jurisdiction. *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 843 F.3d 958, 964 (D.C. Cir. 2016) (holding that "the district court erred by 'leapfrogg[ing] over the serious jurisdictional issues'"); *Forras v. Rauf*, 812 F.3d 1102, 1104 (D.C. Cir. 2016) (holding that the district court was required to address the jurisdictional issues raised and could not proceed directly to dismissing the claim on the merits: "addressing jurisdiction is not a 'legal nicet[y]'; it is a 'essential ingredient' of our ability to hear a case"). Thus, when serious jurisdictional issues are raised, as they have been in this case, they must be addressed first. Where the Court lacks jurisdiction (as it does here), it must dismiss the case without consideration of the merits.

The D.C. Circuit has recognized that "resolving a merits issue while jurisdiction is in doubt carries the courts beyond the bounds of authorized judicial action and violates the principle that the first and fundamental question is that of jurisdiction." *In re Papandreou*, 139 F.3d 247, 254-55 (D.C. Cir. 1998) (internal citations omitted); *see also Furniture Brands Int'l, Inc. v. U.S. Int'l Trade Comm'n*, No. 1:11-CV-00202, 2011 WL 10959877, at *1 (D.D.C. Apr. 8, 2011) ("[T]he court is obligated to determine whether it has subject matter jurisdiction in the first instance."). Accordingly, until the Court rules on the jurisdictional issue raised in Defendants' motion to dismiss, Defendants "should not be put to the trouble and expense of any further proceedings, and the time of the court should not be occupied with any further proceedings." *United Transp. Serv. Emps. of Am., CIU, ex rel. Wash. v. Nat'l Mediation Bd.*, 179 F.2d 446, 454 (D.C. Cir. 1949).

Requiring Defendants to respond to AFGE-HUD's summary judgment motion prior to resolving threshold jurisdictional issue would force Defendants to expend significant time and resources "to brief a motion that the Court may not decide." *W. Va Ex rel. Morrisey v. U.S. Dep't of Health & Human Servs.*, No. 14-1287, 2014 WL 12803229, *2 (D.D.C. Nov. 3, 2014) (citation omitted). Neither the Court's nor the parties' time is well served by engaging in a "struggle over the substance of the suit" when a dispositive jurisdictional motion is pending. *Democratic Republic of Congo v. FG Hemisphere Assocs., LLC*, 508 F.3d 1062, 1064 (D.C. Cir. 2007) (jurisdictional defenses should be raised at the outset to avoid unnecessary litigation). Further, the principle of constitutional avoidance also supports a stay of briefing in this case. In keeping with that principle, courts generally resolve cases on any "nonconstitutional ground" that is "fairly available." *See United States v. Locke*, 471 U.S. 84, 92 (1985). Because the jurisdictional arguments raised in Defendants' motion to dismiss would allow this Court to

decide the case on nonconstitutional grounds, the Court should stay summary judgment briefing until that motion is resolved. *Zobrest v. Catalina Foothills Sch. Dist.*, 509 U.S. 1, 7 (1993) ("the prudential rule of avoiding constitutional questions" means that courts should resolve cases, if possible, on "the nonconstitutional questions presented.").  Further developments, specifically the President's November 12, 2019 Memorandum delegating his removal authority over FSIP members to the FLRA, and FSIP's subsequent ratification of its previous orders (including *HUD and Council 222*, the Panel order at issue here), will affect the parties' arguments on the merits of Plaintiff's constitutional claim.  *See* Presidential Memorandum on the Delegation of Removal Authority Over the Federal Services Impasses Panel, 84 Fed. Reg. 63,789 (Nov. 12, 2019);[3] Minute of Panel Action, FSIP, ratifying Final Decisions, Orders, and Determinations to Decline Jurisdiction issued between September 2017 and November 2019, dated Nov. 25, 2019, attached to Defs. 7(h) Stat. as Exhibit B; Press Release, FLRA, Federal Service Impasses Panel Ratifies Prior Decisions (Dec. 3, 2019), attached Defs. 7(h) Stat. as Exhibit C;[4] Defs. 7(h) Stat. ¶¶ 13, 41-51; *see also Wilkes-Barre Hosp. Co, LLC*, *v. NLRB*, 857 F.3d 364, 371 (D.C. Cir. 2017) ("Ratification can remedy defects arising from the decisions of improperly appointed officials."). The change in circumstances makes summary judgment briefing at this stage of the proceedings not only untimely but also unhelpful.

It is undisputed that the Court has the inherent authority to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  The broad discretion includes the "inherent

---

[3] Also available at https://www.whitehouse.gov/presidential-actions/presidential-memorandum-delegation-removal-authority-federal-service-impasses-panel/.

[4] Also available at https://www.flra.gov/system/files/webfm/FLRA%20Agency-wide/Public%20Affairs/Press%20Releases/FSIP%20Ratification%20Press%20Release.pdf.

power to control the sequence in which it hears matters on its calendar." *United States v. W. Elec. Co.*, 46 F.3d 1198, 1207 n.7 (D.C. Cir. 1995). When two parties present separate motions, the Court may first consider a motion that "addresses a specific and narrow issue" rather than a motion that "encompass[es] issues far broader." *United States v. W. Elec. Co.*, 158 F.R.D. 211, 220 (D.D.C. 1994), *aff'd*, 46 F.3d at 1207 n.7 ("[T]he [district] court's explanation amply supports its exercise of discretion.").

Here, the existence of both jurisdictional and constitutional questions makes it appropriate for the Court to resolve Defendants' motion to dismiss before proceeding to a motion for summary judgment. District courts routinely defer consideration of motions for summary judgment while dispositive motions to dismiss remain pending. *See, e.g., Furniture Brands*, 2011 WL 10959877, at *1 ("[S]taying further briefing of the plaintiff's summary judgment motion will allow the parties to avoid the unnecessary expense, the undue burden, and the expenditure of time to brief a motion that the Court may not decide."); *Freedom Watch, Inc. v. Dep't of State*, 925 F. Supp. 2d 55, 59 (D.D.C. 2013) ("Not needing more lawyers to spend more time on more briefs on more subjects in order to decide the motion to dismiss, the Court granted the motion to stay [a summary judgment decision.]"); *Baginski v. Lynch*, 229 F. Supp. 3d 48, 57 (D.D.C. 2017) (noting that it had "deferred" consideration of plaintiff's motion for summary judgment "until it was able to assess the government's motion to dismiss"); *Montgomery v. IRS*, No. 17-cv-918 (D.D.C. Nov. 6, 2017) (staying summary judgment briefing until after resolution of threshold issues); *Cierco v. Lew*, 190 F. Supp. 3d 16, 21 (D.D.C. 2016), *aff'd on other grounds sub nom. Cierco v. Mnuchin*, 857 F.3d 407 (D.C. Cir. 2017) (same); *Daniels v. United States*, 947 F. Supp. 2d 11, 15 (D.D.C. 2013) (noting that court stayed summary judgment briefing pending its ruling on motion to dismiss); *Angulo v. Gray*, 907 F. Supp. 2d 107, 109

(D.D.C. 2012) (same); *Magritz v. Ozaukee Cty.*, 894 F. Supp. 2d 34, 37 (D.D.C. 2012) (same); *Ticor Title Ins. Co. v. FTC*, 625 F. Supp. 747, 749 n.2 (D.D.C. 1986), *aff'd*, 814 F.2d 731 (D.C. Cir. 1987) (holding in abeyance plaintiff's motion for summary judgment "pending resolution of threshold questions of jurisdiction and justiciability").

Further weighing in favor of a stay of summary judgment briefing is the fact that the Plaintiff will suffer no prejudice from that decision, while a stay would permit Defendants and the Court to conserve resources.  If the Court ultimately denies the motion to dismiss, the parties may then turn to the merits of the arguments raised in AFGE-HUD's summary judgment motion and any cross-motion for summary judgment that Defendants would file.  *See Furniture Brands*, 2011 WL 10959877, at *1 ("Because the Court must necessarily resolve the motions to dismiss before considering plaintiff's summary judgment motion, suspending briefing of the summary judgment motion pending the Court's resolution of the motions to dismiss will not prejudice plaintiff.").  Without a stay, on the other hand, Defendants will be forced to spend substantial time and resources briefing complex legal issues that may ultimately prove irrelevant to the resolution of the case.  *See Morrisey*, 2014 WL 12803229, at *2.

In sum, Defendants respectfully note that the more efficient path forward in this case is for the Court to assure itself of jurisdiction before requiring the parties to address the merits of AFGE-HUD's claims.  The Union will not suffer any prejudice from a stay of the summary judgment briefing.  In contrast, Defendants will unnecessarily be required to expend considerable time and resources to brief a response to a premature motion for summary judgment.  Accordingly, briefing on Plaintiff's motion for summary judgment should be stayed until after resolution of Defendants' motion to dismiss for lack of jurisdiction.

Alternatively, if the Court denies Defendants' motion to stay their response to the motion for summary judgment, Defendants request an extension of twenty-one (21) days after the Court's order denying the motion to file a response to the Union's summary judgment motion.

Finally, even if the Court denies both a stay and Defendants' request for an extension of time to file a response, the Court should deny the Union's motion for summary judgment because AFGE-HUD has not met its burden to support its motion for summary judgment under Rule 56(c)(1).  The moving party must support its summary judgment motion by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1032 (D.C. Cir. 1988) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Further, the Federal Rules direct that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the court may deny the motion for summary judgment.  Fed. R. Civ. P. 56(e)(4) (permitting the court to "issue any other appropriate order"); *Beatty v. Washington Metropolitan Area Transit Authority*, 860 F.2d 1117, 1120 (D.C. Cir 1988) (stating that "a moving party may not be required to support its motion with affidavits," but, "it is still clear that summary judgment should only be granted in cases when 'whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied.'").

In *Beatty*, the D.C. Circuit held that entry of summary judgment was not appropriate when the moving party, Washington Metropolitan Area Transit Authority (WMATA), failed to submit evidence supporting facts necessary to establish its immunity from suit in the particular

matter.  860 F.2d at 1121.  In addition, to the extent that WMATA's submissions did not foreclose all possibly that a jury could find for the plaintiff, the court must resolve ambiguity in the underlying facts in the light most favorable to the party opposing the motion.  *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  Here, the Union's motion for summary judgment states that "Panel members are not subject to direct supervision." (Stat. of Facts at ¶ 37).  But the Union cites only to the statutory provisions.  *Id.*  The Union's motion and Statement of Undisputed Material Facts do not reflect all the relevant facts related to the supervision of Panel members.  (Defs. 7(h) Stat. ¶¶ 13, 41-51).  Specifically, the Union fails to consider the Presidential Memorandum on the Delegation of Removal Authority Over the Federal Service Impasses Panel issued on Nov. 12, 2019, which delegates authority to remove Panel members to the FLRA.  *Id.*  Nor does it consider the Panel's recent ratification of its prior orders in light of the President's memorandum. (*See* Exhibits B, C.)

The FLRA's ability to remove members of the Panel casts serious doubt on the Union's summary judgment arguments that the Panel is unconstitutional because Panel members lacks supervision from Senate-confirmed "principal officers" (such as the members of the FLRA).  (Pl. Br. at 24-27; *see also* Defs. 7(h) Stat. ¶¶ 13, 41-51).

The Court does not need to determine whether this fact alone would settle the question in Defendants' favor regarding whether Panel members are principle or inferior officer.  *Beatty*, 860 F.2d at 1122.  Rather, it must draw any inferences based on all available evidence in the light most favorable to the nonmoving party (here, Defendants), and find only that sufficient facts exist such that "a jury could reasonably infer" that Panel members are inferior officers in order to deny the motion for summary judgment.  *Id.*

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court grant their motions (1) to dismiss the Complaints pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction and (2) to stay further proceedings on Plaintiff's motion for summary judgment, and or, in the alternative, grant Defendants an additional twenty-one (21) days from the Court's order denying these motions to respond to the Union's summary judgment motion on the merits.

Respectfully submitted,

/s/ Noah Peters
NOAH PETERS (#1023748)
Solicitor
REBECCA J. OSBORNE
Deputy Solicitor
Federal Labor Relations Authority
1400 K Street, NW
Washington, D.C. 20424
Telephone: (202) 218-7999
Facsimile: (202) 343-1007
Email: npeters@flra.gov

Dated: December 4, 2019

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of December 2019, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system.  I also certify that the foregoing document is being served on counsel of record and that service will be accomplished by the CM/ECF system.

/s/ Noah Peters
NOAH PETERS
Solicitor
Federal Labor Relations Authority
1400 K Street, NW
Washington, DC  20424
Telephone: (202) 218-7908
Email: npeters@flra.gov